**SHARES PURCHASE AGREEMENT**

This **Shares Purchase Agreement** ("**Agreement**") is made this 20th day of **May Two Thousand Eleven** (**20.05.2011**) ("**Effective Date**"), at Bangalore by and between:

    **a.**    **GLOBAL TECH PARK PRIVATE LIMITED,** a Company incorporated under the *Companies Act, 1956*, having its registered office at No. 42/2, "Chethana", Ashrama Road, Jayalakshmi Road, Mysore Represented by its Managing Director , Sri Satish P. Chandra, ("**GTP**")

**AND**

    **b.**    **SRI SATISH P. CHANDRA**, aged 59 years, Son of Sri Praphulla Chandra residing at Apartment 5, 'Mantri Altius' No.17, Cubbon Road, Bangalore 560001 ("**SPC**")
GTP and SPC together referred to as the "**Investors**".

**AND**

    **c.**    **ACRIS TECHNOLOGIES PRIVATE LIMITED,** a Company incorporated under the *Companies Act, 1956*, having its registered office at No.56, Thirumalai Pillai Road, T Nagar, Chennai 600 017 Represented by its Directors , **Sri. SATISH P. CHANDRA** and **Sri Sridhar Santhanam** ("**the Company**")

**AND**

    **d.**    **SRI SRIDHAR SANTHANAM**, aged ___ years, Son of Sri _____ _____ residing at No.7, Valliammal Garden, lst Street, Kodambakkam, Chennai 600 024 ("**Promoter**"/"**SS**")

GTP, SPC, the Company and the Promoter are together, hereinafter referred to as the "**Parties**" and individually as "**Party**" as required by the context.

**WHEREAS**

**a.**    The Company is involved *inter alia* in the business of providing services in information technology and solutions by using information technology enabled services. HandsFree Networks, Inc., USA ("**HFN**") a Delaware Corporation is a subsidiary of the Company.  The Company was in need of funds for its operations and the Investors offered to invest in the Company's business, in return of issue of equity shares in the Company.

**b.**    The Parties entered into a Shareholders' Agreement dated 10.04.2009 as amended by Agreement Addendum No.001 dated 10.04.2009 (together "**the SHA**").  In terms of the SHA, the Promoter transferred 3,34,480 (Three Laces Thirty Four Thousand Four Hundred Eighty) equity shares of the face value of Rs.10 (Rupees Ten) each as fully paid up, representing 85% (Eighty Five per cent) of the issued share capital of the Company to the Investors ("**the Original Shares**").

**c.**    In consideration for the transfer and issue of the Original Shares, the Investors had agreed to invest at least Rs.4 Crores, which could be scaled up to Rs.4.8 Crores (if required) in the Company, as per the SHA, for the purposes of the operations of the Company and also that of HFN. The Investors till date have invested an amount of about Rs. 5.14 Crores (Rupees Five Crore Fourteen Lakhs only) only ("**the Investment Amount**"), towards their obligations of payment of consideration under the SHA.

**d.**    The Parties have now agreed that the objects and transactions as envisaged under the SHA cannot be consummated and hence the Investors have agreed to sell the Transaction Shares in the Company to the Promoter; Promoter has agreed to purchase the Transaction Shares from the Investors; and the Investors

have agreed to release the Company and the Promoter from all their obligations under the SHA in terms herein.

**e.** The Company has agreed to effect the transfer of the Transaction Shares in favour of the Promoter in terms herein.

**NOW WITNESSETH**

In consideration of the reciprocal promises made herein, the Parties agree as under and to abide by the terms and conditions of this Agreement. The Investors have agreed to sell the Transaction Shares that they hold in the company to the Promoter in terms hereunder on the terms and conditions as explicitly stated hereunder:

**1.    TRANSFER OF SHARES**

**1.1**    In consideration of the amount to be paid as per Clause 2.1 below, the Investors agree to sell and the Promoter agrees to purchases the Transaction Shares, free from all encumbrances, lien, charge, sale, transfer taxes, levies, mortgage, equities or other third party claims or interests of any nature whatsoever and with all rights now and hereafter attaching thereto including without limitation the right to all dividends paid, declared or made in respect thereof.

1.2    For the purposes of consummating this transaction, the Investors and the Promoter have agreed to open an "Escrow Account" in terms of Clause 9 herein within 3 (Three) days from the Effective Date and that the Investors shall deposit/deliver , the original Share Certificates of the Transaction Shares along with duly stamped and executed instruments of transfer and confirm that the Promoter is at liberty to seek registration of the transfer of the Transaction Shares at any time after payment of the consideration in terms of Clause 2.1., below and that the Promoter, at the time of opening of the Escrow account will deposit 5% of the purchase consideration of the transaction shares into the Escrow account at the same time when the Investors will deposit the Transaction shares along with the Share transfer forms.

**2.    PURCHASE CONSIDERATION (CONSIDERATION)**

**2.1**    The consideration payable by the Promoter to the Investors for sale of the Transaction Shares is:

**a.** Rs. 8.22 Crores (Rupees Eight Crore Twenty Two Lakhs only), if paid/deposited on or before 90 (Ninety) days from Effective Date – This amount comprises of Rs. 5.14 being the Investment Amount plus Rs. 3.08 Crores (Rupees Three Crores Eight Lakhs) - equivalent to 60% (Sixty per cent) of the amount of expenditure incurred by the Investors in terms of Clause 2.3 herein); or

**b.** Rs. 10.28 Crores (Rupees Ten Crores Twenty Eight Lakhs Only), if paid/deposited on or after 91 days but before 180 (One Hundred Eighty) days from Effective Date - This amount comprises of Rs. 5.14 Crores (Rupees Five Crores Fourteen Lakhs) only being the Investment Amount, plus Rs.5.14 Crores (Rupees Five Crores Fourteen Lakhs) being 100% of the Investment Amount.

2.2    The payment of the consideration amount as specified in Clause 2.1, to the extent not already deposited in the Escrow Account, shall be made by depositing the said amount in the "Escrow Account" opened by the Parties in terms of Clause 9 herein within the timelines specified in Clause 2.1. On payment of the consideration as per Clause 2.1, the Promoter is at liberty to seek registration of the transfer of the Transaction Shares at any time after payment of the consideration in terms of Clause 2.1 and the Investors shall be at liberty to seek tranfer of the said amount out of the Escrow Account into their accounts. For this purpose, both the Investors and the Promoter shall do all such things that may be necessary to issue suitable intructions to the Escrow Agent to release the Share Transfer Forms and Certificates and the Amount to the Promorter and Investors respectively. The payment of the consideration as per Clause 2.1 above shall be subject to deduction of tax at source, if any, and other terms mentioned herein.

**2.3** The Investors confirm that the consideration in terms of Clause 2.1 above, includes the amount of Rs.5.14 Crores (Rupees Five Crores Fourteen Lakhs) ("**the Investment Amount**"), invested/spent by the Investors in the Company as required under the SHA and also towards the expenses of HFN incurred by the Investors as required under the SHA.

**2.4** The Parties agree that the amount of consideration agreed upon, as per Clause 2.1 above inculdes, but is not limited to consideration for :

    **a.** transfer of the Transaction Shares in the Company by the Investors to the Promoter;

    **b.** reimbursement of all expenses incurred by the Investors per Clause 2.3.b.vii. of the SHA, including the Investment Amount;

    **c.** reimbursement of all expenses incurred by the Investors towards the Company and/or HFN; and

    **d.** any and/or all claims which the Investors may have against the Company and/or its Shareholders, including but not limited to salary, bonus, incentive, remuneration and expenses.

    **e.** SPC shall resign from his position as Managing Director of the Company, upon the Consummation of the transaction.

    **f.** SPC shall resign from the Board of Directors of the Company and HFN upon the Consummation of the transaction.

    **h.** The Investors agree to handover any all source code for all software owned or licensed by HFN, along with the security codes, documentation or other information in relation thereto, to the extent they are in possession of. The Investors acknowledge that all right, title and ownership of all such work product and other intellectual properties is vested exclusively in HFN.

    **i.** to transfer all the shares of HFN held by the Investor to the promoter and the consideration paid as per clause 2.1 above includes for the transfer of shares of HFN India Private Limited from the Investors to the Promoter.

**2.5** The Investors confirm that on receipt of the consideration amount in terms of Clause 2.1 herein, the Investors shall not have any claims whatsoever against the Company or the Promoter or the shareholders of the Company either in relation to the sale of the Transaction Shares or for any other claims whatsoever.

**3. CONDITIONS PRECEDENT**

**3.1** This Agreement and the rights and obligations contained herein are subject to the following:

    **a.** The Investors shall within a period of 7 (Seven) days from the Effective Date, deliver/deposit the original Share Certificates of the Transaction Shares along with duly stamped and executed instruments of transfer in/with the "Escrow Account" to be opened in terms of Clasue 9 herein.

    **b.** The Promoter may audit the accounts/financials of the Company and that of HFN, to arrive at the amount of actual expenditure incurred by the Investors. If the said amount, arrived after such audit is less than the Investment Amount, and that the difference between the same, exceeds 2% (Two per cent) then, the amount of consideration in terms of Clause 2.1 herein, shall stand reduced to such amount as is arrived at, by the Promoter. The object of this audit would be to arrive at the aggregate amounts invested by the Investors in the Company and/or HFN, as per

the SHA. The said audit shall determine the aggregate investments made by the Investors duly taking into account all the supporting documents reflecting such investment/expenditure.

**c.** Audit of the accounts/financials of the Company, by the Promoter in terms of this Clause 3, shall be completed within 7 (Seven) days from the date of receipt of the books of accounts and registers of the Company and that of HFN, and all other supporting documents, in relation to the expenditure/investments in the Company and HFN by the Investors.

**d**. The Promoter shall deposit an amount of Rs.41/- Lakhs (Rupees Forty One Lakhs) only, (estimated to be around 5% of the consideration of the transaction shares as per 2.1 above), into the Escrow Account with a period of 7 days from the date of this agreement.

**3.2** From the Effective Date, the Investors shall:

**a.** Not be liable to invest or incur expenditure of any further amounts towards the day-to-day operations of the Company; and

**b.** Not take any decision/s, action/s or implement the same, in relation to any person or any matter listed in **Annexure A**, either in relation to the Company or HFN, without the prior written consent of the Promoter.

**4.** **RELEASE & WAIVER**

Upon conssumation of the transaction as envisaged in this agreement,

**4.1** The Investors hereby confirm to waive all their rights under the SHA, as against the Company and the Promoter or otherwise. The Company and the Promoter hereby confirm acceptance of the terms herein and waive all their rights under the SHA, as against the Investors only. The Parties confirm that the waiver of all rights in terms herein includes, but is not limited to Clause 2.1 and Clause 2.2 of the SHA (Mutual Representations and Warranties).

**4.2** On and from the Effective Date, the Investors release the Company and the Promoter from all the obligations as per the SHA, and confirm that the SHA could not be acted upon in its letter and spirit and hence none of the obligations under the SHA such as statutory compliances, company law compliances, contract assignments and other performance obligations are required to be carried out.

**5.** **BOARD OF DIRECTORS & BUSINESS CONTROL**

**5.3** On and from the Effective Conssumation of the Transaction, the Promoter and his wife Smt. Priya Sridhar shall continue to be the Directors of the Company and take care of the management of HFN.

**5.4** The Company continues to be involved *inter alia* in the business that is being presently carried on by it. From the effective date of this agreement, the Board of Directors of the Company shall authorize the Promoter to be one of the two Joint Signatories to operate the bank accounts of the Company along with Satish P Chandra.

**5.4** HFN would continue to be involved *inter alia* in the business that is being presently carried on by it. From the effective date of this agreement, the Board of Directors of the Company shall authorize the Promoter to be one of the two Joint Signatories to operate the bank accounts of the Company along with Satish P Chandra.

**6.** **EXPENDITURE IN THE COMPANY**

**6.1** From date of Effective Date, the expenditure in relation to the operations of the Company and HFN shall be borne by the Promoter.

**6.2** On the completion of the transfer of the Transaction Shares from the Investors to the Promoter, after payment of the consideration amount in terms of Clause 2.1 herein, the Company shall be self sustaining and the Promoter shall be responsible for the :

    **i.** Day-to-day operations of the Company, including but not limited to incurring expenditure (capital or recurring), payment of salaries and rent for new premises only; and

    **ii.** Taking decisions, actions or implement the same, in relation to any person or any matter.

**7.** **REPRESENTATIONS & WARRANTIES**

The Investors represent that with effect from the Conssumation of the Transaction :

    **i.** all operations of the Company including administrative, business and banking operations, shall be carried on by the Promoter;

    **ii.** all operations of the HFN, including administrative, business and banking operations, shall be carried on by the Promoter;

    **iii.** The Investors shall cooperate with the Company and the Promoter for the purpose of smooth transition in terms herein;

    **iv.** The Investors shall cooperate for the filing of the statutory returns, if any, for the period during which SPC was on the Board of Directors of the Company;

    **v.** The Investors shall not set up a claim adverse to that of the Company in relation to its tangible and intangible assets including the Intellectual Property Rights;

    **vi.** No person other than the Investors have any rights, title or interest in the Transaction Shares which are the subject matter of this Agreement.  The Investors jointly and severally are the sole, absolute and lawful owner/s in respect of the Transaction Shares sold under this Agreement and that the same is, free from all encumbrances, charges, mortgages, third party claims, sale, transfer taxes, levies, liens etc.

**8.** **NON COMPETE & NON SOLICIT**

**8.1** The Investors shall not henceforth use the name, or any other asset of the Company and return all Confidential Information belonging to, and in relation to the Company and/or HFN, including but not limited to the Stationary and Common Seal of the Company and/or HFN.

**8.2** The Investors jointly and severally, directly or indirectly, either on their own or for any other person, or through any other person, solicit the clients/customers/employees of the Company and/or HNI, for a period of 3 years from the Effective Date.

**9.** **ESCROW**

**9.1** Parties agree that within 7 (Seven) days from the Effective Date, an Escrow Account will be opened/subscribed with HSBC, Bank, Bangalore or any such bank that the Investor may decide.  The Escrow Account shall be utilized by the Parties for the purpose of depositing/delivering the original Share Certificates of the Transaction Shares along with duly stamped and executed instruments of transfer by the Investors in terms of Clause 1.2 herein and the deposit of the amount of consideration by the Promoter in terms of Clause 2.1 herein.

**9.2**     The expenses payable to the Escrow Agent shall be borne by the Investors and the Promoter equally and the terms and conditions in relation to the Escrow shall include and be not limited to, the terms and conditions as per Annexure B to this Agreement.

**10.     TERMINATION**

**10.1     Mutual termination:** The Parties may discuss and mutually terminate this Agreement at any time during the term of this Agreement by expressing the same in writing.  If the Parties agree to terminate this Agreement, then any Party may offer its shares for sale to the other Parties at the time of such termination.

**10.2     Termination by Investors:** The Investors shall be entitled to terminate this Agreement forthwith, by giving a notice in writing, upon the happening of any one of the following events:

**(i)**     The Promoter failing to pay the amount of consideration as specified under Clause 2.1 and failing to remedy such breach within 30 days (Thirty Days) days of being notified of the same.

**(ii)**     The Company going into liquidation or passing a resolution for voluntary winding up or a receiver or liquidator being appointed in respect of any of the property of the Company or a petition for winding up of the Company is admitted by a competent court.

**10.3     Termination by Promoter:** The Promoter shall be entitled to terminate this Agreement forthwith, by giving a notice in writing, upon the happening of any one of the following events:

**(i)**     Investors committing a material breach of any provision of this Agreement which shall include any of its representations and warranties being incorrect or false and failing to remedy such breach within 30 (thirty) days of being notified of the same.

**(ii)**     Provided however that termination in terms of this Clause 10.3 shall not relieve or absolve the Investors of such of their respective obligations as have already accrued prior to such termination or such obligations as arise as a result of such termination.

**10.4     Automatic Termination :** This Agreement shall automatically terminate if the Promoter is not able to deposit the amount of consideration mentioned in Clause 2.1 within the timeframe as agreed in the said clause 2.1 or such extended date as may be agreed to between the Parties in writing.

**11.     CONSEQUENCE OF TERMINATION**

**11.1**     Upon the termination of this Agreement by either the Investors (under Clause 10.2 above) or by the Promoter (under Clause 10.3 above) owing to a breach by the other Party, the Escrow Agent shall on receipt of a notice of termination of the Agreement from both the Parties (either individually or together), forthwith return the Share Certificates of the Transaction Shares along with the duly stamped and executed instruments of transfer deposited/delivered by the Investors to the Investors and return the 5% of the Consideration paid in by the Promoter.  Provided that before the return of the documents to the Investors, a notice of 15 (Fifteen) days shall be given by the Escrow Agent to the Parties to fulfill and comply with the requirements of the Agreement.  On the failure thereafter, the Escrow Agent shall forthwith return the documents to the Investors on receipt of a notice of termination in this regard.

11.2     Upon the termination of this Agreement owing to a failure of the Promoter to deposit the amount of consideration as per Clause 2.1 herein, which is followed by termination of this Agreement as per Clause 10.4 herein, the Investors are entitled to purchase the equity shares held by the Promoter, on similar terms and conditions that the Investors have been granted by the Promoter, as detailed in Clause 2.1 relating to the time and multiple applicable on the investment by the Promoter and such other terms and conditions contained in this agreement to the extent applicable to the Investors.  For the purposes of this reciprocal offer by the Investor to the Promote, the parties agree the total investment by the Promoter hereto, to be about Rs.59.66 Lakhs (Rupees Fifty Nine Lakhs and Sixty Six Thousand Only).  The Investors shall make offer for purchase of such shares within 30 (Thirty) days of the termination of this Agreement as per Clause

10.4 herein. On receipt of such offer, the Promoter shall deliver/hand over the said shares to the Investors on receipt of the amount of consideration mentioned in this Clause 11.2.

**12.      GENERAL**

**12.1     Good Faith --** The Parties acknowledge that this Agreement is concluded in good faith and each Party will strive to protect the interests of the other.

**12.2.    Confidentiality --** The Parties agree that all information and material about the Company and/or HNI is confidential and that the same is shared in good faith. Accordingly the Parties shall not use for their own benefit or the benefit of any third party such information other than as provided herein.

**12.3     Survival --** Such clauses of this Agreement as by their nature are required to survive beyond the life of this Agreement shall survive this Agreement and continue to be binding on the Parties. It is clarified that the expiry/termination of this Agreement will not affect the rights/liabilities of either Party incurred or accrued prior to such event.

**12.4     Waiver --** No act of forbearance and no concession shown by either Party to the other in the performance of any of the terms of this Agreement will be construed as a waiver of the relevant provision by the former and will not supply a ground to the latter to seek similar forbearance or concession in the future.

**12.5     Disputes --** Any disputes, differences or claims under or in relation to this Agreement will be referred to arbitration. Arbitration proceedings will be in Bangalore and by a sole arbitrator. Subject to the above, only the Courts in Bangalore will have jurisdiction to try any disputes in relation to this Agreement.

**12.6     Entire Agreement --** This Agreement constitutes the entire agreement between the Parties on its subject and supersedes all prior agreements, arrangements or understandings, whether verbal, written or implied. Any amendments to this Agreement shall be in writing and signed by both Parties.

**12.7**     The expressions "GTP", "SPC", "Investors", "Company" and "Promoter" will be deemed to include their respective successors, legal heirs and representatives-in-interest, as the case may be, unless the context otherwise requires.

**IN WITNESS WHEREOF THE PARTIES SET THEIR HANDS HERETO IN THE PRESENCE OF THE ATTESTORS**

**For GLOBAL TECH PARK PRIVATE LIMITED**          _____
**SRI SATISH P. CHANDRA**
**MANAGING DIRECTOR**


**SRI SATISH P. CHANDRA**                          _____


**For ACRIS TECHNOLOGIES PRIVATE LIMITED**         _____
**SRI SRIDHAR SANTHANAM**
**DIRECTOR**

**SRI SRIDHAR SANTHANAM**               _____

**WITNESSES**

1.                   2.

**ANNEXURE A**
**(Please see Clause 3.2)**

**RESTRICTIONS ON THE INVESTORS**

**1.**     Change/s in the name.

**2.**     Amendment/s to the Memorandum of Association or Articles of Association or the constituent documents.

**3.**     Change in the registered office.  However, the Promoter is free to shift the present place of business from 4th floor Concord block (UB city), 24 Vittal Mallya Road, Bangalore 570001 to any other place as is suitable for the purpose of business of the Company.

**4.**     Acquire, invest in or divest any assets of the Company in excess of the value of Rs.10,000 (Rupees Ten Thousand).

**5.**     Making loans out of the funds in excess of Rs.10,000 (Rupees Ten Thousand) either in a single instance or in the aggregate.

**6.**     Borrowing loans in the name of the Company and/or HFN in excess of Rs.10,000 (Rupees Ten Thousand) either in a single instance or in the aggregate.  The creation of any encumbrance or charge upon or in respect of any property or assets of the Company and/or HFN except in the normal course of business.

**7.**     Any significant change to any accounting policies, unless required by.

**8.**     Sale of any tangible or intangible assets beyond the normal course of business and beyond the value of Rs.1,000 (Rupees One Thousand).

**9.**     Assignment, sale, licensing or otherwise transfer or other disposition of part or whole of the Company's asset/s or business, or any intellectual property right that is either owned by the Company and/or HFN or that the Company and/or HFN has a license to (or is otherwise entitled to) use.

**10.**    Approval of inter-company loans and investments or guarantee/security to be given, in excess of Rs.1,000 (Rupees One Thousand).

**11.**    Liquidation, dissolution or winding-up of the Company and/or HNI, and any arrangement entered into between the Company and/or HFN and their creditors in connection with such liquidation, dissolution or winding-up either directly or indirectly.

**12.**    Any agreement with any Shareholder or any of such and/or any related party transactions.

**13.**    Any guarantee or indemnity furnished by the Company and/or HFN other than in the ordinary course of business.  However, if the guarantee or indemnity exceeds Rs.1,000 (Rupees One Thousand), it would still require the consent of the Promoter.

**14.**    Any joint venture agreements, technology transfer, technical collaboration and/or assistance in India or abroad, other than in the normal course of business.

**15.**    Appointment of any director on the Board.

**Acknowledged, Agreed and Confirmed the above terms as per this Terms Sheet signed on this day, at Bangalore**

**For GLOBAL TECH PARK PRIVATE LIMITED**      _____
**SRI SATISH P. CHANDRA**
**MANAGING DIRECTOR**


**SRI SATISH P. CHANDRA**      _____


**For ACRIS TECHNOLOGIES PRIVATE LIMITED**      _____
**SRI SRIDHAR SANTHANAM**
**DIRECTOR**


**SRI SRIDHAR SANTHANAM**      _____

**ANNEXURE B**
**(Please see Clause 9)**

**TERMS & CONDITIONS IN RELATION TO THE ESCROW**

**A.     Account Opening/Subscription**

**1.**     Within 3 (Three) days from the Effective Date of the Agreement, the Parties shall cooperate with each other for opening the Escrow Account with a Bank, Financial Institution, or person (Firm/Company/Individual/Association of Persons) providing such services as is required in terms herein, that the parties may mutually agree upon, hereinafter referred to as the "**Escrow Agent**".

**2.**     The Parties shall comply with the terms and conditions lay down by the Escrow Agent and accepted mutually.  The Investors and the Promoter shall be liable to make payments in equal proportion to the Escrow Agent for the expenses.

**B.     Deposit Conditions:**

**1.**     The Investors shall within a period of 7 (Seven) days from the Effective Date, deliver/deposit the original Share Certificates of the Transaction Shares along with duly stamped and executed instruments of transfer in/with the "Escrow Account" and the Promoter shall deposit the amount representing 5% of the Purchase Consideration as per this agreement.  The Investors shall deposit the said documents with Escrow Agent without creating any encumbrance thereon, which is prejudicial to the interests of the Promoter under this Agreement.

**2.**     In addition to the above, the Promoter may deposit further amounts in the Escrow Account as and when he chooses.  On depositing further amounts in terms herein, the Promoter shall inform the Investors.

**B.     Release Conditions:**

**1.**     If the Promoter has deposited an amount of Rs. 8.22 Crores (Rupees Eight Crores Twenty Two Lakhs), on or before 90 (Ninety) days from Effective Date, the Share Certificates of the Transaction Shares along with the duly stamped and executed instruments of transfer shall be handed over to him by the Escrow Agent and the amount so deposited by the Promoter shall be released to the Investors.

**3.**     If the Promoter has deposited an amount of Rs.10.28 Crores (Rupees Ten Crores Twenty Eight Lakhs), on or before 180 (One Hundred Eighty) days from Effective Date, the Share Certificates of the Transaction Shares along with the duly stamped and executed instruments of transfer shall be handed over to him by the Escrow Agent and the amount so deposited by the Promoter shall be released to the Investors.

**C.     Termination Conditions:**

**1.**     If the Promoter has failed to deposit the amount as per this agreement on or before 180 (One Hundred Eighty) days from Effective Date, the Escrow Agent shall on receipt of a notice of termination of the Agreement from both the Parties forthwith return all the moneys so far deposited by the Promoter and also return the Share Certificates of the Transaction Shares along with the duly stamped and executed instruments of transfer to the Investors.  However, before return of the amount to the Promoter and return of the documents to the Investors, a notice of 15 (Fifteen) days shall be given by the Escrow Agent to the Parties to fulfill and comply with the requirements of the Agreement.  On the failure thereafter, the Escrow Agent shall forthwith return the amount and the documents to the respective Parties.

**D.     Instructions:**

The Escrow Agent shall act as per the instructions of the Parties and at not point of time, shall the Parties give any contrary instructions to the Escrow Agent without the consent of the other Party.

E.  **Terms of Escrow Agreement:**

The Share Certificates of the Transaction Shares along with the duly stamped and executed instruments of transfer deposited by the Investors and the amounts deposited by the Promoter shall be in deposit with Escrow Agent, as long as the obligation of the Promoter to deposit the amount of consideration as per Clause 2.1 of the Agreement is subsisting or for a period of 180 (One Hundred Eighty) days whichever is later.

**Acknowledged, Agreed and Confirmed the above terms as per this Terms Sheet signed on this day, at Bangalore**

**For GLOBAL TECH PARK PRIVATE LIMITED**          _____
**SRI SATISH P. CHANDRA**
**MANAGING DIRECTOR**


**SRI SATISH P. CHANDRA**          _____


**For ACRIS TECHNOLOGIES PRIVATE LIMITED**          _____
**SRI SRIDHAR SANTHANAM**
**DIRECTOR**

**SRI SRIDHAR SANTHANAM**          _____