**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ALLAN MILLER, DENNIS CALLAGY, | ) | |
| THE CHESTER S. JAKUBOWSKI ROTH IRA, | ) | |
| RICHARD GABRIEL, VICTORIA DUDIN | ) | |
| SILIOUTINA, GEOFFRY MEEK, GENE | ) | |
| ROBINSON, ERIC BROWN, SCOTT NOONE, | ) | |
| JOHN MURGO, MAX KUPCHIX and | ) | |
| WILLIAM HARDING | ) | |
|     Plaintiffs | ) | C.A. No. 14-CV-12337 |
|     v. | ) | |
| | ) | |
| ALESSANDRO DONNINI, SRIDHAR | ) | |
| SANTHANAM, HFN, INC., SATISH | ) | |
| CHANDRA, CHETAN CHANDRA, | ) | |
| ACRIS TECHNOLOGIES, PRIVATE, LTD. | ) | |
|     Defendants | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE

The Plaintiffs' documents attached as exhibits to their Opposition to the Defendants'

Motion to Dismiss are sufficiently referenced in their Amended Complaint ("Complaint") to be

considered by the Court.  Moreover, those documents are clearly known to the Plaintiffs and

ones that they relied on in preparing their Complaint.  Accordingly, under the law in this Circuit,

the Court is permitted to consider the documents in analyzing the Motion to Dismiss. The

Defendants' Motion to Strike is thus ill-considered and should be denied.

## LEGAL STANDARD

In *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993), the First Circuit articulated the

circumstances under which a plaintiff may submit documents in opposing a motion to dismiss

that were not affixed to the complaint.  Pursuant to *Watterson,* documents whose authenticity are

not disputed and which are (a) official public records or (b) central to the plaintiff's claims or (c)

sufficiently referenced in the plaintiff's claims may be considered by a court in ruling on a

motion to dismiss. *Id.*

1

Importantly, a key issue in determining whether to consider extraneous documents is the question of whether or not the documents were known to the plaintiff at the time the complaint was filed.  As the court in *Watterson* noted, "Where plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.*, *citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48* (2d Cir.1991); cert. denied, 503 U.S. 960 (1992); *Berk v. Ascott Inv. Corp.,* 759 F.Supp. 245, 249 (E.D.Pa.1991) ("[W]hen a plaintiff has admitted the authenticity of a document ..., a court may consider that document in ruling on a motion under Fed.R.Civ.P. 12(b)(6).")

For example, in *McCourt v. Tap Pharmaceutical Prod., Inc.*, Civ. A. No. 07-10374-GAO, 2008 WL 2129825, at *4 (D. Mass. May 20, 2008), cited by the Defendants, Judge O'Toole allowed a joint defense agreement to be used as an exhibit, where the complaint had alleged "an agreement to cooperate" with other defendants.  Only for documents entirely outside the scope of the complaint did Judge O'Toole strike the exhibits.  *Id.* at *8.

As shown below, the documents at issue here are all well within the First Circuit's allowance. The plaintiffs admit the authenticity of the documents, have actual notice and have relied on the documents in framing their Complaint.  The documents are also sufficiently referred to in the Complaint to be admitted for consideration of the motion to dismiss.

## ARGUMENT

In their Motion to Dismiss, the Defendants took umbrage with the fact that certain of the allegations in the Plaintiffs' 116-paragraph Complaint came from an unrevealed source. MTD at 6. They further asserted that the facts revealed in the Complaint are no more than "baseless, accusatory, innuendo." MTD at 1. In light of their postured consternation at apparently being

unaware of the facts on which the Plaintiffs base their claim, it is curious that the Defendants, upon being presented with the documentary evidence that should cure their supposed uncertainty, now seek to strike the information, even though it is clearly referenced or incorporated in the Complaint.

A.      Exhibit 1       Paragraph 40 of the Complaint specifically refers to an agreement between the defendant, Sridhar Santhanam ("Santhanam") and the defendant, Satish Chandra ("Chandra") relative to the secret purchase of shares of the Defendant, Acris Technologies, Private, Ltd. The Plaintiffs believe Exhibit 1 reflects that Agreement, which the Defendants do not deny. The secret agreement between these two fiduciaries is not merely alluded to in the Complaint. It is a central allegation, specifically referenced, and thus Exhibit 1 should be considered by the Court.

B.      Exhibit 2       The Defendants appear to have no issue with Exhibit 2, which is an email from HandsFree to Dell requesting that Dell postpone payment of HandsFree invoices. This was part of the scheme outlined in the Complaint to drive down the perceived value of HandsFree.

C.      Exhibits 3 & 4.        As is reflected in Exhibit 2, and described in detail in the Complaint, the Defendants undertook a scheme to depress the value of HandsFree. Exhibit 3 is an email exchange between HandsFree and Dell, and Exhibit 4 is a spreadsheet created by HandsFree. These documents are part of the scheme referenced in the Complaint, beginning in Paragraph 28 ("Santhanam, Donnini and Ponusamy had directed Dell to withhold HandsFree invoices[.]").  This withholding scheme is reflected in the spreadsheet's blue highlighted portions, showing no payments and a lack of DO (Dell Order) numbers.  Paragraph 47 cites that "Dell complied with the request," and payments are also reflected in this spreadsheet. Together,

Exhibits 3 and 4 reflect the scheme undertaken by the Defendants and are sufficiently referenced in the Amended Complaint.  Thus, they should be considered by the Court.

D.    Exhibit 5        Paragraph 43 of the Complaint asserts that Santhanam and the Defendant, Alessandro Donnini had projections from Dell regarding its plans to "rapidly expand its purchases of the HandsFree Product." They hid this information from the Plaintiffs. *Id.* Paragraph 43 goes on to assert that "Dell, in fact, revealed that the HandsFree product was being used on 12-15% of customer service calls."  The Defendants complain in their motion that the "Court is left guessing about what connection, if any, [Exhibit 5] has to the specific averments in the Complaint[.]" MTS at 4. But a quick look at the Exhibit, which is an email from Dell to HandsFree, reveals that it is this email that provided the foundation for the assertion that HandsFree product was being used on 12-15% of customer service calls.  In fact, the figure 12-15% in the Complaint *is a quote from this email.* Once again, therefore, Exhibit 5 is sufficiently referenced in the Complaint and should be considered by the Court.

E.    Exhibit 6        Paragraph 43 of the Complaint asserts that Dell advised the Defendants that the HandsFree product could be used in 55% of their calls. Exhibit 6 is that email from Dell, indicating that Dell's goal for the use of the HandsFree product was 55% coverage.  Once again, the Complaint quoted the figure from the email, and as a result it is sufficiently referenced in the Amended Complaint and should be considered by the Court.

F.    Exhibit 7        Exhibit 7 is a contract between HCL and HandsFree. This is the contract referenced in the Complaint. The Defendants suggest that this is not the contract referenced in the Complaint, but they are wrong.  The Complaint references a contract that was executed in December 2011.  At worst, this is simply a scriveners' error.  As far as the Plaintiffs' know, Exhibit 7 is the only contract between HCL and HandsFree. Of course, the Defendants

failed to reveal the existence of this Agreement to the Plaintiffs, despite their fiduciary obligation to do so.  It is sufficiently referenced in the Complaint and should be considered by the Court.

G.    Exhibits 8 & 9        Paragraph 50 of the Complaint alleges that "On October 3, 2011, Santhanam, Donnini, and Ponnusamy made a presentation to Kumar Shiralagi at NEA-IUVP and provided the true financial picture of the company, including the fact that Dell was a loyal customer of HandsFree already generating significant revenue with existing products, and that revenue projections with HCL were potentially $160 million a year."

Exhibit 8 is an email from Santhanam to Ponnusamy dated October 2, 2011, which attaches a PowerPoint presentation.  Exhibit 9 is the PowerPoint presentation that was made to IUVP.  Both exhibits are sufficiently referenced in the Complaint, as the information that "Dell was a loyal customer of HandsFree already" is reflected on pages 15-17 of Exhibit 9, and the revenue projections for the HCL contract are cited on pages 15-17.  Moreover, page 20 of Exhibit 9 cites revenue to date of $420,000. This was used in the Complaint to support the Plaintiffs' contention that revenue was hidden from them, as well as from the business valuator whose report was used by the Defendants as Exhibit A to their motion to dismiss, and who was apparently provided information by the Defendants that the revenue was only $239,000.

CONCLUSION

The Motion to Strike of the Defendants should be denied because each of the exhibits is sufficiently referenced in the Amended Complaint and should be considered by the Court.

Respectfully Submitted,
The Plaintiffs,
By Their Attorneys,


___/s/ Patrick J. Dolan_____
Patrick J. Dolan  BBO #564250
*pdolan@pkdllp.com*
Perry, Krumsiek & Dolan, LLP
210 Union Wharf
Boston, MA 02109
617-720-4300
617-720-4310 (fax)


___/s/ Timothy Cornell_____
Timothy Cornell BBO #654412
*Timothycornell5@gmail.com*
Gardner Cornell, P.C.
33 Mount Vernon Street
Boston, MA 02107
603-277-0838

DATE:  October 15, 2014

<u>Certificate of Service</u>

I, Patrick Dolan, hereby certify that I served the above document was filed electronically using the Court's ECF system on October 15, 2014 and thereby served to the Defendants.

<u>/s/ Patrick Dolan</u>