# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN MILLER, DENNIS CALLAGY, THE CHESTER S. JAKUBOWSKI ROTH IRA, RICHARD GABRIEL, VICTORIA DUDIN SILIOUTINA, GEOFFRY MEEK, GENE ROBINSON, ERIC BROWN, SCOTT NOONE, JOHN MURGO, MAX KUPCHIK, and WILLIAM HARDING<br><br>              Plaintiffs,<br><br>     v.<br><br>ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.,<br><br>           Defendants. | C.A. No.  14-CV-12337 |

**REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Robert B. Lovett (BBO #561691)
Elizabeth C. Inglis (BBO #678349)
Connor R. Cobean (BBO #689127)
Cooley LLP
500 Boylston St.
Boston, MA 02116-3736
Tel.: (617) 937-2300
Fax: (617) 937-2400
rlovett@cooley.com
einglis@cooley.com
ccobean@cooley.com

*COUNSEL FOR ALESSANDRO DONNINI,
SRIDHAR SANTHANAM, HFN, INC,
SATISH CHANDRA, CHETAN CHANDRA,
ACRIS TECHNOLOGIES, PRIVATE, LTD.*

# Table of Contents

**Page**

I.  PRELIMINARY STATEMENT ......................................................................... 1

II.  ARGUMENT ................................................................................................... 3

    A.  All Claims And Allegations Based On Plaintiffs' Anonymous Whistleblower Are Defective And Must Be Dismissed. .......................... 3

    B.  Plaintiffs' Claims Of Securities Fraud Are Too Late. .............................. 5

        1.  The Facts And Settled Law Demonstrate That Plaintiffs' Exchange Act Claims Are Time Barred. ....................................... 5

        2.  Plaintiffs Were On Inquiry Notice Well Before the Deal Closed And Did Nothing ................................................................ 7

    C.  Plaintiffs' Attempt To Recast Their Fraud Case As One Based On Scheme Is Misplaced And Otherwise Irrelevant Under The PSLRA And Rule 9(b). ......................................................................................... 8

    D.  Plaintiffs' Delay Allegations Fail As A Matter Of Law, And Are Demonstrably Wrong. ............................................................................. 11

    E.  Plaintiffs Try To Mislead This Court Regarding HFN's Form D Filing With The SEC. ............................................................................. 12

    F.  There Was No Duty To Disclose Dell's Hopes Or Aspirations For The HandsFree Technology. .................................................................... 13

    G.  The Transfer Of Acris's Stock Does Not Implicate Any Duty Owed To The Plaintiffs, Each Of Whom Was A Minority Shareholder In HandsFree ...................................................................... 14

    H.  Plaintiffs "Capacity" Arguments Do Not Save Their Claims. ................. 14

    I.  Plaintiffs Play Fast And Loose With The Facts Concerning Valuation. ................................................................................................ 15

III.  CONCLUSION ............................................................................................... 16

## I.   **PRELIMINARY STATEMENT**

Plaintiffs' Opposition to Defendants' Motion to Dismiss (the "Opposition") fails to cure the reasons their innuendo laiden Amended Complaint (the "Complaint") is defective and must be dismissed.  The crux of Plaintiffs' claim is that the Defendants concealed the Dell and HCL contracts to induce Plaintiffs to exit HandsFree and not become shareholders in newly created HFN, Inc.  The fatal defects with this theory as a "fraud" claim are several.

First, nowhere does the Complaint or Opposition identify any actual loss suffered by the Plaintiffs.  In order for a federal court to have standing to adjudicate this dispute as an actual case or controversy, Plaintiffs must plead specific facts showing that they "suffered an actual injury, which is fairly traceable to the defendants' conduct…." *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F. 3d. 658, 666 (1st Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  The injury must be "(a) concrete and particularized, and (b) actual or imminent, not 'conjectural' or 'hypothetical.'"  *Lujan*, 504 U.S. at 560 (internal citations omitted).  Here, Plaintiffs have failed to plead any facts showing economic or any actual loss, instead relying on speculation and conjecture.  As such, these Plaintiffs have no standing to be before this Court under Article III of the Constitution.

Second, the wealth of detailed information concerning HandsFree's financial condition that was disclosed to Plaintiffs months before the transaction closed bars Plaintiffs' securities fraud claims.  This information included valuations done by American Appraisal and the prospective investor, the identity of the investor (NEA-Indo-US Venture LLC ("IUVP")) and its URL, the disposition of Acris as a shareholder and creditor, the conversion ratio applied to HandsFree shareholders should they remain with the new company (HFN, Inc.), Mr. Santhanam's role, etc….  Accordingly, Plaintiffs' claims are simply too late because these

extensive disclosures were made to Plaintiffs more than two years before this case was filed, and put them on actual or inquiry notice of the matters at issue here.

Third, Plaintiffs fail to plead specific facts from which fraud can be inferred.  They now acknowledge they were aware of revenue from Dell to HandsFree, and despite their unnamed "insider" or "source," nowhere point to the actual performance of Dell for HFN in 2011, 2012, or at any time.  This pleading and substantive flaw is even more pronounced relative to HCL. Nowhere does the Complaint show HCL income before or after the HFN transaction, thereby omitting from the pleading any facts from which a duty to disclose or an actual loss can be inferred.  The reason for Plaintiffs' tactical and blatantly misleading omission of such "facts" is simple: HCL did not generate any income.  Software development is a business ***cost***, which does not result in income until licenses are purchased.  Nowhere does the Complaint plead any facts related to HCL licenses or income generated, and absent such pleading the claims are defective and must be dismissed.

Fourth, Plaintiffs try and lump together all Defendants based on presence at a meeting, corporate position or capacity, or shareholder status, without pleading facts showing any individual Defendant's ***knowingly*** fraudulent conduct.  Plaintiffs use the rhetoric of fraud and negative innuendo to sully honorable business conduct.  This is not enough for fraud – or, indeed, claims that "sound in fraud" such as those at issue here.

Finally, Plaintiffs try to cherry pick isolated factual allegations – e.g., an alleged request to delay an invoice by 30 days one year before the HandsFree-HFN transaction – and use the rhetoric of fraud around those isolated allegations in the hope that this case will survive dismissal.  Certainly, for example, invoices delayed 30 days in April 2011 is a non-event as to a transaction that occurred one year later in April 2012; an accurate Form D filing, which complies

with the Securities and Exchange Commission's instructions, is facially exculpatory and certainly not fraud; and statements made in January 2012 which are later clarified or corrected with detailed factual information are not fraud.  When looking through the rhetoric to actual facts this lawsuit is exposed as a stick up – a suit started based on rumors that HFN is attempting to raise more money. (*See* AC ¶26.)  Lawsuits interfere with technology companies' efforts to attract investors, which is a well-known complication that can sometimes buy a settlement even when the claims, like those at issue here, are unfounded.

Accordingly, for the reasons set forth in Defendants' Motion to Dismiss and accompanying memorandum of law, as well as for the reasons set forth herein, Defendants ask that the Complaint be dismissed with prejudice.

## II.   ARGUMENT

### A.   All Claims And Allegations Based On Plaintiffs' Anonymous Whistleblower Are Defective And Must Be Dismissed.

Plaintiffs do nothing to address the complete absence of facts in the Complaint from which the Court could conclude that any allegations based on their "whistleblower" should survive.  As set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Opening Brief"), the First Circuit requires a high level of specifics and detail about confidential witnesses before considering allegations based on such sources.  Opening Br. at 6. The law requires such specificity to ensure that "fraud" claims cannot be falsely bolstered by McCarthyesque accusations.  The sources themselves must be "described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  *N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 51 (1st Cir. 2008) (internal quotation and citation omitted).

Absent the inclusion in the Complaint of such specific facts, a plaintiff is not entitled to a favorable inference as to allegations that rest on straw men.

Plaintiffs fail to provide anything close to that level of particularity.  Instead, Plaintiffs attempt to direct the Court away from this void in the Complaint with the following circular logic: Plaintiffs' attempted belated submission of a number of new documents nullifies their obligation to meet the First Circuit's standard requiring detail and specifics regarding the source's position, knowledge, reason for and level of access to information relevant to the allegations, and expertise.  Leaving aside that the documents are extrinsic to the Complaint and should not be considered by the Court on a Motion to Dismiss (*See* Defendants' Memorandum of Law In Support of Motion to Strike (Docket #28)), the submission of additional documents does not magically render reliable an unnamed, straw man of a source.  Plaintiffs argue that the documents show that their source must have been a "***key enough a player***" at HandsFree (Opp. at 8), as if that pronouncement cures the factual voids in the Complaint.  Nothing has been pled (or provided to this Court), however, from which one could so conclude.  Plaintiffs do nothing in the Complaint or otherwise to build the indicia of reliability of the whistleblower.  Nor do Plaintiffs align the newly submitted but extrinsic documents to the whistleblower or, in turn, link those documents directly to the allegations in the Complaint.  Plaintiffs are required to identify: the source's position in the company, if any; how, if at all, he or she would have access to the information; and how he or she would be familiar with and understand the content of the documents.  Plaintiffs did none of this.  Unsupported statements that this unidentified individual supplied the e-mails and other information is not enough.  S*ee In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 2d 278, 286 (D. Mass. 2013).

**B.      Plaintiffs' Claims Of Securities Fraud Are Too Late.**

      **1.      The Facts And Settled Law Demonstrate That Plaintiffs' Exchange Act Claims Are Time Barred.**

According to Plaintiffs' Complaint, Defendants misrepresented during a meeting held with Plaintiffs on January 18, 2012 that HandsFree "had no viable customers or revenue at all" (AC ¶ 28), and that there was "no client, no revenue" (*id*. ¶ 53).  Leaving aside Plaintiffs' failure to ascribe fraud to the specific statements or acts of each Defendant, the American Appraisal report and covering letter from HandsFree, sent to Plaintiffs in February 2012, provided the very information they claim in the Complaint was hidden from them.  Opening Br. at 3-4.  In an attempt to escape dismissal because Plaintiffs were provided with superseding, hard financial information in the American Appraisal report demonstrating that their federal securities claims are too late, Plaintiffs argue that (1) the Court should not consider the American Appraisal report at all; and (2) even if the American Appraisal report is considered, Plaintiffs' claim is not time-barred because "the fact that revenue from Dell was reported is no great revelation."  Opp. at 7.[1]

First, as Plaintiffs themselves make clear in their Opposition, the American Appraisal report is explicitly incorporated in the Complaint (*see* Opp. at 7, citing AC ¶ 56), and Plaintiffs do not challenge its authenticity.  Thus, it is properly considered by the Court on a Motion to Dismiss, including in connection with determining whether the Complaint was brought after expiration of the statute of limitations.  *See Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*,

---

[1]      Clearly, one of the goals of the January 2012 meeting was to explain that HandsFree was not doing well, and the unidentified speaker was offering an opinion that the company had no revenue.  A matter of opinion is not actionable as fraud, *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21 (1st Cir. 2001), and the alleged vague pronouncements were superseded by the later delivered American Appraisal report, accompanying financial disclosures and deal terms, which reflected the actual financial condition of the company and relevant third party valuations.

267 F.3d 30, 33-34 (1st Cir. 2001); *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (cited by Plaintiffs, and holding that statute of limitations is properly considered on a motion to dismiss based on "[a] review of the complaint, together with any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6)").

Second, a statute of limitation defense is commonly decided in a motion to dismiss, as the authorities relied on by Plaintiffs make clear. *See LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 511 (1st Cir. 1998) (granting a motion to dismiss based on a statute of limitations defense). Dismissal on statute of limitations grounds may rest on the complaint plus "any other documents appropriately considered under Fed. R. Civ. P. 12(b)(6)." *Blackstone*, 244 F.3d at 197; *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004). The American Appraisal report, and accompanying information, is properly considered here. Indeed, Plaintiffs allege in their Complaint that two months before closing and one month after Santhanam and Donnini allegedly misled the Plaintiffs by stating the company had no contracts or revenue, Plaintiffs were given actual notice of the "facts" respecting the company in a detailed written communication containing HandsFree's financials, related valuation and conversion information, and the American Appraisal report. (AC at ¶ 56; Lovett Declaration at Ex. A). Because the American Appraisal report provided actual notice that the vague pronouncements made one month earlier were incorrect or simply matters of opinion, Plaintiffs' claim of fraud based on statements made at the earlier January 18, 2012 meeting are foreclosed. *See FirstBank P.R., Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37, 40 (1st Cir. 2011) (dismissing suit as time barred where plaintiff had actual notice of the facts constituting the defendants' alleged Section 10(b) violation). Moreover, the statute of limitations clock began when the American Appraisal and covering deal information was received, or when the deal closed in April 2012, which means that

6

this July 2014 case is time-barred. *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 189-90 (1st Cir. 2006) (dismissing cause of action as time-barred where pleadings referred to and relied on a letter providing inquiry notice of injury and starting limitations clock).

### 2. Plaintiffs Were On Inquiry Notice Well Before the Deal Closed And Did Nothing.

The materials provided to the Plaintiffs on February 19, 2012 (two months before closing), included the following, which are part of the record before this Court:

- A detailed description of their opportunity to remain with the new HFN, Inc. or cash out (See Declaration of Robert B. Lovett In Support of Motion to Dismiss (Docket #21), at Exhibit A);

- The share conversion ratio and its underlying economic rational (*id.*);

- American Appraisal's valuation of HandsFree's intellectual property, including its acknowledgment that HandsFree had "one live contract … and a revenue of USD 300,000 in FY 2011." (*id.*);

- Disclosing that "Newco" was funded by "NEA-IndoUS Venture Fund LLC (www.iuvp.com)" (*id.*);

- Disclosing that IUVP had valued HandsFree at "$950,000 for the asset and business transfer" before IUVP invested (*id.*);

- That Acris would be exiting as a shareholder, and paid past due compensation (*id.*).

Even if the American Appraisal report and other materials did not provide notice of all the facts surrounding Defendants' purported deception, or of the deal terms, Plaintiffs were on notice to exercise reasonable diligence to ask questions, to find out. No facts were pled in the Complaint that the Plaintiffs even tried to exercise diligence after receiving the foregoing. The First Circuit has explicitly adopted the doctrine of inquiry notice in Rule 10b–5 actions. *Maggio v. Gerard Freezer & Ice Co.,* 824 F.2d 123, 128 (1st Cir. 1987). The American Appraisal report is again properly considered in this analysis. *Epstein*, 460 F.3d at 189-90 (dismissing cause of action as time-barred where pleadings referred to information providing inquiry notice of

injury).[2]

### C.    Plaintiffs' Attempt To Recast Their Fraud Case As One Based On Scheme Is Misplaced And Otherwise Irrelevant Under The PSLRA And Rule 9(b).

Plaintiffs attempt to avoid the strict pleading requirements of the PSLRA and Rule 9(b), by claiming that (i) the case also is one based on "scheme" liability under 10b-5(a) and (c); and (ii) asserting that cases involving a fraudulent scheme are "more general," implying that the pleading standard is lower than in fraud cases based on statements or omissions.  Opp. at 9-10. Plaintiffs are wrong on both counts, and the Complaint's fraud claims remain defective and subject to dismissal.

First, Plaintiffs' effort to recast the case as a "scheme" case is belied by the Complaint. Parroting the words of a scheme does not satisfy the stringent pleading standards of the PSLRA or Rule 9(b).  The centerpiece of the Complaint is a meeting held on January 18, 2012 where the Defendants – we are not told which one – lied.  Plaintiffs claim that these false statements, coupled with omitted truths that came to light later, induced them to tender their shares in HandsFree. *See, e.g.*, AC ¶¶ 24; 53-54.

Second, even if Plaintiffs' claim *could* be construed as one for scheme liability, Plaintiffs have failed to satisfy the PSLRA's and Rule 9(b)'s heightened pleading standard.  The stringent particularity standard, codified in the relevant statute and Federal Rule, does not disappear merely because the "fraud" claim is analyzed under different subsections of Rule 10b-5.  *See In re Refco Capital Mkts., Ltd. Brokerage Customer Sec. Litig.*, 2007 WL 2694469 (S.D.N.Y. 2007), *aff'd*, 680 F.3d 214 (2d Cir. 2012) (a sustainable 10b-5(a) or (c) claim must "specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts

---

[2]      Finally, Plaintiffs cannot argue fraudulent concealment to avoid actual or inquiry notice.  The record demonstrates that the Plaintiffs had the facts in their possession before closing.  *Powers v. Bos. Cooper Corp.*, 926 F.2d 109, 111 (1st Cir. 1991).

were performed, and the effect the scheme had on investors in the securities at issue"); *In re Global Crossing, Ltd. Sec. Litig.*, 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004) (same).  Indeed – and for the reasons set forth in Defendants' Opening Brief – Plaintiffs simply do not allege the who, what, and where of the supposed fraud, delineating the alleged fraudulent conduct committed by each Defendant, how or why such specific conduct was misleading, or the Plaintiffs' reliance thereon.  Nor do Plaintiffs meet the well-established test for a "strong inference" of scienter, which requires the pleading of ***specific facts giving rise to a strong inference of each individual defendant's*** fraudulent intent.  *See In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 46 (1st Cir. 2014) (affirming dismissal of securities fraud claim where the allegations "fail to compel a strong inference of scienter on the part of defendants"); *King v. Wells Fargo Home Mortg.*, 2013 WL 1196664, at *2 (D. Mass. Mar. 25, 2013) (fraud claim dismissed where plaintiffs "lumped" defendants together).

Third, Plaintiffs cannot save any part of their Exchange Act claim by trying to use 10b-5 (a) and (c) as a "back door" into Rule 10b-5.  *See, e.g.*, *In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) (subsections (a) and (c) hinge on "the performance of an inherently deceptive act ***that is distinct from an alleged misstatement***") (citation omitted) (emphasis added); *SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) ("(a) and (c) [may not] be used as a 'back door into liability for those who help others make a false statement or omission in violation of subsection (b)….'").  In other words, a statements/omissions claim like this one must be tied to each defendant and cannot be saved as to any individual defendant simply by trying to use the notion of a "scheme" as a catch-all.  Indeed, Count I of the Complaint makes clear that this case is a statements and omissions case:

- The "Defendants …made untrue statements of fact and/or omitted material facts" as part of their purported "scheme to defraud"; (AC ¶ 63)

- "Defendants had actual knowledge of the misrepresentations and omissions described here …" made as part of a fraudulent scheme; (*id*. ¶ 66)

- "As a result of the dissemination of the materially false and misleading information and failure to disclose material facts …the sale of HandsFree was manipulated….   Defendants were tainted by undisclosed and manipulated information, and relying, …on the false and misleading statements …." (*id*. ¶ 67)

- "At the time of these misrepresentations and omissions, the Plaintiffs were ignorant of their falsity….." (*id*. ¶ 68)

Plaintiffs' vague allegation of "stalling the payment of invoices" (Opp. at 11) does not change the analysis.  Such alleged activity is not only inextricably linked to the alleged omission claim relating to the Dell contract, but is at most supported by a lone allegation of a one-time 30 day delay, one year before closing, in collecting an invoice.  Such a common business practice is nothing like the cases where "schemes" are found adequately plead – i.e., where defendants engage in extensive, complex and fraudulent enterprises designed to defraud the public markets, and artificially inflate the market value of a security.  These are the elaborate, multilevel hoaxes, based on elaborate shams and with roots in fraudulent enterprises built with a fraudulent purpose. HandsFree and HFN, Inc. were or are legitimate businesses, and nothing was alleged otherwise. *See, e.g.*, *SEC v. Durgarian*, 477 F. Supp. 2d 342, 351 (D. Mass. 2007), *aff'd sub nom. SEC v. Papa*, 555 F.3d 31 (1st Cir. 2009) (scheme alleged in stark contrast to the facts alleged here, involving a claim of a multilevel, ongoing trading device designed to cover up losses to investors through pervasive improper accounting adjustments and false certifications);  *Swack v. Credit Suisse First Bos.*, 383 F. Supp. 2d 223, 238-39 (D. Mass. 2004) (scheme adequately alleged where it was "not just that [defendant] issued one or two misleading research reports, but rather that over time he worked extensively . . . to issue bullish research reports" to pump up a public stock); *In re Lernout & Hauspie Sec. Litig.*, 236 F. Supp. 2d 161 (D. Mass. 2003) (defendants engaged in elaborate creation and financing of sham entities to enter into multiple license

agreements for the appearance of significant – but nonexistent – licensing revenues); *In re Global Crossing, Ltd.*, 322 F. Supp. 2d at 329  (cited in Opp. at 10) (allegations of a series of complicated sham swap transactions with multiple third parties designed to create misleading numbers in accounting scheme).

### D.      Plaintiffs' Delay Allegations Fail As A Matter Of Law, And Are Demonstrably Wrong.

Plaintiffs try to back fill their claim that HandsFree worked with Dell to delay payment of HandsFree invoices.  As set forth in Defendants' Opening Brief, (1) the Complaint alleges that "they requested that Dell not pay HandsFree invoices," but never specified who "they" are as required when alleging fraud; (2) the Complaint identified <u>one</u> <u>request</u> to Dell to delay payment of April 2011 invoices for 30 days, until May 2011; and (3) no particularized information was provided, but the Complaint averred "delay kept up through the rest of 2011."  Opening Br. at 8; AC at ¶ 47.  Such allegations are defective and require dismissal.  Plaintiffs attempt to cure these patent pleading defects by submitting two new documents, Exhibits 2 and 3, to the Dolan Declaration.[3]

*Neither of these supposedly inculpatory exhibits names, copies or refers to any individual Defendant; nor do these exhibits or anything else show that any Defendant was aware of them.*

Exhibit 2 to the Dolan Declaration, which Defendants did not move to strike, is an e-mail dated April 1, 2011, from Vidhyacharan Ponnuswamy at HandsFree to Sydney Lewis and others at Dell. That e-mail states as follows:

> "Due to year-end accounting and business transformation happening at HFN USA.  We would request you to postpond (sic) all HFN invoice

---

[3]      Defendants have moved to strike Exhibits 1 and 3-9 (*see* Motion to Strike, Docket# 27) to Patrick Dolan's Declaration (Docket #25), but have not objected to this Court's consideration of Exhibit No. 2, for the reasons set forth in the Motion to Strike.

payment scheduled on 5th, April to 5th, May."

Requesting a thirty day delay as to one monthly cycle of invoices, one year before the HandsFree to HFN transaction evidences no pattern of delay or financial fraud, or any impact on HFN's value or damage to its shareholders.   It is a non-event.   The belated submission of an unauthenticated invoice spreadsheet does nothing to change this analysis.

### E. Plaintiffs Try To Mislead This Court Regarding HFN's Form D Filing With The SEC.

Plaintiffs argue that Santhanam lied on HFN's Form D, filed with the SEC, by checking the "No Revenues" box in Item 5 of the Form.  Opp. at 5.   Their argument is that because HandsFree had $300,000 of "recorded revenue" in its year end financials for 2011, this cash should have been disclosed as HFN "revenues" when the Form D was filed in June 2012.  Opp. at 5, 7.  This is wrong.  Form D is a document required to be filed with the SEC as a "Notice of Exempt Offering of Securities."  (*See* relevant Form D and SEC filing instruction, Declaration of Elizabeth C. Inglis in Support of Defendants' Motion to Dismiss ("Inglis Declaration") at Exs. A and B).   Because the creation of HFN involved a securities offering and receipt by HFN of IUVP's investment, the filing of a Form D was necessary.   The Form D instructions, published by the SEC, give the issuer (here, HFN) the option to "decline to disclose" revenues, or, as in this case, "if the issuer's … business is intended to *produce* revenue but did not, enter 'No Revenues.'" (Emphasis added.)   Accordingly, rather than simply declining to disclose HFN's revenues, which, under Form D HFN and Santhanam were entitled to do, HFN accurately disclosed that HFN itself has not yet "produced" its own revenue.  (*See* Instructions to Form D, Inglis Declaration at Ex. B, Item 5).  Cash or other assets on the balance sheet of a predecessor company's acquired assets was not revenue produced by the new company, here HFN, Inc. Form D asks for revenue "produced" by the *issuer* as a result of its operations, not for disclosure

of balance sheet assets.  If HFN wanted to conceal information about its (nonexistent) revenues, it had every right to do so under Form D.

> **F.      There Was No Duty To Disclose Dell's Hopes Or Aspirations For The HandsFree Technology.**

Plaintiffs' house of cards Complaint is aptly illustrated by their argument that an aspirational increase in call volume, discussed by software developers a year before the transaction at issue, would lead to a 400% increase in revenue to HandsFree.  (Opp. at 3.).  This reasoning is built on nothing more than speculation.  First, as set forth in Defendants' Opening Brief, "vague and loosely optimistic statements" regarding sales "Dell had projected" are not actionable as a matter of law by HandsFree or its shareholders.  Opening Br. at 8.  Second, absent a contractual obligation to do so, there is no duty to disclose to the shareholders routine communications between the company and a contractee.  *See, e.g*, *In re Boston Scientific Corp. Sec. Litig.*, 686 F.3d 21, 31(1st Cir. 2012) (affirming dismissal of securities fraud claim because defendant required a "period to assess" the impact of information before disclosing); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 760 (7th Cir. 2007) ("The securities laws create a system of periodic rather than continual disclosures.").   That is particularly true where, as here, nothing concrete was promised, nothing was guaranteed, no contract was formed or modified, and no business objectives were altered in any way, let alone materially.  *See N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 537 F.3d 35, 58 (1st Cir. 2008) (finding that "[t]he company would have behaved irresponsibly (and possibly in violation of the securities laws)" if it had disclosed possibly inaccurate inchoate information).   Plaintiffs' belated submission of e-mail discussing percentage eligibility *if* call volume hit certain volumes; or, *if* HandsFree developers undertook certain training offered by Dell, does not change this analysis.

### G.  The Transfer Of Acris's Stock Does Not Implicate Any Duty Owed To The Plaintiffs, Each Of Whom Was A Minority Shareholder In HandsFree.

Plaintiffs complain that the transfer and sale of shares in Acris among Global Tech Park Private Limited, Satish P. Chandra, Acris Technologies Private Limited and Sridhar Santhanam should have been disclosed.  Acris and its shareholders are free to buy and sell shares of Acris without notice to or knowledge of the minority shareholders of a separate company, HandsFree. The participants in the Acris transaction had no duty to disclose how, when, or if shares in Acris would be bought or sold, and there is no legal or contractual basis for imposing such an obligation.  *See* 12B William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 5805 (2012) (even in the context of selling shares in the corporation in which a majority shareholder holds shares (here, HFN), majority shareholders are entitled to sell or not sell their stock as they see fit) citing *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 762 (Del. Ch. 2006).

### H.  Plaintiffs "Capacity" Arguments Do Not Save Their Claims.

Plaintiffs continue to conflate positions of corporate authority with strict liability and omniscience of all alleged wrongdoing.  *See, e.g.*, Opp. at 11 ("Likewise, Chetan Chandra was Treasurer of HandsFree.  As such, he was aware of the actual state of HandsFree's business, and took part in the scheme to suppress the information); *Id.* ("Satish Chandra was part of the scheme because, as a board member, he was aware of the actual state of HandsFree's business…"); Opp. at 15 ("Mr. Chandra was the Treasurer of HandsFree.  As such, he was both an officer of the company and to a certainty, knew of the actual state of HandsFree's business.").  Moreover, Plaintiffs have not rebutted – because they cannot – Defendants' argument that status of corporate capacity, without specific factual allegations of individual wrongdoing, is not actionable as fraud.  *See* Opening Br. at 12, 14-15; *In re Peritus Software Servs., Inc. Sec. Litig.*, 52 F. Supp. 2d 211, 228 (D. Mass. 1999) (finding general bare allegations of defendants'

positions as corporate directors and officers insufficient to infer scienter and withstand a motion to dismiss); *see also In re Textron, Inc.*, 811 F. Supp. 2d 564, 575 (D.R.I. 2011) (holding that "[a]n allegation that a defendant is a member of a corporation's board of directors" is insufficient to allege control person liability); *Continuing Creditors' Comm. Of Star Telecomms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 466 (D. Del. 2004) (dismissing breach of fiduciary duty claim against corporate officer where complaint merely alleged officer's corporate position and generic assistance with disputed transaction). Plaintiffs' conclusory allegations cannot sustain their claims.

## I.     Plaintiffs Play Fast And Loose With The Facts Concerning Valuation.

Plaintiffs ignore the difference between a "pre-money" valuation and a "post-money" valuation. Plaintiffs were told that IUVP valued HandsFree at $950,000; while American Appraisal – an independent third party, which was not looking to purchase shares – valued HandsFree at approximately $1.7 million. Lovett Declaration, at Ex A. Both of these valuations are "pre-money" – the fair value of HandsFree or its assets prior to any third party money being infused. "Post-money" value is the value after new money is invested, such as IUVP did in HFN, Inc. *See* Investopedia entry, Inglis Declaration, at Ex. C. Nowhere does any document or any valuation source peg HFN, Inc.'s value at $10 million as Plaintiffs attempt to allege and argue. The Complaint does not attribute this supposed $10 million valuation to the Defendants, and nowhere does the Complaint set forth any facts, such is IUVP documents or statements, from which one can infer that IUVP valued HFN, Inc. at $10 Million. Accordingly, these allegations do not pass muster under the PSLRA and Rule 9(b), and should be disregarded as speculative.

## III.    <u>CONCLUSION</u>

For the reasons set forth herein, and for those reasons set forth in their Opening Brief, Defendants respectfully request that this Court allow their Motion to Dismiss in its entirety and with prejudice.

Respectfully submitted,

Dated:  October 21, 2014

ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.,

By Their Attorneys,

/s/ Robert B. Lovett

Robert B. Lovett (BBO #561691)
Elizabeth C. Inglis (BBO #678349)
Connor R. Cobean (BBO #689127)
COOLEY LLP
500 Boylston St.
Boston, MA  02116-3736
Tel.:  (617) 937-2300
Fax:  (617) 937-2400
rlovett@cooley.com
einglis@cooley.com
ccobean@cooley.com

## <u>CERTIFICATE OF SERVICE</u>

I, Robert B. Lovett, certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 21st day of October, 2014.

/s/ Robert B. Lovett
Robert B. Lovett (BBO # 561691)
rlovett@cooley.com
COOLEY LLP
500 Boylston Street
Boston, MA 02116-3736
Telephone: (617) 937-2300
Facsimile: (617) 937-2400