UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALLAN MILLER, DENNIS CALLAGY, | ) | |
| THE CHESTER S. JAKUBOWSKI ROTH IRA, | ) | |
| RICHARD GABRIEL, VICTORIA DUDIN | ) | |
| SILIOUTINA, GEOFFRY MEEK, GENE | ) | |
| ROBINSON, ERIC BROWN, SCOTT NOONE, | ) | |
| JOHN MURGO, MAX KUPCHIX and | ) | |
| WILLIAM HARDING | ) | |
| Plaintiffs | ) | C.A. No. 14-CV-12337 |
| v. | ) | |
| | ) | |
| ALESSANDRO DONNINI, SRIDHAR | ) | |
| SANTHANAM, HFN, INC., SATISH | ) | |
| CHANDRA, CHETAN CHANDRA, | ) | |
| ACRIS TECHNOLOGIES, PRIVATE, LTD. | ) | |
| Defendants | ) | |

## PLAINTIFFS' OBJECTION TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE BOAL

### INTRODUCTION

This is a fraud and breach of fiduciary duty case involving securities in a closely held software company. In 2011, the Defendants in this case had a problem any dishonest person would envy. They knew they had a company worth $10 million or more and an investment firm was offering to buy 40 percent of it for $4 million. Their problem was that one of their board members, Defendant Satish Chandra, was demanding double his investment back - $2 million – to get out of the company. If the Defendants paid that out and paid the Plaintiffs here their fair share of $900,000 or more, they would only have about $1 million left. So instead, as the plaintiffs detail in their 116-paragraph amended complaint, the Defendants implemented a fraudulent scheme to deprive the minority shareholders of their fair value and thereby enrich themselves.

The Defendants were majority shareholders and/or members of the Board of Directors of a company known as HandsFree Networks, Inc. Together, they embarked on a scheme to make it

appear HandsFree was worth far less than it was, hoping the minority shareholders would walk quietly away with a pittance. The essential elements of this fraudulent scheme were as follows:

1.      Defendants Sridhar Santhanam and Alessandro Donnini were officers and members of the Board of Directors of HandsFree, a company that had developed one of the world's first remote computer support systems. After HandsFree landed an important contract with Dell, Santhanam, who was also the CEO, and Donnini together took significant steps to knowingly mislead the minority shareholders about the contractual relationship with Dell. This included requesting that Dell *not pay* HandsFree invoices (*Am. Compl.* ¶¶ 45-46) for the last half of 2011 and the first quarter of 2012, in order to artificially depress HandsFree's revenue.  It also included keeping information hidden from the minority shareholders about Dell's estimate that it would use HandsFree's product on upward of 55 percent of its service calls, a fivefold increase in utilization and revenue. (*Am. Compl.* ¶43).  As expected, HandsFree's reported revenue was then misreported, resulting in a lower valuation of the company. The Amended Complaint makes it clear that these acts were done intentionally by Santhanam and Donnini.

2.      In furtherance of their scheme, Santhanam and Donnini took steps to attract new professional investors.  In October 2011, the pair met with a private equity firm known as NEA-IUVP.  During that meeting, Santhanam and Donnini presented the true financial picture of HandsFree, including that Dell was a loyal customer already generating significant revenue with existing products, and that HandsFree had reached an agreement with a company known as HCL Comnet Systems, Inc. for the use of the HandsFree software. (*Am. Compl.* ¶50). Santhanam and Donnini, during this presentation, represented that revenue projections with HCL could reach $160 million per year, reflecting an agreement that was even more favorable than the contract

with Dell.   Neither Santhanam or Donnini ever informed the minority shareholders about the actual Dell revenue, nor the agreement with HCL.

3.       NEA-IUVP offered to invest $4 million for a 40% share, not in HandsFree but in a new company that would buy the assets of HandsFree. (*Am. Compl.* ¶ 51) The amount NEA-IUVP agreed to invest in exchange for a 40% interest in the new company, later identified as HFN, Inc. ("HFN"), whose only asset was to be the HandsFree software products, reflects a valuation of at least $10 million for HFN.   Both Santhanam and Donnini were to be significant shareholders in HFN.   Neither Santhanam or Donnini, despite being members of the Board of Directors of HandsFree, ever advised the minority shareholders about their arrangement with NEA-IUVP.

4.       Defendant, Satish Chandra ("Chandra"), was a member of the Board of Directors of HandsFree.   Through an entity known as Acris Technologies, Private, LTD., he controlled more than 70 percent of the shares of HandsFree.   In 2011, Chandra reached a secret agreement with the Santhanam.   The gravamen of this secret agreement was that Chandra would exit his investment in Acris, and thus HandsFree, if Santhanam could promise him the return of 200 percent, or $2 million, from his $1 million investment two years earlier.   (*Am. Compl.*  ¶ 40). Despite being members of the board of directors, neither Chandra, Santhanam or Donnini ever revealed this agreement to the minority shareholders.

5.       After landing the NEA-IUVP investment, Santhanam and Donnini set up (a) paying Chandra off his agreed-upon $2 million without disclosing the agreement to the plaintiffs and (b) misleading the minority shareholders into believing that their shares were virtually worthless.   They achieved this through misrepresentations during a shareholder conference call in January 2012.   (*Am. Compl.* ¶ 53)   Specifically, Santhaman represented that there was "no great client running around the company today," intentionally leaving out Dell and a valuable contract

with HCL. (*Id.*)  Donnini took it a step further, saying to the minority shareholders: "if you are even considering getting $2 for your shares, guess what, you can go buy yourself a cup of coffee that you wouldn't have been able to buy before." (*Am. Compl.* ¶54).  At that point, their scheme outlined in Step 1 above bore fruit. Lacking the full invoices from Dell, the appraiser hired to conduct a valuation of HandsFree based its valuation on drastically underreported revenue and did not even consider the contract with HCL. (*Am. Compl.* ¶ 56)

More than a year later, the Plaintiffs became aware of HandsFree's true financial picture and filed this action in June 2014.  The Defendants moved to dismiss the Plaintiffs' claims in their entirety.  Following a hearing, Magistrate Judge Boal issued a Report and Recommendation on Defendants' Motion to Dismiss (the "Recommendation").  As explained below, the Recommendation contains a series of legal and factual errors, and therefore should not be adopted by this Court.

## OBJECTIONS

Pursuant to Fed.R.Civ.P 72(b) the Plaintiffs object to the following portions of the Recommendation on the grounds that they are clearly erroneous and contrary to law:

1.      The Plaintiffs object to the conclusion in the Recommendation that they have failed to state a claim of securities fraud with particularity as to Defendants Donnini, Santhanam and Satish Chandra. (*Recommendation* at 22-32) In particular, the Plaintiffs object to Recommendation's conclusion that: (a) they failed to state facts giving rise to a strong inference of scienter; (b) presented evidence from a confidential source that must be disregarded; and (c) they failed to sufficiently allege scheme liability under Rule 10b-5(a) and (c).

2.      The Plaintiffs object to the conclusion in the Recommendation that they have failed

to state a claim under Section 20(a) of the Exchange Act as to Defendants Donnini, Santhanam and Satish Chandra  (*Recommendation* at 32).

3.      The Plaintiffs object to the conclusion in the Recommendation that their common law fraud claims should be dismissed (*Recommendation* at 33).

4.      The Plaintiffs object to the conclusion in the Recommendation that their breach of fiduciary duty claim against Satish Chandra should be dismissed (*Recommendation* at 36).

5.      The Plaintiffs object to the conclusion in the Recommendation that their civil conspiracy claims should be dismissed as to Santhanam and Donnini. (*Recommendation* at 38).

6.      The Plaintiffs object to the conclusion in the Recommendation that the exhibits they submitted in response to the Defendants' Motion to Dismiss should be stricken (*Recommendation* at 10).

## ARGUMENT

**1.      The Plaintiffs Have Stated a Claim for Securities Fraud**

      **a.      The Amended Complaint States Facts That Give Rise to a Strong Inference of Scienter**

Section 10(b) of the Securities Exchange Act of 1934 forbids the "use or employ, in connection with the purchase or sale of any security . . . [of] any manipulative or deceptive device[.]" 15 U.S.C. § 78j(b)). Section 10(b) requires that a plaintiff allege: (1) a material misrepresentation or omission; (2) scienter, or a wrongful state of mind; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Deka Int'l v. Genzyme Corp. (In re Genzyme Corp. Sec. Litig.)*, 754 F.3d 31, 40 (1st Cir. 2014).

SEC Rule 10b-5, implementing that statute and providing for a civil remedy,  states that it is unlawful

> [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading, or . . . [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*Id.*(quoting 17 C.F.R. § 240.10b-5).

The PSLRA requires a securities fraud complaint to "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2009)(quoting 15 U.S.C. § 78u-4(b)(1)). No "checklist" exists for the PSLRA requirements for a securities fraud complaint. *In re Cabletron,* 311 F.d3 11, 32 (1st Cir. 2001). Sufficient evidence of one type can reduce or eliminate the requirements in other categories. *Id.*

The Recommendation found that the Amended Complaint provided ample particularity of the essential facts of the claims, specifying the time, place and speakers, as well as adequately alleging that Defendants had failed to disclose critical facts, such as the true value of HandsFree. (*Recommendation* at 25). Nevertheless, despite these facts, the Recommendation somehow concluded that the Complaint were not enough to infer scienter as to Santhanam and Donnini. (*Id.*)

Scienter is a "'mental state embracing intent to deceive, manipulate, or defraud.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 757 (1st Cir. 2011))(*quoting Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)). A securities fraud complaint must state with particularity facts that allow a "strong inference"  that defendants acted

with a conscious intent "to deceive or defraud investors by controlling or artificially affecting the price of securities" or "acted with a high degree of recklessness." *Id*. (citations omitted) (internal quotation marks omitted); *accord ACA Fin*., 512 F.3d at 58-59.

Scienter is sufficiently "strong" if "a reasonable person would deem [it] cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 324 (2007). When there are equally strong inferences for and against scienter, "the draw is awarded to the plaintiff." *Waters Corp*., 632 F.3d at 757. "[S]cienter should be evaluated with reference to the complaint as a whole rather than to piecemeal allegations." *ACA Fin*., 512 F.3d at 59. "There is no set pattern of facts that will establish scienter; it is a case-by-case inquiry." *Id*. at 66.

The Recommendation asserts that the Plaintiffs only offered evidence that the Defendants made a "one time request for a 30-day delay in payment to Dell." (*Id.* at 26). This ignores the Plaintiff's broader allegation that "for the last half of 2011 and the first quarter of 2012, [Santhanam and Donnini] requested that Dell not pay HandsFree invoices." (*Am. Compl.* ¶45). This much vaster omission of due revenue is puzzling and important. Far from relying on an isolated, one-time request for delay, the Amended Complaint specifically alleges that the delay in payment was made for *nine months*. What possible purpose could there be to justify such a delay, other than fraud? Lacking any plausible alternative than that alleged by the Plaintiffs - that the extended, repeated delay was part of Santhanam and Donnini's intentional decision to depress the value of HandsFree by underreporting its revenue - these facts give rise to a strong inference that Santhanam and Donnini were in fact improperly seeking to depress the value of HandsFree.

The Recommendation similarly fails to find scienter in the Plaintiffs' allegation that Santhanam and Donnini made a presentation to NEA-IUVP in which they presented the true

picture of HandsFree's value while providing the opposite view to the minority shareholders.. (*Recommendation, p. 26).* What the Recommendation ignores is that the investment bank, following this presentation, invested $4 million dollars for a 40 percent interest in the newly formed entity which held *only* HandsFree assets.

While the Recommendation chose to view the presentation as "puffery," there is no evidence to suggest that is true. More importantly for the purposes of this pleading stage, it is entirely plausible that Santhanam and Donnini's presentation had factual underpinnings, a question discovery will certainly answer. Indeed, the evidence available now demonstrates that following the presentation of the true financial picture of HandsFree, NEA-IUVP chose to invest $4 million dollars for a 40 percent interest, which indicates a valuation of at least $10 Million for the HandsFree assets. Equally important, the Recommendation ignores the fact that, armed with the knowledge that NEA-IUVP was prepared to make this substantial investment, Santhanam and Donnini never revealed any of this to the minority shareholders. *See Glassman v. Computervision Corp.*, 90 F.3d 617, 627 (1st Cir. (finding scienter where complaint alleged company did not disclose current information pertinent to business potential and valuation). There was no rational reason for them not to disclose this.

Finally, the Recommendation ignores the allegations in the Amended Complaint (*Am. Compl.* ¶53-54) about the shareholder conference call that Santhanam, Donnini and Satish Chandra all participated in. Each was a member of the Board of Directors of HandsFree. The Amended Complaint specifically identifies false statements made by Santhanam and Donnini, who were in possession of the knowledge that NEA-IUVP had decided to invest $4 million for 40% of a new company whose sole asset would be the HandsFree software. Those statements were clearly made for the purpose of misleading the minority shareholders. Once again, there is

no alternate explanation for the misstatements, no facts that could give rise to a stronger, compelling inference other than that the statements were made for the purpose of deceiving the Plaintiffs.  In addition, as to Satish Chandra, he was aware that he was getting double the value of his initial 2009 $1 million investment at the time the Plaintiffs were being advised that their shares were not worth a cup of coffee.

Clearly this information would have been valuable to the plaintiff shareholders. Disclosure to the plaintiff shareholders is required if disclosure would "alter the 'total mix' of facts available to the investor and 'if there is a substantial likelihood that a reasonable shareholder would consider it important' to the investment decision." *Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir.1992) (quoting *Basic, Inc.* v. *Levinson*, 485 U.S. 224, 231-32 (1988)).  No "opposing inference" can be drawn from their actions other than that Santhanam and Donnini were intentionally acting so as to defraud the minority shareholders.  Thus, the Amended Complaint has sufficiently articulated facts that give rise to a strong inference of scienter.

> b.   **The Recommendation Erroneously Concluded That Evidence From a Confidential Source Should Be Disregarded**

The Amended Complaint concludes its factual allegations section with the following at Paragraph 60:

> In mid 2013, Miller received information from an informed source that "blew the whistle" on the machinations that Santhanam, Donnini, Chandra, Chetan, and HFN had pulled, and disclosed how the revenue from Dell and contract with HCL had been kept hidden.

The sole purpose of this paragraph was to provide the point at which the plaintiffs should have reasonably learned of the fraud and, thus, the statute of limitations began running. The informed source is not cited anywhere else in the Amended Complaint as a source of the allegations.

Nevertheless, the Recommendaton states that the whistleblower's allegations – including any information provided by the whistleblower – should be disregarded in the analysis of the Motion to Dismiss because the Amended Complaint did not provide sufficiently describe the whistleblower.  (*Recommendation* at 27-29). In doing so, the Recommendation misinterprets First Circuit law in this area.  Worse, if the Recommendation were to be adopted, it would serve to inject a new requirement into the notice-pleading purposes of a complaint.  Now, not only would a complaint need to be plausible, but it also must cite all of its sources of information so that a court can also vet the reliability of the sources.  No such requirement exists under the law, nor should it.

The Recommendaton does adequately cite the First Circuit's law on confidential sources: "[W]here plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false." (*Id*. at 28), citing *New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC, Inc.,* 537 F.3d 35, 51 (1st Cir. 2008). From that, however, the Recommendation somehow inserts two additional legal requirements.  First, that the Plaintiffs' documents must be "linked to the unnamed source." (*Id*. at 29) Second, that information must be pled "from which the Court may conclude that the unnamed source is reliable and possesses the information alleged." (*Id*.) Absent those two requirements, the Recommendaton finds the Complaint deficient to the extent it is based on information from the Confidential Source.  (*Id*. at 28)

No such requirements exist under the law.  The Amended Complaint does not rely on any statements from any confidential source, and so there is no need for the Court to weigh their reliability.  Rather, the Plaintiffs obtained actual documents from a confidential source. The court need only weigh the apparent reliability and plausibility of those documents, which form the basis

for many of the allegations of the Complaint, the authenticity of which the Defendants do not dispute. To the extent litigation has a truth-seeking function, the Recommendation's dual decision to disregard information from an anonymous source while simultaneously striking the documents, whose authenticity is unquestioned, by the source, subverts that very truth seeking function.

The real issue here appears to be purely aesthetic rather than substantive. The Amended Complaint could have easily wordsmithed around any mention of a confidential source, but the drafters opted for more transparency.

c.       **The Plaintiffs Have Adequately Stated A Claim for Scheme Liability**

Claims under 10b-5(a) and (c) are much less restricted than their counterpart in (b). *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972). To survive a motion to dismiss under these sections, plaintiffs must allege that "(1) they were injured; (2) in connection with the purchase or sale of securities; (3) by relying on a market for securities; (4) controlled or artificially affected by defendant's deceptive or manipulative conduct; and (5) the defendants engaged in the manipulative conduct with scienter." *In re Global Crossing Secur. Litig.,* 322 F.Supp.2d 319, 329 (S.D.N.Y. 2004); *SEC v. Zandford*, 535 U.S. 813, 824-25 (2002) (broker's actions constituted unlawful scheme under Rule 10b where broker's "fraudulent intent deprived the [plaintiffs] of the benefit of the sale").

Here, the Recommendation concludes that "the Plaintiffs' claims are premised on the Defendants' alleged misrepresentations.  The essence of the Amended Complaint is that the Defendants made false statements in order to induce the Plaintiffs to redeem their shares for well below their value." (*Recommendation* at 32).  Crucially, what the Recommendation ignores is (a) the secret deal with Satish Chandra to pay him *double* his investment, while giving the Plaintiffs the value of a "cup of coffee," (the secret agreement with Chandra being itself a scheme); (b) the

actions designed to depress the value of HandsFree by not having Dell by invoices; and (c) the solicitation of the NEA-IUVP investment by providing it with the true picture of HandsFree's value while simultaneously choosing to misrepresent that value to the Plaintiffs.  In other words, in finding no scheme liability, the Recommendation ignored the very acts which it already found had constituted the scheme.

### 2.      The Plaintiffs Have Stated a Claim Under Section 20(a) of the Exchange Act

To establish a claim under Section 20(a) of the Exchange Act, the plaintiffs are required to plead (a) and underlying violation by a controlled person or entity and (b) that a defendant controlled the violator.  *In re A123 Sys., Inc. Sec. Litig.*, 930 F. Supp. 278, 286 (D.Mass. 2013). Here, the Recommendation concluded that because the Plaintiffs failed to adequately plead an underlying violation of Section 10(b), their claim under 20(a) must also fail.  (*Recommendation* at 32).  Aside from the scienter element discussed above, however, the Recommendation found that the Plaintiffs have adequately pleaded the underlying 10(b) violation. (*Id.* at 25) In addition, the plaintiffs have adequately pleaded control. Control is a question of fact that "will not ordinarily be resolved summarily at the pleading stage." *In re Cabletron*, 311 F.3d at 41, quoting 2 T.L. Hazen, Treatise on the Law of Securities Regulation § 12.24(1) (4th ed.2002). In looking at a complaint at the pleading stage, a court seeks "indicia of the exercise of control over the entity primarily liable" or facts which indicated they were "actively participating in the decision making processes of the corporation." *In re Novell*, *Inc. S'holder Litig.*, CIV.A. 10-12076-RWZ, 2012 WL 458500, at *7 (D. Mass. Feb. 10, 2012).

The Complaint could not make this plainer. Satish Chandra, Santhanam and Donnini were all members of the Board of Directors.  Each played an integral role in the operation of HandsFree and had a direct hand in the perpetration of the scheme. That scheme could not be accomplished

without control over the decision making at HandsFree. Accordingly, the Complaint states an adequate claim under Section 20(a).

### 3.  The Common Law Fraud Claims Should Not Be Dismissed

The Recommendation concludes that, because the Plaintiffs' 10(b) claims "do not survive, their common law claims, based on the same allegations, must be dismissed as well." (*Recommendation* at 33).  Once again, because the Recommendation's conclusion regarding the scienter element of the 10(b) claims is in error, its conclusion about the fraud claims is equally flawed and must be rejected.

### 4.  The Plaintiffs Breach of Fiduciary Duty Claim Against Satish Chandra Should Not Be Dismissed

As a member of the Board of Directors of HandsFree, Satish Chandra owed the Plaintiffs the duty of care, the duty of loyalty and the duty to act in good faith.  The Recommendation accurately identified the elements of a breach of fiduciary duty claim under Delaware law, noting that the duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."  *Cede & Co. v. Technicolor, Inc.,* 631 A.2d 345, 361 (Del.1993).  Further, to state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs."  *Id.* Finally, as the Recommendation also noted, the duty of good faith "is a subsidiary element of the duty of loyalty."  *Id*.  A breach of the duty of good faith "requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)."  *Id.*  The Delaware Supreme Court

has identified three examples of conduct that may constitute a failure to act in good faith where a director: (1) "intentionally acts with a purpose other than that of advancing the best interests of the corporation;" (2) "acts with the intent to violate applicable positive law;" and (3) "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Id*. This is not an exclusive list.

Here, the Plaintiffs have alleged that Satish Chandra, a member of the Board of Directors who owed them a fiduciary duty, entered into a secret agreement with Santhanam, another member of the Board of Directors, to be bought out of his shares for $2 million, which is twice the amount he invested. Satish Chandra participated in the shareholder conference call and never revealed that he had this agreement, never revealed that a portion of the $4 million invested by NEA-IUVP was to go to him, and instead stayed silent throughout the process wherein the assets of HandsFree were supposedly valued at an amount *even less than what Satish Chandra received*. In these circumstances, Satish Chandra had a duty to disclose that funds were going to him as opposed to HandsFree, which would have benefitted the Plaintiffs as minority shareholders. As a result, the Amended Complaint properly states a claim for breach of fiduciary duty against Satish Chandra.

**5.   The civil conspiracy claims should not be dismissed as to Santhanam, Donnini and Satish Chandra**

The Recommendation erroneously concluded that the Plaintiffs failed to support a claim for civil conspiracy because they failed to allege sufficient facts to support the element of conspiratorial agreement. (*Recommendation, p. 39)* This conclusion ignores key facts alleged in the complaint, such as that Santhanam and Donnini together misled the plaintiffs during the shareholder conference call, when both were aware that their statements were lies because

14

together they had successfully depressed the value of HandsFree and had together successfully solicited the investment from IUVP.  Clearly, their concerted joint acts give rise to the type of inference that they had an agreement to work together to deprive the Plaintiffs of the full value of their shares.  Thus, the civil conspiracy claim should stand against Santhanam and Donnini.

The Recommendation also found that the civil conspiracy claim against Satish Chandra should be dismissed because the Plaintiffs failed to satisfactorily allege an underlying tort claim against him.  As noted, that conclusion is in error, as the breach of fiduciary duty claim should stand.   In addition, Satish Chandra participated in the conspiratorial agreement during the shareholder call, when, together with Santhanam and Donnini, he kept his secret agreement from the shareholders and failed to advise them of the extent of his return on this investment.  Given that all three breached their fiduciaries together, at the same time, and the same meeting, the only conclusion that can be reached is that they had an agreement to do so.

**6.  The Exhibits Submitted by the Plaintiffs in Support of their Opposition to the Motion to Dismiss Should Not Have Been Stricken**

In response to the Defendants' voluble complaints about the purported unreliability of the anonymous source, Counsel presented the Court with some of the very documents provided by the source, each of which was referenced in the Amended Complaint.  The Defendants did not dispute the authenticity of any of the documents.  However, rather than engage in a truth-seeking analysis which would seek to measure whether the documents provided insight into the nature of the allegations of the Amended Complaint, the Recommendation suggests they should be entirely struck, asserting that each was no sufficiently referenced in the Complaint.

The Recommendation in this regard is somewhat startling, particularly in light of the unchallenged authenticity.  Moreover, the Recommendation considered documents offered by the

Defendants, including a shareholder letter that the Court found "central" to the Plaintiffs' claims, or, more properly, the Defendants' defenses.  Such an analysis amounts to a double standard, as the documents equally central to the Plaintiffs' claims (i.e., the PowerPoint presentation made to NEA-IUVP) were stricken as being insufficiently identified in the Complaint.  This is completely inaccurate.  Each of the documents is referenced and/or central to the Plaintiffs' allegations, and each provides some validation of the truth of the assertions made by the Plaintiffs.

In *Watterson v. Page*, 987 F.2d 1, 4 (1st Cir. 1993), the First Circuit articulated the circumstances under which a plaintiff may submit documents in opposing a motion to dismiss that were not affixed to the complaint.  Pursuant to *Watterson,* documents whose authenticity are not disputed and which are (a) official public records or (b) central to the plaintiff's claims or (c) sufficiently referenced in the plaintiff's claims may be considered by a court in ruling on a motion to dismiss. *Id.*  The documents submitted by the Plaintiffs easily satisfy this standard.

**7. Because the Plaintiffs Clearly Have Ample More Evidence, Leave to Amend the Complaint Should be Granted, if Necessary**

In granting the Defendants' Motion to Dismiss, the Recommendation appears to accept that the Defendants' request that the Amended Complaint should be dismissed with prejudice. The Recommendation provides no grounds for doing so, nor does it even overtly state the condition of dismissal it recommends. Nevertheless, should the Amended Complaint be dismissed, it should be with leave to amend.

Absent legitimate grounds for denial, leave to amend pursuant to Fed.R.Civ.P. 15(a) should be granted freely. No legitimate grounds for denial exist here. *ACA Financ.* 512 F.3d at 56 (listing grounds for denial as "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…[and]

futility of amendment.") Any undue delay here has not been on the part of any of the parties. There is no hint here of bad faith or attempt to delay.  Since it is at the beginning of the case, the defendant would by no means be prejudiced.  Finally, as is clear from the ample and damning exhibits attached to the Plaintiffs' Opposition to the Defendants' Motion to Dismiss, the Plaintiffs can provide more particularity to their claims, if required.

For all the reasons stated above, the Amended Complaint should not be dismissed. However, if the Court deems such action necessary, pursuant to Rule 15(a), the Plaintiffs request leave to amend their complaint.

## CONCLUSION

For the reasons stated herein, the Court should sustain the Plaintiffs' objections to the February 12, 2015 Report and Recommendation on Defendants' Motion to Dismiss.

Respectfully Submitted,
The Plaintiffs,
By Their Attorneys,


   /s/ Patrick J. Dolan
Patrick J. Dolan  BBO #564250
*pdolan@pkdllp.com*
Perry, Krumsiek & Dolan, LLP
210 Union Wharf
Boston, MA 02109
617-720-4300
617-720-4310 (fax)


   /s/ Timothy Cornell
Timothy Cornell BBO #654412
*Timothycornell5@gmail.com*
Gardner Cornell, P.C.
33 Mount Vernon Street
Boston, MA 02107
603-277-0838

DATE:  March 6, 2015

<u>Certificate of Service</u>

I, Patrick Dolan, hereby certify that I served the above document was filed electronically using the Court's ECF system on March 6, 2015 and thereby served to the Defendants.