UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN MILLER, DENNIS CALLAGY, THE CHESTER S. JAKUBOWSKI ROTH IRA, RICHARD GABRIEL, VICTORIA DUDIN SILIOUTINA, GEOFFRY MEEK, GENE ROBINSON, ERIC BROWN, SCOTT NOONE, JOHN MURGO, MAX KUPCHIK, and WILLIAM HARDING<br><br>             Plaintiffs,<br><br>    v.<br><br>ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.,<br><br>             Defendants. | C.A. No.  14-CV-12337 |

**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

Defendants Alessandro Donnini, Sridhar Santhanam, HFN, Inc., Satish Chandra, Chetan Chandra, and Acris Technologies, Private, Ltd. ("Defendants") respectfully submit the following objections, pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b), to the Magistrate Judge's Report And Recommendation On Defendants' Motion To Dismiss, dated February 12, 2015 (the "Report").[1]  Defendants respectfully request that the Court adopt the Report's primary recommendation, and dismiss Plaintiffs' Exchange Act claims and decline to exercise supplemental jurisdiction with respect to the state law claims.  Defendants submit this  narrowly

---

[1]     Fed R. Civ. P. 72(b) provides that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." *Id*.  The Report was served on February 13, 2015.  Dkt #49.  On February 26, 2015, the Court granted the parties' Joint Motion for an Extension of Time to file their objections, extending the deadline to March 6, 2015.  Dkt #53.  The standard of review is *de novo*. Fed. R. Civ. P. 72(b).

tailored objection to the Report, however, requesting that the Court reject the Report in part, and dismiss the Amended Complaint on the following additional grounds: (1) Plaintiffs' Exchange Act claims were not brought within the two year statute of limitations, mandating their dismissal with prejudice; (2) Plaintiffs failed to satisfy the standard for pleading reliance and causation in the First Circuit; and (3) Plaintiffs' breach of fiduciary duty claims against Santhanam and Donnini should be dismissed on multiple grounds should this Court retain supplemental jurisdiction over the state law claims.

For the reasons set forth below, and in Defendants' previously filed memoranda of law in support of their Motion to Dismiss,[2] Defendants urge this Court to adopt the Report and dismiss the Amended Complaint for the additional reasons set forth herein.

## OBJECTIONS

**I.    PLAINTIFFS' EXCHANGE ACT CLAIMS ARE BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS.**

As correctly framed by the Report, the relevant issue is whether Plaintiffs' complaint was filed "within two years of the 'discovery of facts constituting the violation.'" Report at 19 (citation omitted). The test is whether (1) Plaintiffs "did in fact discover," or (2) "a reasonably diligent plaintiff would have discovered" the facts that form the basis of Plaintiffs' fraud claim on or before June 2, 2012, two years before Plaintiffs filed the case at bar. *Id.*, citing *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010). Inasmuch as these Plaintiffs were given all financial, transactional and valuation information in February 2012 (approximately 28 months before filing), and the transaction closed in April 2012 (approximately 26 months before filing),

---

[2]   Defendants assume the Court's familiarity with the arguments made in their Motion to Dismiss briefing, and incorporate those arguments by reference herein without repeating them. *See* Memorandum Of Law In Support Of Defendants' Motion To Dismiss, Dkt. #20 (the "Opening Brief"); Reply Memorandum Of Law In Further Support Of Defendants' Motion To Dismiss, Dkt. #33.

the instant case was filed too late.   In rejecting Defendants' argument that Plaintiffs' claims were brought after the statute of limitations expired, however, the Magistrate Judge erred by overlooking that the February 2012 Letter[3] (1) provided Plaintiffs with the  "actual notice" of their  claims, or (2) at the very least put Plaintiffs on notice of their claims such that, had they been "reasonably diligent," they would have identified the facts purportedly supporting their claims before the transaction closed in April 2012.  Therefore, Defendants respectfully request that this Court dismiss Counts I and II as time-barred.

### A. The February 19, 2012 Letter Provided Plaintiffs With Detailed Information Regarding The Transaction.

Contrary to the Report's findings, the information in the February 2012 Letter was more than just "different from" the representations allegedly made during the January 18, 2012 shareholder call (the "January 2012 Call").  Report at 21.  The February 2012 Letter presented in plain terms information that (1) was robust and ***directly contradicted*** the information allegedly misrepresented to Plaintiffs in the January 2012 Call; and (2) constituted a ***fulsome disclosure*** of much of the information Plaintiffs claim was withheld from them.

First, Plaintiffs allege that, during the January 2012 Call, they were told that HandsFree had "no client, no revenue and no prospect of any." AC ¶ 53; *see also id*. ¶¶ 24, 28.  In clear contrast to these alleged statements, the American Appraisal report, company financials, and other details of the transaction submitted to Plaintiffs along with the February 2012 Letter stated in plain language that HandsFree was valued at $950,000 and had "one live contract . . . and

---

[3]   Although explicitly referenced in the Amended Complaint (*see* ¶ 56), Plaintiffs attempted through their Opposition to exclude the February 19, 2012 letter from HandsFree to all  shareholders (the "February 2012 Letter") from the Magistrate Judge's consideration on Defendants' Motion to Dismiss. *See* Plaintiffs' Opposition To Motion To Dismiss With Memorandum Of Law ("Opposition"), Dkt. #24, at 6-7.  The Magistrate Judge correctly rejected Plaintiffs' attempt and, applying well-established First Circuit precedent, found that the February 2012 Letter is properly considered here as it is referred to in the Amended Complaint and "central" to Plaintiffs' claims.  Report at 12.

3

recorded a revenue of USD 300,000 in FY 2011." *See* Declaration of Robert B. Lovett In Support of Motion to Dismiss (Docket #21) (the "Lovett Decl."), Ex. A at 9, 30. In other words, the Plaintiffs allege that they were told one thing (no contracts, no revenue, no prospects) in January 2012, only to have placed in front of them starkly different, detailed *written* information (one live contract, recorded revenue, a $950,000 value) in February 2012:

| **Alleged Misrepresentation** <br> **On January 2012 Call** | **Contradictory Disclosure** <br> **In February 2012 Letter** |
|---|---|
| • HandsFree had "no viable customers, no contracts and . . . none of these on the horizon" (Am. Compl. ¶ 24); <br><br> • HandsFree had "no viable customers" (Am. Compl. ¶ 28); <br><br> • "There was no client" (Am. Compl. ¶ 53) | • Handsfree had "one live contract" (Lovett Decl., Ex. A at 30) |
| • HandsFree had "no revenue and none . . . on the horizon" (Am. Compl. ¶ 24); <br><br> • HandsFree had "no. . . revenue at all" (Am. Compl. ¶ 28); <br><br> • "There was . . . no revenue and no prospect of any" (Am. Compl. ¶ 53) | • HandsFree had "revenue of USD 300,000 in FY 2011" (Lovett Decl., Ex. A at 30) |
| • No "prospect of any" customers or revenue "on the horizon" (Am. Compl. ¶¶ 24, 53) | • "IUVP . . . has arrived at the valuation of $950,000" (Lovett Decl., Ex. A at 9) <br><br> • American Appraisal valued HandsFree at $1.73 million (Lovett Decl., Ex. A at 40) |

Second, despite Plaintiffs' complaint that they were not provided the information necessary to make an informed investment decision or to pursue their claim, the February 2012 Letter was replete with detailed, material facts regarding the deal terms and relevant valuation, including:

4

- A detailed description of Plaintiffs' opportunity to remain as shareholders with the new HFN Inc. or be cash out (*see* Lovett Decl. at Ex. A);

- The share conversion ratio and its underlying economic rational (*id.* at 9 disclosing that "the net asset value per share is $1.57," the "swap ratio between NewCo and Handsfree Networks shares is one share of NewCo for five shares of HandsFree Networks"; and that 5,943 NewCo shares "can be allocated to Existing Company shareholders");

- HandsFree's detailed financials, including profit and loss statements, balance sheets, and cash flow statements (*id.* at 12-20);

- The third party independent valuation of American Appraisal, finding a $1.73 million valuation of HandsFree's intellectual property, including its acknowledgement that HandsFree had "one live contract . . . and revenue of USD 300,000 in FY 2011." (*id.* at 9, 40);

- "NewCo" would be funded by "NEA-Indo-US Venture Fund LLC (www.iuvp.com)" (*id.* at 9), a well-known venture capital firm;

- IUVP had valued HandsFree at $950,000 "for the asset and business transfer" before IUVP invested (*id.*); and

- Acris "has opted to exit" as shareholder, and would be paid "approximately $600,000" past due compensation (*id.*).

Despite these extensive and detailed financial, valuation and deal-related disclosures in and accompanying the February 2012 Letter – which not only provided Plaintiffs with extensive information material to the transaction and its impact on their shares, but also clearly contradicted the alleged misrepresentations in the January 2012 Call – Plaintiffs allege that they first discovered the supposed factual basis for their claims around a year after the transaction closed, and then only when an unidentified straw man of a whistleblower came to Plaintiffs. *See* Am. Compl. ¶ 60 (alleging that, in "mid 2013 [Plaintiff] Miller received information from an [unnamed] informed source"). Claims based on information supplied by the alleged whistleblower, however, were properly rejected in the Report and cannot form the basis of Plaintiffs' Exchange Act claims. Similarly, Plaintiffs may not rely on such wholly unsupported

5

facts purportedly provided by the whistleblower to extend the statute of limitations.

**B.     Plaintiffs Were On Notice Of Their Claim In February 2012.**

As described above, Plaintiffs were given direct access to the facts supposedly supporting their fraud claim in February 2012, and were therefore on actual notice of their claim at that time.  *See FirstBank P.R., Inc. v. La Vida Merger Sub, Inc.*, 638 F.3d 37, 40 (1st Cir. 2011) (affirming 12(b)(6) dismissal of securities fraud action as time barred where plaintiff had actual notice of the facts constituting defendants' alleged 10(b) violation before the statutory cut-off for their claim).  At the very least, Plaintiffs' claims are time-barred because any "reasonably diligent plaintiff" would have discovered the supposed facts underlying Plaintiffs' claim immediately upon receipt of the February 2012 Letter, or at least well before the transaction closed in April 2012.  *See Merck*, 559 U.S. at 648 (setting forth "reasonably diligent plaintiff" standard).  Given the robust disclosures made in February 2012, this Court's statute of limitations analysis can stop there, as this case was not filed until June 2012, well after the two year statute expired.

Plaintiffs' transparent attempt to avoid the clear statute of limitations bar by tacking on their deficient whistleblower allegation does not save their claims.  First, as the Report correctly recognized, Plaintiffs have failed to plead any indicia of the whistleblower's reliability, and therefore those allegations must be disregarded under clear First Circuit precedent.  Report at 27-29.  Second, even if those allegations are considered by the Court, none of them contradict, or add any meaningful substance to, the detailed disclosures and information contained in the February 2012 Letter.  Indeed, the Magistrate Judge wrongly declined to dismiss on statute of limitations grounds in part because there was not absolute alignment between Plaintiffs' fraud allegations and the February 2012 letter.  Such  alignment is unnecessary, however.  *See* Report

6

at 22 (declining to recommend dismissal on statute of limitations grounds because the American Appraisal "does not specifically mention the HCL contract").  It is well-settled that the facts constituting notice for statute of limitations purposes "need not perfectly match the allegations that a plaintiff chooses to include in its complaint in order for the statute of limitations to run." *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 2014 WL 7338718, at *5 (S.D.N.Y. Dec. 24, 2014) (collecting cases).  The dispositive issue is that the February 2012 Letter contained key disclosures that not only put the Plaintiffs on clear notice, but certainly contained robust details that would have immediately caused a reasonably diligent plaintiff to inquire into, and discover, the supposed factual basis for Plaintiffs' claim.  That the February 2012 Letter did not disclose the immaterial HCL contract (which Defendants had no duty to disclose, see Section II.B., *infra*) is of no consequence.

Furthermore, that Plaintiffs themselves did not engage in any investigation upon receipt of the February 2012 Letter does not save their claim from the "reasonably diligent plaintiff" inquiry, which the Court must conduct "irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."  *Merck*, 559 U.S. at 653.  The February 2012 Letter clearly "would have prompted a reasonably diligent plaintiff to begin investigating."  *Id.* (facts providing "'inquiry notice' and 'storm warnings'" useful "to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating"); *Pension Trust Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 276-77 (3d Cir. 2013) ("reasonably diligent" investigations may be triggered by, e.g., "prospectuses, quarterly reports, and other information related to [a plaintiff's] investments."). Here, Plaintiffs had more than mere "storm warnings."  The February 2012 Letter's contradictory information and extensive disclosures directly related to Plaintiffs' investments

7

would have prompted any reasonable plaintiff to investigate, to ask a question, or solicit more information. *See Gavin*, 2014 WL 7338718, at *4 (dismissing Exchange Act claims on statute of limitations grounds where plaintiffs were provided with information directly contradicting the previously-made alleged misrepresentations). Furthermore, assuming, *arguendo*, that Plaintiffs' allegations are based in fact, "a substantial portion of this information was either known or freely available to investors much earlier" than the mid 2013 date proffered by Plaintiffs. *Id.*[4] The February 2012 Letter itself disclosed to Plaintiffs many of the facts upon which Plaintiffs base their claim, and had Plaintiffs reviewed the information ***they were handed*** with any diligence they would have been on notice of their claim well before the transaction closed in April 2012. *See Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 86 (D. Mass. 2002) (dismissing securities fraud claim on statute of limitations grounds because "the amended complaint seems to be based on the same allegations that were available a year before they filed their amended complaint"). Obviously, Plaintiffs later developed seller's remorse; but retrospective regret is not the basis of a fraud claim.

In contrast to *Young v. Lepone*, 305 F.3d 1 (1st Cir. 2002), on which the Report heavily relies as a basis for finding that dismissal on statute of limitations grounds would be premature, there are no facts here that would require discovery. Unlike the plaintiffs in *Young*, Plaintiffs here were not provided with any delay inducing "reassurances" after they received the February

---

[4]  Any facts constituting scienter would also have been immediately apparent to a reasonably diligent plaintiff upon receipt of the February 2012 Letter and review of the statements made therein that directly contradicted the alleged January 2012 misrepresentations. The alleged January 2012 representations are plead as those of *present fact*, i.e., much like the "I am not married" example given by the *Merck* Court. *See Merck*, 559 U.S. at 650. Clearly the February 19 Letter corrected or put in context what was expressed informally in January as a company not doing well, but as to which the details were later fully disclosed and explained. The explanation included ample internal company financial information from HandsFree, as well as third party findings and opinions as to valuation. As such, nothing uttered by the various participants in the January Call (most of which is not attributed to any single Defendant) is actionable on any ground.

2012 Letter, or informed of any internal investigation into the relevant information – both of which were determining factors in the *Young* court's finding that a factual inquiry was necessary as to whether the plaintiffs in that case acted reasonably in failing to immediately discover their claim. *Young*, 305 F.3d at 11.  The *Young* court's analysis gets into a potential gray area that does not exist here, where Plaintiffs had in their hands straightforward information that directly contradicted the alleged misrepresentations made only weeks before – a black and white situation that makes clear that any reasonable plaintiff would either recognize the existence of their claim immediately or at the very least before the transaction closed.

Thus, contrary to the Magistrate Judge's proposed finding, there is "no doubt" that Plaintiffs' claims were brought too late and should be dismissed on that ground alone and with prejudice.  *See FirstBank P.R., Inc.*, 638 F.3d at 40.

## II. PLAINTIFFS' 10B-5 CLAIM SHOULD BE DISMISSED FOR THE ADDITIONAL REASON THAT IT FAILS TO PLEAD REASONABLE RELIANCE OR CAUSATION.

The Report also errs in its rejection of Defendants' argument that, in addition to the many other bases mandating dismissal of Plaintiffs' fraud claim, Plaintiffs' claim must also fail because they cannot, as a matter of law, allege reliance or causation.

Plaintiffs cannot, as a matter of law, allege reliance on the alleged misrepresentations made in the January 2012 Call.  Where, as here, a plaintiff investor need only undertake "minimal diligence" to uncover a writing that contradicts an alleged false statement, such investor's reliance is unreasonable as a matter of law and warrants dismissal of the claim.  *See Ashland Inc. v. Morgan Stanley & Co., Inc.*, 700 F. Supp. 2d 453, 469 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) (granting motion to dismiss 10b-5 claim where plaintiffs could not "justifiably rely on a misrepresentation" where plaintiffs knew that they were "in a position to

acquire" additional information); *see also In re Access Cardiosystems, Inc.*, 404 B.R. 593 (Bankr. D. Mass. 2009), *aff'd*, 488 B.R. 1 (D. Mass. 2012) (Massachusetts courts consider whether any allegedly misleading oral statements were contradicted or clarified by written materials in determining whether a plaintiff has pled justifiable reliance on the oral statements). Here, Plaintiffs did not even have to uncover the February 2012 Letter and its robust compilation of company, financial, appraisal and deal information, because it was given to them two months before the transaction closed, and directly rebutted the very statements upon which Plaintiffs hang their claim: those allegedly made in the January 2012 Call that HandsFree had no revenue and no contracts.[5]

Similarly, because the January 2012 representations cannot be resurrected by Plaintiffs as a basis for reliance, those representations cannot be used to assert that those earlier in time statements caused the Plaintiffs harm. Therefore, in addition to the reasons set forth in the Report, as well is in Defendants' previously filed memoranda of law, Plaintiffs' fraud claims should be dismissed for failure to plead reliance or causation.

### III. IF THE COURT RETAINS JURISDICTION OVER THE STATE LAW CLAIMS, IT SHOULD DISMISS THE BREACH OF FIDUCIARY DUTY CLAIMS AGAINST SANTHANAM AND DONNINI.

Although Defendants agree with the Magistrate Judge's recommendation that the Court decline to exercise jurisdiction over the state law claims, should this Court retain jurisdiction over the state law claims, Defendants hereby respectfully submit that the Court should reject the Report as to Counts III and IV and dismiss the breach of fiduciary duty claims against

---

[5]  The Report also improperly credits the later, corrective February 2012 Letter disclosure as a potential source of Plaintiffs' reliance *in combination with* the January 2012 Call. Report at 30. Plaintiffs cannot pick and choose whatever pieces of the two contradictory sets of representations whenever it suits them.

Santhanam and Donnini.[6]

### A. The Breach Of Fiduciary Duty Claims Against Santhanam And Donnini Sound And Fraud And Should Be Dismissed For Failure To Meet Rule 9(b).

First, as the Magistrate Judge correctly recognized, the breach of fiduciary duty claims sound in fraud and are subject to Rule 9(b) particularity standards. *See* Report at 15 n.10; *see also Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1985) (applying Rule 9(b) to breach of fiduciary duty claims). Thus, just as the Report finds Plaintiffs' allegations of fraud too "conclusory" and "vague" to survive Rule 9(b) scrutiny, the same analysis dictates dismissal of the breach of fiduciary duty claim against *all* Defendants. *See* Report at 25-27. Indeed, Plaintiffs have failed to identify, *with particularity*, what Santhanam and Donnini did or had a duty to disclose but did not. *See In re Stratus Computer*, 1991 U.S. Dist. LEXIS 21587, 20-22 (D. Mass. Dec. 10, 1991) (dismissing claims for breach of fiduciary duty under 9(b) where complaint did not attribute specific acts to specific defendants). As set forth in the Report and argued in Defendants' Motion to Dismiss briefing, Plaintiffs have failed to plead with the requisite level of particularity what any of the Defendants have done in breach of any duty to Plaintiffs. *See* Report at 25-27; 36-38; Opening Brief at 12-13. As the Report correctly finds, the Amended Complaint is lacking particularized allegations of any of Defendants' alleged omissions, i.e.: (1) "any details regarding the alleged contract with HCL," (2) "any facts that would support their assertions that the Defendants kept Dell revenues a secret by requesting that Dell delay payment of invoices," (3) "any facts that would show that HCL ever generated any

---

[6] For the purpose of the arguments set forth below, Defendants apply the Magistrate Judge's reading of Plaintiffs' allegations "as stating that Santhanam and Donnini owed a fiduciary duty to the Plaintiffs because the Plaintiffs were shareholders rather than because Santhanam and Donnini were shareholders." Report at 35. In fact, however, Plaintiffs' Amended Complaint, as written, attempts to impute a fiduciary duty to Santhanam and Donnini "by virtue of their status as shareholders," Am. Compl. ¶¶ 76, 80, which is not enough. Opening Brief at 13-14. Thus, the Magistrate Judge's reading of those allegations should be rejected as improperly allowing Plaintiffs to amend their Amended Complaint through their Opposition.

11

income for HandsFree or that Dell revenues were understated." Report at 25-26. As such, the Amended Complaint as a whole "sounds in fraud," mandating dismissal of the breach of fiduciary duty claims against Santhanam and Donnini.

### B. Even If the Court Tests The Breach Of Fiduciary Duty Claims Against Santhanam And Donnini Under Rule 8, Those Claims Must Fail.

Second, even under a Rule 8 pleading standard, Plaintiffs' breach of fiduciary duty claims against Santhanam and Donnini must fail. To adequately plead a disclosure-based breach of fiduciary duty claim under Delaware law, a plaintiff "must allege that facts are missing from the [disclosure], identify those facts, [and] state why they meet the materiality standard and how the omission caused injury." *Dent v. Ramtron Int'l Corp.*, 2014 WL 2931180, at *10 (Del. Ch. Mar. 25, 2014) (granting motion to dismiss). For an omitted fact to be "material" there must be "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Id.* (citation omitted). Plaintiffs' allegations fall far short of that well-established standard. Instead, what is clear from Plaintiffs' pleading is that Santhanam and Donnini fulfilled their obligations as fiduciaries in connection with the transaction: negotiating a deal necessary for HandsFree's survival, disclosing all material information regarding that deal to the shareholders (including Plaintiffs), and even offering all shareholders (including Plaintiffs) the opportunity to participate in the transaction and become shareholders in the successor company, HFN, Inc. *See* Lovett Decl. at Ex. A.

None of the Defendants, including Santhanam and Donnini, had any duty to disclose anything about HCL as that relationship did not generate any revenue for HandsFree or HFN, Inc. Indeed, nowhere does the Amended Complaint identify what it is about HCL that would have altered the total mix of information respecting the value or prospects of HFN, Inc., or how

learning about an HCL relationship after the HFN, Inc. transaction closed makes any difference. If the Amended Complaint stated that HCL income was excluded from the detailed company financials that were provided with the February 19 Letter, or that a multimillion dollar deal had been signed but excluded from the American Appraisal or NEA-IUVP valuations, then Plaintiffs could point to HCL's materiality and Plaintiffs' potential losses. Those or even similar facts were not plead. Even with a whistleblower, Plaintiffs assert no facts that would require such specific and "granular" disclosure. *See* Report at 25-26; *Dent*, 2014 WL 2931180, at \*14 (dismissing breach of fiduciary claim where plaintiff "failed to adduce any cogent explanation that the ***increased granularity*** he seeks is material . . . .") (emphasis added). Nor did Santhanam and Donnini have any obligation to disclose to Plaintiffs the vague and loosely optimistic statements regarding sales that *Dell* had hypothesized were possible if the technology proved out. Even if Dell itself perceived some potential for HandsFree's products, Plaintiffs do not plead that these alleged projections were that of HandsFree, or indeed whether HandsFree even believed that such pie in the sky hopes were even possible, let alone part of HandsFree's business plan. Even if Plaintiffs had alleged that Santhanam and Donnini knew of Dell's vague plans – which the Amended Complaint fails to plead – such information would not only be immaterial and not the subject to disclosure, but its disclosure could also constitute a potential breach of their duties. *See N.J. Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.*, 527 F.3d 35, 58 (1st Cir. 2008) (finding that "[t]he company would have behaved irresponsibly (and possibly in violation of the securities laws)" if it had disclosed possibly inaccurate inchoate information); *Klang v. Smith's Food & Drug Ctrs., Inc.*, 1997 WL 257463, at \*13 (Del. Ch. 1997), *aff'd*, 702 A.2d 150 (Del. 1997) (granting motion to dismiss claims for breach of fiduciary duty in their entirety because no duty to disclose "where the omitted material was in the form of vague allegations

provided to the Board by a third party").

Also, to the extent that Plaintiffs seek to hinge their breach of fiduciary duty claim on Santhanam or Donnini's involvement in the sale of Satish Chandra's shares in Acris, (1) they do not even allege any such involvement, nor (2) is the sale of Acris stock a matter that must be disclosed to the minority shareholders of HandsFree. Report at 27; *See* 12B William Meade Fletcher, Cyclopedia of the Law of Corporations § 5805 (majority shareholders are entitled to sell or not sell their stock as they see fit) citing *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 762 (Del. Ch. 2006).

In sum, HandsFree satisfied its duty of disclosure to the shareholders through the February 2012 Letter. Santhanam, Donnini, and the company revealed to Plaintiffs the material information relevant to the transaction and Plaintiffs' shares, including the revenue from the Dell contract, the valuation done by American Appraisal and the prospective professional investor, the identity of the investor, the disposition of Acris as a shareholder and creditor, and the conversion ratio applied to HandsFree shareholders should they remain with the new company. *See* Section I.A., *supra*. Plaintiffs' attempt to keep those facts out of consideration, only cherry picking parts of the disclosure that they perceive as helping their argument, was properly rejected by the Magistrate Judge. The February 2012 Letter and its attachments – including all of the information and detail Plaintiffs sought to conceal from the Court – were explicitly incorporated by reference in the Amended Complaint and are properly considered here. Report at 12. Thus, Plaintiffs own allegations make clear that Santhanam and Donnini disclosed to Plaintiffs all that was required, and the breach of fiduciary duty claims as to those Defendants must fail.

## **CONCLUSION**

For the reasons set forth below, Defendants' Motion to Dismiss should be granted in its entirety, and the Court should decline to adopt those portions of the Report to the contrary.

| | |
|---|---|
| Dated: March 6, 2015 | Respectfully submitted, |
| | ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD., |
| | By Their Attorneys, |
| | /s/ Robert B. Lovett |
| | Robert B. Lovett (BBO #561691)<br>Elizabeth C. Inglis (BBO #678349)<br>Connor R. Cobean (BBO #689127)<br>COOLEY LLP<br>500 Boylston St.<br>Boston, MA 02116-3736<br>Tel.: (617) 937-2300<br>Fax: (617) 937-2400<br>rlovett@cooley.com<br>einglis@cooley.com<br>ccobean@cooley.com |

**CERTIFICATE OF SERVICE**

    I, Robert B. Lovett, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 6, 2015.

                                            /s/ *Robert B. Lovett*
                                                Robert B. Lovett

114373905