UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN MILLER, DENNIS CALLAGY, THE CHESTER S. JAKUBOWSKI ROTH IRA, RICHARD GABRIEL, VICTORIA DUDIN SILIOUTINA, GEOFFRY MEEK, GENE ROBINSON, ERIC BROWN, SCOTT NOONE, JOHN MURGO, MAX KUPCHIX and WILLIAM HARDING<br>Plaintiffs,<br>v.<br><br>ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC., SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.<br>Defendants | C.A. No. 14-CV-12337-NMG |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO REPORT AND RECOMMENDATIONS OF MAGISTRATE JUDGE BOAL**

The objections articulated by the Defendants in their Objection to the Report and Recommendations of Magistrate Judge Boal are without merit, as they lack foundation in both the facts and the law. Similarly, their request that this Court dismiss the Plaintiffs' Amended Complaint is without basis. As a result, this Court should overrule the Defendants' objections and deny their request to dismiss this action.

**I.   Because Plaintiffs Could Not Discover the Facts Constituting the Violation, the Statute of Limitations Does Not Apply to the Securities Fraud Claims**

The Recommendation correctly concluded that the statute of limitations does not apply to the Plaintiffs' securities fraud claims. *Merck & Co., Inc. v. Reynolds,* 559 U.S. 633 (2010), governs the statute of limitations inquiry in this case. The *Merck* Court held that the statute of limitations period for a 10b-5 claim "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have discovered the facts constituting

1

the violation—whichever comes first." *Id.* at 653. The Supreme Court recognized *scienter* as "an important and necessary element of the claim." *Id.* at 653.

As a threshold matter, given that the Defendants earlier argued that the Plaintiffs' facts surrounding the January 2012 shareholder call and the February 2012 shareholder letter are insufficient to establish scienter, they cannot now argue that purported facts begin the running of the statute of limitations.  The Defendants' logical inconsistency here is unavoidable. Either the facts do not establish scienter, as the Defendants previously argued, and the statute of limitations *has not yet even begun to run,* or scienter is established, as the Defendants now apparently argue, and *may* trigger the statute of limitations, if the other elements are obvious.

Contrary to the Defendants' Objection, however, these other elements were entirely absent from the Plaintiffs' view. The Defendants argue that the February shareholder letter directly contradicts the information that the Defendants provided to the Plaintiffs during the earlier January shareholder call. This is simply incorrect and provides no basis for concluding that the statute of limitations began to run when the Plaintiffs received the February shareholder letter. Next, the Defendants purposefully diminish the Plaintiffs' case. For while the omissions and misstatements made in the January shareholder call certainly form part of the basis for the Plaintiffs' claims, the Amended Complaint makes clear that the claims are much broader, and nothing in the February shareholder letter would have alerted the Plaintiffs to those wider actions of the Defendants which form an integral part of the Plaintiffs' claims. Finally, as the Recommendation pointed out, there is no evidence at all of what information the Plaintiffs would have discovered had they began to make inquiry after receiving the

February shareholder letter. Indeed, the Amended Complaint states that the Plaintiffs requested further information from the Defendants and were rebuffed. (AC ¶54)

The February 2012 letter contains one vital fact that the Defendants need to ignore to argue for the statute of limitations bar. *See* Declaration of Robert B. Lovett In Support of Motion to Dismiss (Docket #21)(the "Lovett Decl.") Ex. A. The Defendants argue that the American Appraisal report included in the February shareholder letter contains information that supposedly contradicts information the Defendants had conveyed to the Plaintiffs in the shareholder call one month earlier.

However - and this is absolutely crucial - the Appraisal Report clearly states that the information provided therein is only "as of December 31, 2011." (Lovett Decl. at 26) The only possible reading of the Appraisal Report is that it was a snapshot of the state of business as of December 31, 2011, and that HandsFree had, for example, only one live contract and had some revenue in FY 2011. Nothing in the Appraisal Report indicates that as of January 2012, when the shareholder call occurred, HandsFree lost its clients, as the Defendants reported during that call. Nor does the Appraisal Report assert that in January 2012, HandsFree had no revenue.

Thus, when the Defendants informed the minority shareholders during the January 2012 shareholder call that HandsFree had "no viable customers, no contracts and…none of these on the horizon," (AC ¶28) that information did not contradict the Appraisal Report. The information simply was more recent and could reasonably be interpreted to mean that HandsFree had since lost its "one live contract." Similarly, the Defendants' assertion in the January shareholder call that HandsFree had "no….revenue at all" (AC ¶24) does not contradict the Appraisal Report, as the Report contains *no*

3

information about actual 2012 revenue. Thus, the Appraisal Report contains no alarm bells that could trigger the statute of limitations.

Moreover, the Plaintiffs' claims go far beyond the lies told in the January 2012 shareholder call. Indeed, the Amended Complaint lays out in detail the efforts of the Defendants to diminish the value of HandsFree, to hide the secret dealings with Chandra, and to fail to reveal the true value of HandsFree to the Plaintiffs.

The Defendants' Objection also ignores the trumpeting elephant in the room. The Defendants knew that NEA-IUVP was going to invest $4 million for 40% of a company that owned the only assets of HandsFree. At the time the Defendants sent out the Appraisal Report, they knew to a certainty that the marketplace valued HandsFree at an order of magnitude higher than the Appraisal Report's estimate. Nothing in the Appraisal Report even remotely hints at these facts, and thus it contained no "storm warnings" to put the Plaintiffs on notice of a possible claim. *Merck*, 559 U.S. at 652.

Finally, even assuming *arguendo* that the February 2012 shareholder letter somehow put the Plaintiffs on notice, not a single piece of evidence identifies *what the Plaintiffs would have discovered* had they begun an inquiry into the Defendants' conduct. The Defendants' statute of limitations defense must fail because they have offered no evidence of what a reasonable investigation would have found, nor when the information would have been uncovered. *See Young v. Lepone*, 305 F.3d 1, 9(1st Cir. 2002).

II.     **The Amended Complaint Adequately States Reliance and Causation**

The Defendants argue that the Report erred in finding that the Amended Complaint adequately stated reliance and causation in its 10b-5 claims. (Def. Obj. 12-14) However, these elements are plainly stated in the complaint.

4

On reliance, the Defendants fall back again on the notion that the Letter to Shareholders somehow washed away the soot of any misstatements made or omitted in the January shareholder call. (*Id.* 12) As stated in the statute of limitations section above, however, no contradiction exists between the information conveyed during the January shareholder call and the information contained in the February shareholder letter. The letter purported to reflect information as of 2011, while the January shareholder call reflected information supposedly known to the fiduciaries up to that point. The minority shareholders were entitled to believe that they could rely on the Defendants to provide up-to-date information, and that they were being truthful when they reported that the company did not have any customers and no prospects for income.

Likewise, causation is clear in the Complaint. To show loss causation, the Plaintiffs must demonstrate a causal connection between the material misrepresentation and the loss. *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 342 (2005). Here, the Defendants' statements and omissions caused the minority shareholders to believe HandsFree had little value and so went along with the Defendants' deception. In doing so, the Plaintiffs were lulled into selling their shares instead of keeping them on the premise that the company had two important contracts and an active stream of revenue higher than they knew, and so the company stood to greatly grow in value. Instead, they sold their shares for far less than they were worth.

### III. The Amended Complaint Describes the Defendants' Breach of Fiduciary Duty

As they must, the Defendants do not dispute that HandsFree board members Santhanam, Donnini and Chandra bore a fiduciary duty toward the minority shareholders. *See Guth v. Loth,* 5 A.2d 503, 510 (Del. 1939)(fiduciary duty extends to corporate

5

directors and officers). Instead, they argue that their fiduciary duty did not extend to a duty not to conceal material information from the minority shareholders. (Def. Obj. 11) For a number of reasons, their argument fails.

At the outset, the Defendants err in urging this Court to evaluate a fiduciary duty claim under Rule 9(b), rather than the decidedly more lax standard of Rule 8(a). *See In re Boston Scientific ERISA Litigation,* 508 F.Supp. 2d 73, 77 (D.Mass. 2007)(rejecting idea that fiduciary duty should be analyzed under 9(b) because it "sounds in fraud"); *Stein v. Smith*, 270 F.Supp. 2d 157, 167 (D.Mass. 2003). Indeed, in this situation, the tables are rightly turned, and the Defendants' attempt to shirk their fiduciary duty should be analyzed skeptically. *See Gotham Partners v. Hallwood Partners*, 160 A.2d 160, 1608 (Del. 2002)("efforts by a fiduciary to escape a fiduciary duty, whether by a corporate director or officer or other type of trustee, should be scrutinized searchingly.").

As fiduciaries, the Defendants' duties are clear. As corporate officers and directors, the Defendants had an "immutable" duty not to "use their position of trust and confidence to further their private interests." *Guth*, 5 A.2d at 510. This duty also requires them to "affirmatively protect and defend those interests entrusted to them." *Mills Acquisition Co. v. Macmillan, Inc.*, 559 A.2d 1261, 1280 (Del. 1988). Under the duty of candor folded within their fiduciary duty, the Defendants are also bound to "disclose all material information relevant to corporate decisions from which they may derive a personal benefit." *Id.* Whenever a board seeks shareholder action, the board has a fiduciary duty to "disclose fully and fairly all material information within the board's control." *Stroud v. Grace*, 606 A.2d 84-88 (Del. 1992).

Here, of course, the Defendants' breaches of their fiduciary duty are glaring. The Defendants concealed from the minority shareholders the actual income HandsFree was getting from Dell. (AC ¶¶ 45-47, 56). The Defendants assured the minority shareholders that HandsFree had no customers, when it had actually signed contracts with Dell and HFN. (AC ¶¶ 53-54) Unknown to the minority shareholders, the Defendants forked over to Board Member Chandra $2 million - twice what he had invested – while giving the shareholders, who owned 9 percent of the company, only $21,000. (AC ¶¶ 53, 58) Finally, they informed the shareholders that their company was worth no more $980,000 – and likely far less - even though they knew that, in the marketplace of the real world, an investment bank had offered $4 million for a 40 percent stake in the company. (AC ¶¶ 53-56)

The Plaintiffs have established that the key facts omitted by the Defendants meet the materiality standard under Delaware law required to plead a disclosure-based breach of fiduciary duty claim. *Dent v. Ramatron Int'l Corp.,* 2014 WL 2931180 at *10 (Del. Ch. March 25, 2014). Even a quick glance at the facts alleged here (i.e., the hidden Dell revenue, the secret deal with board member Chandra with the assent of board members Santhanam and Donnini, and the nature and amount of NEA-IUVP's investment) reveals that they were not disclosed for the very reason that they are material and that their disclosure would have given the Plaintiffs the opportunity to obtain fair value for their shares. *See Lawton v. Nyman,* 327 F.3d 30, 41(1st Cir. 2003)("if a majority shareholder violates his duties of disclosure and the minority shareholder sells at an inadequate price, the minority shareholder can seek damages based on the difference between the offered price and the fair value of the stock.")

To state a claim for fiduciary duty, the plaintiffs must allege (1) that a fiduciary duty exists, and (2) that the fiduciary breached that duty. *In re Tropicana Entertainment*, LLC, 520 B.R. 455, 470 (Bankr. D. Del. 2014). Together, the Defendants engaged in a scheme to hide the value of the company, buy the minority shareholders out for a pittance while secretly giving Defendant Chandra 200% of the value of his investment, and sell off 40% of the company for more than four times what they reported the total value of the company was. Assuming all the facts in the Amended Complaint to be true, as the Court must at this stage of the proceedings, the Amended Complaint has stated a case for breach of fiduciary duty that is far more than plausible.

## CONCLUSION

The Plaintiffs timely filed their securities fraud claims because they could not have discovered the elements of the fraud – particularly scienter – at the time of the 2012 buyout. For similar reasons, the Amended Complaint adequately states reliance and causation because the appraisal report reflected only a snapshot of HandsFree's business as of the end of December 2011, while the January 2012 conference call reflected events up to that time. As a result, the Plaintiffs sold their shares in a valuable company for comparative pocket change. Finally, because the Defendants hid their self-dealing, as well as facts underlying the true value of HandsFree, they breached their fiduciary duty to the Plaintiffs. As a result, this Court should overrule the Defendants' Objection and deny their motion to dismiss in its entirety.

        Respectfully Submitted,
        The Plaintiffs,
        By Their Attorneys,


        __/s/ Patrick J. Dolan_____
        Patrick J. Dolan  BBO #564250
        *pdolan@pkdllp.com*
        Perry, Krumsiek & Dolan, LLP
        210 Union Wharf
        Boston, MA 02109
        617-720-4300
        617-720-4310 (fax)


        __/s/ Timothy Cornell_____
        Timothy Cornell BBO #654412
        *Timothycornell5@gmail.com*
        Gardner Cornell, P.C.
        33 Mount Vernon Street
        Boston, MA 02107
        603-277-0838

DATE:  March 20, 2015


<u>Certificate of Service</u>

    I, Patrick Dolan, hereby certify that I served the above document was filed electronically using the Court's ECF system on March 20, 2015 and thereby served to the Defendants.