UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALLAN MILLER, DENNIS CALLAGY, THE CHESTER S. JAKUBOWSKI ROTH IRA, RICHARD GABRIEL, VICTORIA DUDIN SILIOUTINA, GEOFFRY MEEK, GENE ROBINSON, ERIC BROWN, SCOTT NOONE, JOHN MURGO, MAX KUPCHIK, and WILLIAM HARDING<br><br>    Plaintiffs,<br><br> v.<br><br>ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.,<br><br>    Defendants. | C.A. No. 14-CV-12337 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
OBJECTION TO MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS**

Defendants Alessandro Donnini, Sridhar Santhanam, HFN, Inc., Satish Chandra, Chetan Chandra, and Acris Technologies, Private, Ltd. ("Defendants") respectfully submit the within response to Plaintiffs' Objection to Report and Recommendations of Magistrate Judge Boal ("Plaintiffs' Objection") (the Magistrate Judge's Report and Recommendation is referenced herein as the "Report"). Nothing in Plaintiffs' Objection changes the Magistrate Judge's recommended holding – that the matter be dismissed on well-reasoned grounds, and this Court decline to exercise jurisdiction over the state law claims, if any remain. As has been discussed at length in Defendants' prior submissions, the Amended Complaint is replete with vague and conclusory allegations that rest on speculation and innuendo rather than facts. As such, because Plaintiffs have already had multiple opportunities to amend the complaint for a second time, and

because attempting to do so would be futile, this Court should grant dismissal *with prejudice*.

## ARGUMENT

### I. PLAINTIFFS' EXCHANGE ACT CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS.

As a threshold issue, Plaintiffs' Objections only serve to confirm that their Exchange Act claims are barred by the applicable two year statute of limitations. *See* Defendants' Objection[1] at 2-9; Opening Brief at 3-4; Reply Brief at 5-8. Plaintiffs make clear that they only tacked on their deficient "whistleblower" allegation (Am. Compl. ¶ 60) to avoid the statute of limitations' bar. Plaintiffs' Objection at 9-11. Indeed, according to Plaintiffs' Objection, Plaintiffs have changed course and no longer rely on very defective "source" who "blew the whistle" on HandsFree. Without the whistleblower, however, Plaintiffs are left with (1) the alleged statements made in the January 2012 shareholder call that Magistrate Judge Boal found to be non-actionable; and (2) the extensive and detailed disclosures made in the February 2012 Letter to shareholders. As such Plantiffs were on notice of their claims in February 2012, which renders the Exchange Act claims time barred.

The clock on Plaintiffs' claim began to run in February 2012, when Plaintiffs were presented with the shareholder letter that not only directly contradicted the alleged statements made during the January 2012 shareholder call, but also provided a fulsome disclosure of the very facts that Plaintiffs allege were withheld from them. *See* Defendants' Objections at 2-9; Opening Brief at 3-4; Reply Brief at 5-8. Notably, the February 19, 2012 letter (the "February

---

[1] Defendants assume that the Court is familiar with the arguments set forth in their briefing, so they will not repeat them here. Defendants instead will provide cross references throughout this Response. All citations herein to Defendants' prior briefing incorporate that briefing's arguments as well as the case citations contained therein. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss (the "Opening Brief," Dkt. 20); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss (the "Reply Brief," Dkt. 33); Defendants Memorandum of Law in Support of Motion to Strike Exhibits Filed in Opposition to Defendants' Motion to Dismiss (the "Motion to Strike," Dkt. 28); Defendants' Opposition to Plaintiffs' Motion to Strike (the "Motion to Strike Opp.," Dkt. 44); Defendants' Objections to Magistrate Judge's Report and Recommendation on Defendants' Motion to Dismiss, Dkt. 56 ("Defendants' Objections").

2012 Letter") is not mentioned once in Plaintiffs' Objection.  Indeed, Plaintiffs failed in their attempt to conceal it from the Court and strike it from consideration – despite it being referenced in and central to the Amended Complaint – and now stick their heads in the sand like it does not exist.  But it is the one disclosure that neither the Plaintiffs nor this Court can ignore.  It is the deal Plaintiffs were offered – money or stock in the newly capitalized HFN, Inc., replete with 57 pages of transactional, valuation, financial, investor and other information that not only presented the proposed transaction and Plaintiffs' potential participation, but the bases for the deal.  *See* Defendants' Objections at 3-6; Declaration of Robert B. Lovett in Support of Defendants' Motion to Dismiss (the "Lovett Decl.," Dkt. 21), at Ex. A.  The February 2012 Letter alone is enough to start the statute of limitations clock against the Plaintiffs.

Just as important, the Amended Complaint does not plead one fact for the period between the February 2012 Letter and the transaction's closing in April 2012.  For statute of limitation purposes, the February disclosure handed Plaintiffs the facts supposedly supporting their claim, putting them on actual notice of their claim *at that time*.  Defendants' Objection at 6-9.  At the very least, had Plaintiffs engaged in a "reasonably diligent" investigation upon receipt of the letter – or indeed any investigation at all – they would have been on notice of their claim well before the transaction closed in April 2012.  *Id*.  Frankly it is astounding, given the claims Plaintiffs have asserted, that they did not ask one question of HFN management after delivery of the February 2012 Letter and before the April closing,  Indeed, Plaintiffs did not ask one question regarding the transaction (e.g., how much is IUVP investing? What does the conversion ratio mean?  How will the new company's capitalization affect me?) or the apparent contradictions from the January 2012 call (e.g., why does the appraisal show that the company has substantial value when someone said it was not worth "a cup of coffee?").

Accordingly, Plaintiffs' Exchange Act claims are too late and must be dismissed on statute of limitations grounds.

## II. PLAINTIFFS FAIL TO ALLEGE FRAUD WITH PARTICULARITY.

### A. Plaintiffs Do Not Plead Sufficient Facts to Establish Defendants' Scienter

None of Plaintiffs' supposed scienter allegations actually fill the gap that the Magistrate Judge correctly identified in Plaintiffs' pleading. Report at 25-27.

<u>First</u>, the Magistrate was correct in finding that none of the Defendants' scienter can be inferred from Plaintiffs' deficient allegations of a one-time request, over a year before the transaction at issue, that Dell hold for thirty days its payment of one single invoice. Report at 25-26; Opening Brief at 7-8; Reply Brief at 11-12. Plaintiffs attempt to escape the consequences of their factually devoid pleading by alluding to a "vaster omission of due revenue" (Plaintiffs' Objection at 7), but such vague bluster is not supported by facts in the Amended Complaint or in Plaintiffs' briefing. Indeed, the "broader allegation" that Plaintiffs' cling to in their Objection is so broad that it not only fails to specify who the subject of their allegation may be (*see* Plaintiffs' Objection at 7 citing Am. Compl. ¶ 45, which alleges that an unspecified "***they*** requested that Dell not pay HandsFree invoices" (emphasis added)), but it is also completely unsupported. Report at 25-26; Opening Brief at 7-8; Reply Brief at 11-12. In fact, even leaving aside the patent irrelevance of a request to adjust one payment by thirty days a year before the HFN transaction, the very document on which Plaintiffs rely for this assertion ***does not mention or copy any of the Defendants***. *See* Reply Brief at 11-12. The Amended Complaint never connects this benign request to the Defendants, and does not plead any specific facts showing that the request was fraud.

<u>Second</u>, the Report correctly found non-actionable representations ***made to third party***

4

*investors,* and not to the instant Plaintiffs, for the following reasons:  the representations were not made to the Plaintiffs and therefore cannot support claims by them; and, all such alleged statements were nothing more than inactionable puffery.  Report at 26; Opening Brief at 8-9.  Despite Plaintiffs' misguided attempt to turn the legal concept of puffery into an issue of factual proof, the correct analysis is the one conducted by the Magistrate: allegations of "puffing statements and statements of opinion," such as Plaintiffs' here, "do not show that the Defendants' representations to the Plaintiffs were false" and therefore do not constitute the requisite particularized allegations of scienter.  Report at 26; *see also* Opening Brief at 8-9.  In addition, as the Report properly recognized, the puffery alleged by Plaintiffs took place ***one year*** before the transaction closed, and nowhere do Plaintiffs allege that "HCL ever generated any income for HandsFree or that Dell revenues were understated."  Report at 26.

Third, contrary to Plaintiffs' argument, the Report did not ignore allegations regarding the January 2012 shareholder call Objection (Plaintiffs' Objection at 8), the Report addresses those deficient allegations head on.  Indeed, in analyzing each of Plaintiffs' allegations of the information supposedly withheld from Plaintiffs during the January 2012 call, the Magistrate concluded that the "Amended Complaint does not contain the level of detail necessary to believe the fraudulent motives ascribed to the Defendants."  Report at 27.  No facts are pled regarding any of the Defendants' knowledge of IUVP's intentions as of January 2012, or even when the commitment from IUVP was made.  What Plaintiffs conveniently omit from their Objection is any reference to the February 2012 Letter and its more than 50 pages of detailed information regarding the transaction and its valuation, which included detailed information regarding IUVP.  *See* Defendants' Objections at 3-6; Lovett Decl., Ex. A.

Finally, Plaintiffs' claim that this is a jump ball of competing inferences is a non-starter

because there are no particularized facts *at all* supporting Plaintiffs' claim. Report at 27. Even the very cases on which Plaintiffs rely are against them, and make clear that what Plaintiffs have pled does not come close to the "strong inference" of scienter required in this Circuit. *See* Objection at 7, citing *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 758 (1st Cir. 2011) (affirming dismissal of 10(b) claim where "the inference of a nonculpable explanation for the lack of disclosure is much stronger than the inference of scienter . . . ."); *ACA Fin. Guar. Corp. v. Advest, Inc*. 512 F.3d 46, 66 (1st Cir. 2008) (affirming dismissal of 10(b) claim where "[t]here are several reasons why the plaintiffs' inference of scienter is not at least equally as strong" as competing inference of non-fraudulent intent).

### B. The Magistrate Judge Properly Rejected Plaintiffs' Confidential Witness Allegations

The Report did not impose "new requirements" on Plaintiffs' confidential witness allegations, and to suggest otherwise is grasping at straws. The Magistrate did nothing more than properly apply long-standing precedent in this Circuit mandating that the "whistleblower" allegations be rejected if not supported by specific facts establishing the source's reliability. Report at 27-29; Opening Brief at 6; Reply Brief at 3-4. Because Plaintiffs did not come close to meeting that standard, Plaintiffs' whistleblower claims were rejected. In their attempt to overcome this defect, Plaintiffs attempted to back-fill their defective allegations by submitting a number of incomplete, unauthenticated documents to show that their unidentified straw man of a whistleblower "was key enough a player" at HandsFree. Plaintiffs' Opposition at 8. The Magistrate Judge not only properly struck the majority of Plaintiffs' documents from consideration (see Section VI., *infra*), but also rejected Plaintiffs' attempt to use those extraneous documents in a belated and baseless attempt to bolster the whistleblower's credibility. Report at 28-29; Reply Brief at 3-4.

6

### C. Nothing In Plaintiffs' Objection Changes the Fact That This Simply Is Not a "Scheme" Case

The Magistrate correctly concluded that Plaintiffs have failed to state a claim for "scheme" liability under Sections 10b-5(a) or (c) because "Plaintiffs' claims are premised on the Defendants alleged misrepresentations." Report at 32; *see also* Reply Brief at 8-11. Repeating the word "scheme" over and over again does not transform the 10(b) claim into one for scheme liability. Reply Brief at 8-11. Regardless, Plaintiffs' 10(b) claims fall woefully short of the stringent pleading standards of the PSLRA or 9(b), which requires the pleading of sufficient facts that give rise to a strong inference of scienter *as to each defendant*. Finally, as set forth in Defendants' reply and ignored by Plaintiffs, this case is nothing like cases where a "scheme" is found. Those cases involve extensive, complex fraudulent enterprises designed to defraud public markets, and artificially inflate the market value of a security. Reply Brief at 8-11.

## III. PLAINTIFFS' CONTROL PERSON CLAIM ALSO FAILS.

Given Plaintiffs' failure to plead any underlying violation of Section 10(b) of the Exchange Act, Plaintiffs' control person claim also fails. Report at 32; Opening Brief at 11-12. Even if an analysis of the second prong of the test for control person liability – actual control – were necessary (which it is not), neither Plaintiffs' bare allegations of Santhanam, Donnini, and Satish Chandra's capacity as HandsFree board members, nor Plaintiffs' factually devoid statements of those Defendants' "role" and "control" over HandsFree suffice. *See* Report at 24 ("general inferences that the defendants, by virtue of their position within the company, 'must have known' about the company's problems . . . [are] inadequate to withstand the special pleading requirements in securities fraud cases") (citation omitted); Opening Brief at 11-12.[2]

---

[2] Plaintiffs misstate the Report's findings as to Satish Chandra. The Report did not find that "Plaintiffs have adequately pleaded the underlying 10(b) violation" "[a]side from the scienter element" (Plaintiffs' Objection at 12). Instead, the Report also found that the only allegation against him was that "he was a Board Member of HandsFree

7

## IV.  PLAINTIFFS' BREACH OF FIDUCIARY DUTY CLAIM AGAINST SATISH CHANDRA SHOULD BE DISMISSED.

Plaintiffs' last ditch effort to revive their breach of fiduciary duty claim against Satish Chandra is merely another conclusory, unsupported string of statements reflecting Plaintiffs' wishful thinking as to the story they would like to tell but have not pled.  Plaintiffs' Objection at 14.  Despite Plaintiffs' assertion that Satish Chandra had a duty to disclose the alleged sale of his Acris shares, they again ignore the key fact that Satish Chandra was a shareholder in *Acris*, not in *HandsFree*.  Thus, as the Magistrate correctly concluded, Satish Chandra was free "to sell his [Acris] stock" as he sees fit.  Report at 27; *see also* Reply Brief at 14.  Plaintiffs' remaining allegation is Satish Chandra's "participation" in the January 2012 call – i.e., without any allegations that Satish Chandra made any misleading statements on that call or otherwise, or knew or had any basis to know that anything said during that call was false or misleading.  Report at 37; Opening Brief at 15.  As such, the Report correctly concluded that the claims against Satish Chandra are defective and must be dismissed.

## V.  PLAINTIFFS FAIL TO STATE A CLAIM FOR CIVIL CONSPIRACY.

Without any allegations of a conspiratorial *agreement* between or among *any* of the Defendants, Plaintiffs again resort to conclusory statements, unsupported by any factual allegations or case law, that Santhanam and Donnini "together misled the plaintiffs during the shareholder conference call" and engaged in some unspecified "concerted joint acts" (Plaintiffs' Objection at 14-15).  As the Report correctly concluded, Plaintiffs have not alleged "any meetings, conversations, or phone calls or any other conduct that would raise the inference of an *agreement* between the Defendants."  Report at 39; Opening Brief at 15-17 (emphasis added).  In addition, Plaintiffs' civil conspiracy claim against Satish Chandra fails not only because he

---

and that he was present during the January 2012 call" and that the Amended Complaint fails to describe any misrepresentations by Satish Chandra.  Report at 23-24.

was not a party to any conspiratorial agreement, or a participant in any act in furtherance thereof, but also because Plaintiffs have failed to allege any underlying tort claim against him. *See* Report at 39; Opening Brief at 16; Section IV., *supra*.

## VI. THE MAGISTRATE JUDGE PROPERLY STRUCK PLAINTIFFS' DOCUMENTS FROM THE RECORD.

The Magistrate's well-reasoned decision to strike eight of Plaintiffs' nine exhibits to Plaintiffs' Opposition[3], and consider each of the documents attached to Defendants' Opening Brief and Reply Brief, correctly applies firmly established First Circuit precedent. Report at 8-13; Motion to Strike at 1-5; Motion to Strike Opp. at 1-2. As none of Plaintiffs' eight excluded exhibits was referenced in or central to the Amended Complaint, and in several instances the exhibits simply did not support the supposedly corresponding allegation in the Complaint (or, as to Plaintiffs' Exhibit 7, contained information *contradicting* Plaintiffs' allegation), the Magistrate properly excluded them from consideration. Report at 10-12; Motion to Strike at 1-5. Moreover, Plaintiffs' statement that Defendants "did not dispute the authenticity" of any of Plaintiffs' exhibits (Plaintiffs' Objection at 15) is wrong. The documents' lack of centrality to or reference in Plaintiffs' Amended Complaint mandated their exclusion, and Defendants' reliance on those bases to strike the documents was not an admission of their authenticity. *See* Motion to Strike at 1-5.

Furthermore, in applying the *same*, well-reasoned analysis and established precedent, the Magistrate correctly considered the documents submitted by Defendants with their Motion to Dismiss briefing. First, the February 2012 Letter to the shareholders is specifically referenced in

---

[3] Along with Plaintiffs' Opposition to Motion to Dismiss with Memorandum of Law ("Plaintiffs' Opposition," Dkt. 24), Plaintiffs filed the Declaration of Patrick J. Dolan (Dkt. 25), which attached eight exhibits ("Plaintiffs' Exhibits"). Defendants did not move to strike Plaintiffs' Exhibit 2 because that document was sufficiently referenced in Plaintiffs' Amended Complaint. *See* Motion to Strike at 1.

9

Paragraph 56 of Plaintiffs' Amended Complaint, and is unquestionably central to Plaintiffs' claims. *See* Report at 12; Reply Brief at 5-6. Second, HFN's Form D filing with the SEC is not only central to their claims but is also a public document. Third, the Report appropriately applied the extensive authorities from numerous federal courts allowing the submission of the Investopedia article as a reference. *See* Report at 12-13; Motion to Strike Opp. at 1-2.

## VII. THE COURT SHOULD REJECT PLAINTIFFS' BELATED REQUEST TO AMEND, AND DISMISS THE AMENDED COMPLAINT WITH PREJUDICE.

Plaintiffs include in their Objection *for the first time* a threadbare request to, again, amend their complaint. Plaintiffs brought this case in June 2014. They have already amended once, engaged in extensive motion to dismiss and motion to strike briefing, and participated in oral argument before Magistrate Boal. Not once did Plaintiffs move to amend their Amended Complaint, and it was not until March 6, 2015 – on the last page of their Objection to the Magistrate's Report – that Plaintiffs requested leave. Such a vague after-thought of a request should be rejected out of hand, and the case dismissed with prejudice.

First, a request made in an objection to a magistrate's report and recommendation is not a motion for leave to amend, and should be rejected on that basis alone. *See U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 128 (1st Cir. 2013) *cert. denied,* 135 S. Ct. 53 (2014) (bare request in an opposition to a motion to dismiss *does not constitute* a motion to amend); *Fire & Police Pension Ass'n of Colo. v. Abiomed, Inc.*, 778 F.3d 228, 247 (1st Cir. 2015) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss.") (citation omitted). Plaintiffs' cursory request is not a motion, it is not a proposed amended complaint, and it contains no facts on which this Court could possibly conclude that the Amended Complaint's

defects will be cured. *See Fisher v. Kadant, Inc.*, 589 F.3d 505, 510 (1st Cir. 2009) ("[A]llowing plaintiffs to hedge their bets by adding a cursory contingent request in an opposition to a motion to dismiss would encourage plaintiffs to test the mettle of successive complaints and freely amend under Rule 15(a) if their original strategic choices prove inadvisable.").

Second, Plaintiffs' request is not only procedurally improper, it is substantively defective. Requests to amend should be made in a separate motion, and "should attach the proposed amended complaint so that the Court is able to evaluate the nature of the proposed amendment and its sufficiency." *Levitt v. Sonardyne, Inc.,* 2012 WL 5350037, at *2 (D. Me. Oct. 29, 2012). Nowhere do Plaintiffs present to the Court – by way of separate motion or otherwise – specific evidence and reasoning establishing that the defects in the operative complaint can be cured. The reason for that is obvious – vaguely alluding to documents that were struck by the Magistrate avoids having to address their authenticity, reliability, meaning or significance. Attempting to do so here, with any degree of specificity, would underscore the futility of seeking a legally sustainable amendment, and would fail to cure the Amended Complaint's defects. *See Aponte-Torres v. Univ. of P.R.*, 445 F.3d 50, 58 (1st Cir. 2006) ("The absence of supporting information may, in and of itself, be a sufficient reason for the denial of leave to amend."); *Lopes v. Riendeau*, 2014 WL 1870849, at *1 (D. Mass. May 5, 2014) (J. Gorton) (denying motion to amend with prejudice because "[a]mendment would be futile when the complaint as amended still would not survive a motion to dismiss.").

Third, leaving aside that Plaintiffs failed to submit a further proposed amended complaint, Plaintiffs argue that they have had documents in their possession since before filing their initial complaint nearly a year ago. Plaintiffs' Objection at 16-17. Ironically, Plaintiffs shoot themselves in the foot because, taking their baseless argument at face value, they could

11

have included further information from these exhibits in both their Complaint and Amended Complaint. They failed to do so. *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 59 (1st Cir. 1990), *overruled on other grounds by Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61 (1st Cir. 2004) (amendment futile where plaintiff had not unearthed viable basis for claims and "the 'new' facts are of the same genre as the 'old' facts . . . .") (citation omitted). Accordingly, Plaintiffs' belated attempt is now too late. Allowing amendment on this record with no procedural or factual predicate would be both prejudicial to Defendants and a waste of judicial resources. *See Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006) (affirming denial of motion to amend where plaintiff "alleged no new facts or arguments to suggest that an amendment would have strengthened his case in the slightest" and plaintiff could have brought forward earlier facts in their possession to frame amendment). Indeed, a sister circuit has observed that attempting to amend in conjunction with referral to the magistrate is improper. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 458 (6th Cir. 2013) (amendment improper because permitting amendment would allow plaintiff to use magistrate-referral process to discover defects to pleadings, where plaintiff filed motion to amend months after (1) discovery of "new" evidence, (2) motion to dismiss had been filed and fully briefed, and (3) magistrate recommended granting the motion). At a minimum it shows that Plaintiffs have had more than ample opportunity to amend, and should be foreclosed from doing so now.

**CONCLUSION**

For the reasons set forth above, and for those set forth in Defendants' Objections and Motion to Dismiss briefing, Defendants' Motion to Dismiss should be granted in its entirety, and with prejudice. The Court should decline to adopt those portions of the Report to the contrary or to consider any of Plaintiffs' Objections.

Dated: March 20, 2015

Respectfully submitted,

ALESSANDRO DONNINI, SRIDHAR SANTHANAM, HFN, INC, SATISH CHANDRA, CHETAN CHANDRA, ACRIS TECHNOLOGIES, PRIVATE, LTD.,

By Their Attorneys,

/s/ Robert B. Lovett
Robert B. Lovett (BBO #561691)
Elizabeth C. Inglis (BBO #678349)
Connor R. Cobean (BBO #689127)
COOLEY LLP
500 Boylston St.
Boston, MA  02116-3736
Tel.:  (617) 937-2300
Fax:  (617) 937-2400
rlovett@cooley.com
einglis@cooley.com
ccobean@cooley.com

## **CERTIFICATE OF SERVICE**

    I, Robert B. Lovett, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 20, 2015.

                                              /s/ *Robert B. Lovett*
                                                Robert B. Lovett

115057269