UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
ALLAN MILLER, et al.,                   )
                                        )
        Plaintiffs,                     )
                                        )
        v.                              )        Civil Action No. 14-12337-NMG
                                        )
ALESSANDRO DONNINI, et al.,             )
                                        )
        Defendants.                     )
_____)

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS
[Docket No. 19]

February 12, 2015

Boal, M.J.

        Plaintiffs,[1] who are former minority shareholders of HandsFree Networks, Inc.

("HandsFree"), allege that the Defendants devised a scheme to deceive the Plaintiffs into cashing

out their shares for well below their value.  Plaintiffs bring claims for violations of Sections

10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated by the

Securities and Exchange Commission ("SEC").  They also brings claims for breach of fiduciary

duty, fraud, civil conspiracy, and constructive trust.  Defendants[2] have moved to dismiss the

_____

        [1] The plaintiffs are Allan Miller, Victoria Dudin, Geoffry Meek, the Chester S.
Jakubowski Roth IRA, Eric Brown, Scott Noone, Dennis Callagy, Richard Gabriel, Gene
Robinson, Max Kupchik, John Murgo, and William Harding.

        [2] The defendants are Alessandro Donnini, Sridhar Santhanam, HFN, Inc., Satish Chandra,
Chetan Chandra, and Acris Technologies Private Limited.

Complaint.  Docket No. 19.[3]

For the reasons discussed below, this Court recommends that the District Court dismiss the Plaintiffs' Exchange Act claims.  Because it recommends dismissal of the federal claims, this Court further recommends that the District Court decline to exercise supplemental jurisdiction over the Plaintiffs' state law claims.  However, if the District Court decides to exercise supplemental jurisdiction over the Plaintiffs' state law claims, the Court recommends that the District Court grant in part and deny in part the motion as it relates to the state law claims.

I.      FACTUAL AND PROCEDURAL BACKGROUND[4]

        A.      HandsFree And The Parties

Plaintiffs Allan Miller and Dennis Callagy and defendant Alessandro Donnini founded HandsFree in 1999, as a Delaware corporation with a principal place of business in Newton, Massachusetts.  Amended Complaint ("AC") ¶ 31.  HandsFree created one of the world's first remote computer systems.  Id.  A remote computer system "allows computer administrators to diagnose and repair problems with devices without requiring physical access to the devices, allowing the administrators to save money and leverage their expertise to many more customers."  AC ¶ 32.

Miller wrote the initial software and oversaw product design and execution.  AC ¶ 33. Donnini oversaw all sales and marketing, provided customer support, and participated in product

---

[3] The District Court referred the motion to this Court for a report and recommendation on September 23, 2014.  Docket No. 23.

[4] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in the Plaintiffs' favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

design.  Id.

Although the HandsFree product was well received by customers, HandsFree did not

generate sufficient revenue during its first decade of operation.  AC ¶¶ 33-34.  Miller and

Donnini attempted to raise investment capital, but were largely unsuccessful.  AC ¶ 34.  Instead,

Miller and Donnini had to support the company with cash infusions of their own.  Id.

By late 2007, the relationship between Miller and Donnini became acrimonious and

neither wanted to continue working together.  AC ¶ 35.  After Donnini failed to negotiate a deal

with two competitive buyers offering an exit from HandsFree, defendant Sridhar Santhanam

offered to buy the company through his own company, defendant Acris Technologies Private

Limited ("Acris").  Id.  In March 2008, Acris obtained a 60% interest in HandsFree.  Id.

Through Acris, Santhanam became a principal in HandsFree.  Id.

Miller continued working with Santhanam for about nine months.  AC ¶ 36.  During this

time, Miller and others spent most of their time trying to teach staff about the product and its

positioning in the marketplace.  Id.  However, Santhanam's marketing plans found no new

customers and caused a number of customers to leave.  Id.

In 2009, defendant Satish Chandra[5] acquired an 85% interest in Acris for $1,000,000 and

through that investment became involved in HandsFree.  AC ¶ 37.  Miller first heard of Satish

Chandra's involvement after Satish Chandra learned that Miller had done virtually all

HandsFree's software development, and requested a meeting.  Id.

During the time periods relevant to the Complaint, Donnini, Santhanam and Satish

---

[5] Satish Chandra shares a last name with defendant Chetan Chandra.  For clarity, the
Court refers to these defendants by their full names.

Chandra were three of HandsFree's board members.  AC ¶ 24.

      B.      The Alleged Fraudulent Scheme

Between April 2009 and May 2010, HandsFree attempted to secure a contract with Dell.

AC ¶ 38.  HandsFree started a test with Dell in May 2010.  Id.  The test was successful and Dell

signed a contract on November 9, 2010.  Id.  According to the Plaintiffs, however, "Santhanam

and Donnini kept the success with Dell and the magnitude of the revenue a secret.  Instead,

[they] chose to pass along only dour reports reflecting problems with Dell."  Id.

Discouraged by the bad news, sometime before May 2011, Satish Chandra offered to exit

his investment in Acris if Santhanam could promise him the return of 200% on his investment or

$2,000,000.  AC ¶ 40.  Santhanam agreed to this deal and Santhanam and Satish Chandra entered

into an agreement that was never revealed to any of the minority shareholders.  Id.  According to

the Plaintiffs, the agreement "had a built-in-deadline that put a strong pressure on Santhanam to

find another investor quickly."  Id.

Starting in June 2011, Santhanam, Donnini and another HandsFree employee,

Vidhyacharan Ponnusamy, began to look for an investor to put $4 million into HandsFree: $2

million to buy out Chandra and the rest for capital for the company.  AC ¶ 41.  Around the same

time, HCL completed a test of HandsFree product.  AC ¶ 42.  As a result of the test, HCL

concluded that it wanted to continue development of the product, estimating a potential of 8

million installations.  Id.  In addition, Santhanam and Donnini had projections from Dell

regarding its plans to rapidly expand its purchases of the HandsFree product.  AC ¶ 43.  Dell

estimated a 5 times increase in its utilization of the HandsFree product.  Id.

The Plaintiffs allege that Santhanam and Donnini kept the information regarding the

business with Dell and HCL secret from the shareholders in order to be able to sell HandsFree at a "bargain price."  AC ¶ 44.  To keep the revenue a secret, for the last half of 2011 and the first quarter of 2012, they requested that Dell not pay HandsFree invoices.  AC ¶ 45.  For example, on April 1, 2011, HandsFree sent an email to Sydney Lewis and others at Dell requesting that "[d]ue to year-end accounting and business transformation happening to HFN USA. [sic] We would request you to postpone all HFN invoice payment scheduled on April 5 to 5th, May."  AC ¶ 46.  Dell complied with the request.  AC ¶ 47.

While Donnini and Santhanam presented a "gloomy picture" to HandsFree shareholders, they presented an entirely different picture to potential buyers.  AC ¶ 48.  For example, Santhanam wrote in an email to Sandeep Singal at Nexus India Capital Advisors Pvt Ltd, that HCL had "given a green signal to the technology" and that a contract was about five weeks away.  AC ¶ 49.  In fact, a contract with HCL was executed in December 2011, but the minority shareholders were never told about the contract.  Id.

On October 3, 2011, Santhanam, Donnini, and Ponnusamy made a presentation to Kumar Shiralagi at New Enterprise Associates-Indo US Ventures LLC ("NEA") during which they provided "the true financial picture of [HandsFree]."  AC ¶ 50.  They told Shiralagi that Dell was a loyal customer already generating significant revenues.  Id.  They also told Shiralagi that they projected $160 million per year in revenues from the contract with HCL.  Id.  Based on these representations, NEA offered to invest $4 million in return for a 40% stake in HandsFree, indicating that they valued HandsFree at $10 million.  AC ¶ 51.  The Plaintiffs allege that the actual value of HandsFree was probably more, since Santhanam had significant time pressure and there was no competitive bidder.  Id.

With the offer from NEA in hand, Santhanam and Donnini "schemed to get rid of the original shareholders for about $21,000, buy out Chandra for $2 million, and use the remaining $2 million to continue operations, service the Dell and HCL contracts and increase the value of the company." AC ¶ 52.  On January 12, 2012, Santhanam, Donnini and Chandra gathered the shareholders on a conference call to deliver "dismal news." AC ¶ 24.  They told the shareholders that the company had been losing money for years, had no viable customers, no contracts, no revenue and no prospects on the horizon.  Id.  More specifically, in response to one of the shareholder's question, "Do we have any idea what the company is valued at?," Santhanam responded:

> There's about $100,000 debt in the company, number one.  Number two is, there's no great client running around the company today, we have in the last ten years of HFN history, we never had a good great name company as a client . . . I'm not saying it will never change at all - it can change a bit - but the history's here, and you cannot get a million dollar three hundred million dollar business but . . . because [Chandra] has put his hard-earned money into the business and he wants to get this out, and, and, and, and I have not taken a single Rupee out of it, and I put three years of time into it.

AC ¶¶ 53-54.  The Amended Complaint alleges that "[t]he entire meeting was mostly lies and stonewalling by Santhanam, Chandra, and Donnini." AC ¶ 54.  Near the end of the meeting, Donnini stated, "[s]o if you are even here, if you are even considering getting $2 for your shares, guess what, you can go buy yourself a cup of coffee that you wouldn't have been able to buy before." Id.  The Plaintiffs allege that Donnini made this statement despite "knowing full well that he had done a deal to secure a 5% stake in a $10 million valuation of the assets he was referring to." Id.

On February 19, 2012, Santhanam sent a letter to shareholders, seeking their approval for the transfer of HandsFree's assets to a new shell company, HFN, Inc.  AC ¶ 56.  The letter

attached an analysis of HandsFree that valued the company at $243,973.  Id.  A separate analysis

by American Appraisal, based solely on the value of HandsFree's intellectual property, projected

a valuation of $1,730,000 by the end of 2012.  Id.[6]  The valuation was based solely on

information provided by HandsFree management and publicly available materials.  Id.  The

valuation did not include consideration of the Dell and HCL contracts and included only a

portion of the income received from Dell.  Id.

Santhanam, Donnini and NEA closed their deal in April 2012.  AC ¶ 58.  The cash from

the deal was used to pay Satish Chandra, doubling his investment after one year.  Id.  However,

the original investors received only $21,000 total and were told that this amount reflected

HandsFree's value.  Id.  In fact, however, many of the shareholders never received any

compensation for their shares.  Id.  At least one shareholder was never even informed of the

January 18, 2012 conference call.  Id.

On June 12, 2012, HFN, Inc. filed a Form D (Notice of an Offering Without Registration)

statement with the SEC, stating that HFN had no revenues, despite the withheld monies from

Dell that were already revenue due to HFN.  AC ¶ 59.  The Plaintiffs allege that because NEA,

Santhanam and Donnini were all on the board of HFN, they were responsible for the SEC filing

and the false statements therein.  Id.

Finally, the Plaintiffs allege that "[i]n mid 2013, Miller received information from an

informed source that 'blew the whistle' on the machinations that Santhanam, Donnini, Satish

Chandra, Chetan Chandra, and HFN had pulled, and disclosed how the revenue from Dell and

---

[6] The Court refers to the February 19, 2012 letter and accompanying materials as the
February 2012 Letter Agreement.

contract with HCL had been kept hidden."  AC ¶ 60.

      C.    <u>This Action</u>

The Plaintiffs filed this action on June 2, 2014.  Docket No. 1.  On June 9, 2014, they filed an Amended Complaint.  Docket No. 4.

On August 8, 2014, Defendants filed a motion to dismiss all claims against them.  Docket No. 19.  Plaintiffs filed their opposition on September 5, 2014.  Docket No. 24.  Defendants filed a reply on October 28, 2014.  Docket No. 33.  The parties have also filed several motions regarding the scope of the record in this case.  <u>See</u> Docket Nos. 35, 36, 40.  The Court heard oral argument on January 28, 2015.

II.    <u>ANALYSIS</u>

      A.    <u>Scope Of The Record</u>

As a preliminary matter, the Court must determine what documents it may consider in connection with the Defendants' motion to dismiss.  The parties have attached documents to the pleadings and briefs.  Those documents are the subject of a number of motions as set forth in more detail below.

In support of their motion to dismiss, the Defendants attached a copy of the February 2012 Letter Agreement to the Declaration of Robert B. Lovett in Support of Defendants' Motion to Dismiss.  Docket No. 21-1.  Plaintiffs submitted nine documents to support their opposition to Defendants' motion to dismiss.  Docket No. 25.  Defendants moved to strike all but one of those exhibits.  Docket No. 27.

In addition, Defendants submitted the Declaration of Elizabeth Inglis in support of their reply memorandum, which attached three exhibits.  Docket No. 34.  On November 5, 2014,

Plaintiffs moved to strike Exhibits A and C to the Inglis Declaration.  Docket No. 35.  Among other things, Plaintiffs argued that Exhibit A was not a true and correct copy of the Form D Filing HFN, Inc. made to the SEC on June 12, 2012.  Id. at 1-3.  Also on November 5, 2014, the Defendants filed a motion to correct Exhibit A to the Inglis Declaration.  Docket No. 36. Defendants' counsel stated that they had intended to attach a copy of Exhibit A drawn from the SEC's website.  Docket No. 36 at 2.  They also stated that in crafting their reply memorandum, Defendants' counsel relied only on the Form D obtainable from the SEC website.  Id. at 3. However, they inadvertently attached a Form D obtained from another publicly available website, www.SECdatabase.com.  Id. at 2.  According to Defendants' counsel, this website contains copies of SEC filings, and holds itself out as "The Best Free SEC Edgar Filing Research Platform," providing "**Full-text keywords searching** against all the SEC filings since 1994 (Over 8 million distinct filings)."  Id. (emphasis in original).

On November 6, 2014, Plaintiffs filed a motion to withdraw their motion to strike Exhibit A.  Docket No. 40.  Plaintiffs, however, maintained their objection to the Court's consideration of Exhibit C.  Id.  In addition, the Plaintiffs requested that the Court consider sanctions against the Defendants in the form of the Plaintiffs' attorneys' fees required to address the issue.  Id. at 1.  Subsequently, on January 10, 2015, the Plaintiffs filed a motion to withdraw their request for sanctions.  Docket No. 46.

For the following reasons, the Court recommends that the District Court grant the Defendants' motion to strike (Docket No. 27), deny the Plaintiffs' motion to strike (Docket No. 35), grant the Defendants' motion to correct exhibit (Docket No. 36), grant in part and deny in part as moot the Plaintiffs' motion to withdraw (Docket No. 40), and grant the Plaintiffs' motion

to withdraw the motion for sanctions (Docket No. 46).  Except for Exhibit 2, the Court will not

consider the Plaintiffs' exhibits (Docket Nos. 25-1, 25-3 to 25-9) and will consider the

Defendants' exhibits (Docket Nos. 21-1, 34-2, 34-3, and 38-1).

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented

to and not excluded by the court, the motion must be treated as one for summary judgment under

Rule 56."  Fed. R. Civ. P. 12(d).  However, "under certain 'narrow exceptions,' some extrinsic

documents may be considered without converting a motion to dismiss into a motion for summary

judgment."  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v.

Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "These exceptions include documents the authenticity of

which are not disputed by the parties; official public records; documents central to plaintiffs'

claim; and documents sufficiently referred to in the complaint."  Id. (internal quotations,

modifications and citations omitted).

    1.    Plaintiffs' Exhibits

Plaintiffs represent that Exhibit 1 is a copy of the agreement between Chandra and

Santhanam referenced in paragraph 40 of the Amended Complaint.  See Docket No. 24 at 3;

Docket No. 25 at ¶ 2.  Although the agreement was referenced in the Amended Complaint, the

copy provided by the Plaintiffs is unsigned and therefore it is unclear whether it is a draft or the

final document.  Accordingly, the Court will not consider Exhibit 1.[7]

Exhibit 3 is a copy of a February 20, 2012 email and Exhibit 4 is an attachment to that

email, purportedly showing HandsFree invoices to Dell.  Docket No. 25 at ¶¶ 4-5.  Exhibits 5

---

[7] Defendants did not move to strike Plaintiffs' Exhibit 2.  The Court may consider it as a document sufficiently referred to in the complaint.  See AC ¶ 46.

and 6 are also emails.  Exhibits 3-6 do not fall within any of the categories of documents that

may be considered on a motion to dismiss.  Therefore, the Court will not consider Exhibits 3-6.

Exhibit 7 is a copy of a Software License Agreement between HCL and HandsFree dated

November 10, 2011.  Docket No. 25-7.  In the Amended Complaint, the Plaintiffs briefly

mentioned a contract between HCL and HandsFree.  AC ¶¶  28, 49.  It appears that a stronger

connection between the allegations in the Amended Complaint and Exhibit 7 is necessary before

the Court may consider it on a motion to dismiss as a document that is either referenced in the

complaint or central to the Plaintiffs' allegations.  See Quaak v. Dexia, S.A., 357 F. Supp. 2d

330, 339 (D. Mass. 2005) (collecting cases).  In any event, discrepancies between the allegations

in the Amended Complaint and Exhibit 7 also make consideration of Exhibit 7 inappropriate.

See Leahy-Lind v. Maine Dep't of Health & Human Servs., No. 1:13-CV-00389-GZS, 2014 WL

4681033, at *10 n. 6 (D. Me. Sept. 19, 2014) (declining to consider exhibit dated April 4, 2013)

when the complaint referenced a document dated April 3, 2013).  The Amended Complaint

states that the HCL contract was executed in December 2011.  AC ¶ 49.  Exhibit 7, however, is

dated November 10, 2011 and appears to have been executed on February 1, 2012.[8]  Docket No.

25-7 at 1, 8, 10.  The Court, therefore, declines to consider Exhibit 7.

Exhibit 8 is an October 2, 2011 email from Santhanam to Ponnuswamy[9] attaching a

Power Point presentation and Exhibit 9 is the Power Point Presentation.  Docket Nos. 25-8, 25-9.

Plaintiffs argue that both exhibits are sufficiently referenced in the Amended Complaint, as the

---

[8] Plaintiffs' argument that this was simply a scrivener's error is not persuasive in this context.  See Docket No. 30 at 4.

[9] In the Amended Complaint and the Plaintiffs' briefs, the Plaintiffs spell this name as Ponnusamy.  However, in Exhibit 8, this name is spelled Ponnuswamy.

Amended Complaint alleges that Santhanam, Donnini and Ponnusamy made a presentation to

NEA on October 3, 2011 where they provided "the true financial picture of the company."

Docket No. 30 at 5 (citing to AC ¶ 50).  Plaintiffs represent that Exhibit 9 is that presentation.

Id.  Again, this passing reference is insufficient to make Exhibits 8 and 9 documents "sufficiently

referred to in the Complaint."  See Quaak, 357 F. Supp. 2d at 339.  Accordingly, the Court

declines to consider Exhibits 8 and 9.

      2.    <u>Defendants' Exhibits</u>

In support of their motion to dismiss, the Defendants attach a copy of the February 2012

Letter Agreement sent by HandsFree to Miller.  Docket No. 21-1.  Although the Plaintiffs did

not file a motion to strike this exhibit, they object to the Court's consideration of that exhibit.

Docket No. 24 at 6.  The Court finds that it is appropriate to consider this exhibit.

As stated above, the Court may consider documents sufficiently referred to in the

complaint and documents central to the Plaintiffs' claims.  Freeman, 714 F.3d at 36.  Not only do

the Plaintiffs refer to the February 2012 Letter Agreement in their Amended Complaint, see AC

¶ 56, but the document is central to the Plaintiffs' claims.  In essence, the Plaintiffs allege that

the Defendants fraudulently induced them to sell their shares at a price deeply below their value.

The exhibit is a copy of the Letter Agreement between HandsFree and plaintiff Miller for the

sale of Miller's shares.  Accordingly, the Court may properly consider this exhibit.

Finally, the Plaintiffs object to the Court's consideration of Exhibit C submitted in

support of the Defendants' reply memorandum.  Docket No. 34-3.  Exhibit C is a copy of an

Investopedia article discussing the difference between a "pre-money" business valuation and a

"post-money" business valuation.  Plaintiffs argue that Exhibit C does not fall within any of the

categories of documents that a court may consider on a motion to dismiss.  Docket No. 35 at 3.

However, the prohibition on extraneous materials generally refers to factual materials.  Here, the

Defendants cite to the Investopedia article as a reference for an argument made in Defendants'

reply.  Indeed, many courts have cited to Investopedia for purposes of a definition in the context

of a motion to dismiss.  See, e.g., Clark v. Mortg. Elec. Registration Sys., Inc., 7 F. Supp. 3d

169, 179 n. 9 (D.R.I. 2014) (citing to Investopedia for definition of "robo-signer"); SEC v.

Bronson, 14 F. Supp. 3d 402, 404 n. 1 (citing to Investopedia for a description of penny stocks);

Citadel Group Ltd. v. Sky Lakes Medical Center, Inc., No. 06-C-6162, 2008 WL 1924958, at * 1

n 2. (N.D. Ill. April 30, 2008) (citing to Investopedia for a description of "off-balance sheet

transactions").  Accordingly, the Court recommends that the District Court deny the motion to

strike as to this exhibit.

> B.    Standard Of Review - Generally

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  Id.

The Court must accept all factual allegations in the complaint as true and draw all

reasonable inferences in the plaintiff's favor.  Decotiis v. Whittemore, 635 F.3d 22, 28-29 (1st

Cir. 2011) (citation omitted).  While the court must accept as true all of the factual allegations

contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 556 U.S.

at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir.

2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-

unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'")

(citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-

pleaded facts fail to warrant an inference of any more than the mere possibility of liability.

Iqbal, 556 U.S. at 679.

      C.      Pleading Standards - Securities Action

To sustain a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff

"must plead adequately (1) a material misrepresentation or omission; (2) scienter, or a wrongful

state of mind; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic

loss; and (6) loss causation."  New Jersey Carpenters Pension & Annuity Funds v. Biogen Idec,

Inc., 537 F.3d 35, 44 (1st Cir. 2008) (citations omitted).  Allegations of securities fraud must also

meet the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and

the Private Securities Litigation Reform Act of 1995 ("PSLRA").  See Hill v. Gozani, 638 F.3d

40, 55 (1st Cir. 2011).

Pursuant to Rule 9(b), a party must state "with particularity the circumstances

constituting fraud."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires that a plaintiff's averments of fraud

"specify the time, place, and content of the alleged false or fraudulent representations."  United

States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 226 (1st Cir. 2004)

(abrogation on other grounds recognized by U.S. ex rel Gagne v. City of Worcester, 565 F.3d 40

(1st Cir. 2009)).  The purpose of this requirement is to "give notice to defendants of the plaintiffs' claim, to protect defendants whose reputation may be harmed by meritless claims of fraud, to discourage 'strike suits,' and to prevent the filing of suits that simply hope to uncover relevant information during discovery." Id. (quoting Doyle v. Hasbro, Inc., 103 F.3d 186, 194 (1st Cir. 1996)).[10]

Like Rule 9(b), the PSLRA seeks to "do away with the kind of lawsuit that happens because a companies' [sic] stock drops, a suit is filed, they press discovery and they move and collect a large settlement from the company, when the suit may be baseless." Fitzer v. Security Dynamics Techs., Inc., 119 F. Supp. 2d 12, 18 (D. Mass. 2000) (citing 141 Cong. Rec. S19,060-02 (1995) (statement of Sen. Feinstein)).  Therefore, the PSLRA requires that a complaint alleging a material representation or omission "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1).

Each allegation of securities fraud must be examined independently as to whether it satisfies the requirements of Rule 9(b) and the PSLRA.  In re Focus Enhancements, Inc. Securities Litig., 309 F. Supp. 2d 134, 144 (D. Mass. 2001) (citation omitted).  A statement-by-

---

[10] The First Circuit has interpreted Rule 9(b)'s particularity requirement to apply not only to actual fraud claims but also to "associated claims where the core allegations effectively charge fraud." N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (citing Hayduck v. Lanna, 775 F.3d 441, 443 (1st Cir. 1985) (applying Rule 9(b) to negligent misrepresentation and breach of fiduciary duty claims)).  The Plaintiffs' breach of fiduciary duty (Counts III, IV, V, VI, and VII) and civil conspiracy claims (Count XI) sound in fraud.  See, e.g., AC ¶¶ 77, 81, 85, 93, 108.  Accordingly, this Court will apply Rule 9(b) to these claims.

statement analysis is required, "in which the inquiry made is restricted to the immediate context of each statement-namely, the balance of what was said on the particular occasion, and the immediate circumstances in which the particular statement was made. . ." Id.  "It is not the law that a 10b-5 complaint is to be judged on the basis of the general flavor derived from an issuer's collective statements over a long period of time." Id. (citation omitted).

The PSLRA further requires that a securities fraud complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  This required state of mind is known as scienter, a "mental state embracing intent to deceive, manipulate, or defraud."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007) (citation omitted).  To adequately plead scienter, a plaintiff must establish that "defendants consciously intended to defraud, or that they acted with a high degree of recklessness."  New Jersey Carpenters Pension & Annuity Funds, 537 F.3d at 44.  Scienter under the recklessness standard requires "a highly unreasonable omission, involving not merely simple, or even inexcusable, negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious the actor must have been aware of it."  Greebel v. FTP Software, Inc., 194 F.3d 185, 198 (1st Cir.1999) (quotation omitted).

An inference of scienter will "not survive if [it is] merely reasonable." Id. at 195.  A "strong" inference of scienter "must be more than merely plausible or reasonable–it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  Tellabs, 551 U.S. at 314.

"[T]he PSLRA does not require plaintiffs to plead evidence."  Hill v. Gonzani, 638 F.3d

40, 56 (1st Cir. 2011) (citation omitted).  "Nevertheless, a significant amount of 'meat' is needed on the 'bones' of the complaint."  <u>Id.</u>

    D.    <u>Standing</u>

As a preliminary matter, the Court must decide whether the Plaintiffs have standing to bring this case.  In their reply brief, the Defendants argue that the Plaintiffs have no Article III standing to bring this case because they have not identified any actual loss suffered by them.  Docket No. 33 at 3.  Although Defendants only raise the issue in their reply brief and do not fully develop the argument, this is a constitutional issue that the Court must address.  If the Plaintiffs lack standing to bring this matter before the Court, the Court lacks jurisdiction to decide the merits of the case.  <u>Libertad v. Welch</u>, 53 F.3d 428, 436 (1st Cir. 1995) (citation omitted).  "Thus, standing is a threshold issue, determining whether the court has the power to hear the case, and whether the putative plaintiff is entitled to have the court decide the merits of the case."  <u>Id.</u>; <u>see also</u> <u>In re Sonus Networks, Inc. Securities Litig.</u>, 247 F.R.D. 244, 250 n. 4 (D. Mass. 2007)( "Every plaintiff in federal court . . . must show that it suffered some separate and cognizable injury-in-fact as a result of the defendant's actions.");  <u>United States v. AVX Corp.</u>, 962 F.2d 108, 116 n. 7 (1st Cir. 1992) ("[A] defect in standing cannot be waived; it must be raised, either by the parties or by the court, whenever it becomes apparent.").

"Standing involves 'a blend of constitutional requirements and prudential considerations.'"  <u>N.H. Right to Life Political Action Comm. v. Gardner</u>, 99 F.3d 8, 13 (1st Cir. 1996) (quoting <u>Valley Forge Christian Coll. v. Americans United for Separation of Church and State</u>, 454 U.S. 464, 471 (1982)).  A federal court is empowered only to decide "cases" and "controversies."  <u>Id.</u> (citing U.S. Const. art. III).  "Not every dispute is a case or controversy.

'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'" Id. (citation omitted).

In order to establish standing, the Plaintiffs must show that (1) they personally have suffered some actual or imminent injury as a result of the challenged conduct; (2) the injury can fairly be traced to that conduct; and (3) the injury likely will be redressed by a favorable decision from the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An injury in fact must be concrete and particularized rather than conjectural or hypothetical. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). The injury must be real but not necessarily economic. United States v. AVX Corp., 962 F.2d at 113-14. "A mere interest in an event-no matter how passionate or sincere the interest and no matter how charged with public import the event-will not substitute for an actual injury." Id. at 114.

The Court finds that, contrary to the Defendants' arguments, the Plaintiffs have alleged an actual loss. In essence, the Plaintiffs allege that due to the Defendants' misrepresentations, they sold their shares for the grossly undervalued price offered to them and suffered losses as a result. AC ¶¶ 25, 68. Accordingly, the Court finds that the Plaintiffs have standing to bring their claims.

E.     Statute Of Limitations

The Defendants argue that the Plaintiffs' claims for violations of Sections 10(b) and 20(a) of the Exchange Act (Counts I and II) are barred by the statute of limitations. Docket No. 20 at 9-10. This Court disagrees.

A claim under Section 10(b), Rule 10b-5 and Section 20(a) of the Exchange Act must "be brought not later than the earlier of – (1) 2 years after the discovery of facts constituting the

violation; or (2) 5 years after such violation."  28 U.S.C. § 1658(b); see also FirstBank Puerto

Rico, Inc. v. La Vida Merger Sub, Inc., 638 F.3d 37, 38 (1st Cir. 2011).  The complaint in this

case was filed on June 2, 2014.  There is no question that it was filed within five years of the

alleged violation.  Therefore, the only question is whether the complaint was filed within two

years of the "discovery of facts constituting the violation."

     Under the "discovery" prong of the statute of limitations, "a cause of action accrues (1)

when the plaintiff did in fact discover, or (2) when a reasonable diligent plaintiff would have

discovered, 'the facts constituting the violation'–whichever comes first."  Merck & Co., Inc. v.

Reynolds, 559 U.S. 633, 637 (2010).  "[T]he 'facts constituting the violation' include the fact of

scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"  Id. (citation

omitted).

     The Defendants argue that Plaintiffs had actual knowledge of the alleged fraud by

February 2012, when they received the February 2012 Letter Agreement.  Docket No. 20 at 10.

They also argue that even if the Letter Agreement and accompanying materials did not provide

notice of all the facts surrounding the Defendants' alleged fraud, the Plaintiffs were then on

notice to exercise reasonable diligence to discover the fraud.  Docket No. 33 at 9-10.  Defendants

argue that the "First Circuit has explicitly adopted the doctrine of inquiry notice in Rule 10b-5

actions."  Id. at 9 (citing Maggio v. Gerard Freezer & Ice Co., 824 F.2d 123, 128 (1st Cir.

1987)).[11]

---

    [11] At the time of the Maggio decision, Section 10(b) of the Exchange Act had no
statutorily prescribed limitations period.  See General Builders Supply Co. v. River Hill Coal
Venture, 796 F.2d 8, 11 n. 3 (1st Cir. 1986).  Therefore, claims for violations of Section 10(b)
were governed by the Massachusetts statute of limitations for personal tort actions, which is
three years.  Id.  Federal common law, however, determined when the statute began to run and

In <u>Maggio v. Gerard Freezer & Ice Co.</u>, the First Circuit held that "'storm warnings' of the possibility of fraud trigger a plaintiff's duty to investigate in a reasonably diligent manner, and his cause of action is deemed to accrue on the date when he *should have discovered* the alleged fraud."  824 F.2d at 128 (emphasis in original).  The First Circuit has a two step process for assessing such warning signs.  First, the court determines, as an objective matter, "whether an harbinger, or series of harbingers, should have alerted a similarly situated investor that fraud was in the wind."  <u>Young v. Lepone</u>, 305 F.3d 1, 8 (1st Cir. 2002).  The defendant bears the burden of establishing the existence of such warnings.  <u>Id.</u> at 9.  If such "storm warnings" were apparent, the court then determines whether "the investor probed the matter in a reasonably diligent manner."  <u>Id.</u> at 8.

In <u>Merck</u>, the Supreme Court rejected "inquiry notice" as the standard generally.  <u>Merck</u>, 559 U.S. at 652.  The Supreme Court then stated:

> In determining the time at which "discovery" of those "facts" occurred, terms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating.  But the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered "the facts constituting the violation," including scienter–irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.

<u>Id.</u> at 653.

In any event, "[t]he multifaceted question of whether storm warnings were apparent involves issues of fact ... [and] [i]n the archetypical case, therefore, it is for the factfinder to determine whether a particular collection of data was sufficiently aposematic to place an investor

---

when it was tolled.  <u>Maggio</u>, 824 F.2d at 127.  The current statute of limitations for claims under Section 10(b) of the Exchange Act became effective in 2002.  <u>See</u> <u>Swack v. Credit Suisse First Boston</u>, 383 F. Supp. 2d 223, 233 (D. Mass. 2004).

on inquiry notice." Young, 305 F.3d at 9. Therefore, a complaint may be dismissed on statute of limitations grounds "only if 'the pleader's allegations leave no doubt that an asserted claim is time-barred.'" Id. at 8.

Here, the Defendants rely on the February 2012 Letter Agreement to support their argument that the Plaintiffs had actual knowledge by February 2012 of the Defendants' alleged fraud. Docket No. 20 at 10; Docket No. 33 at 8. The Plaintiffs allege that during the January 2012 shareholder call, Santhanam and Donnini reported that HandsFree had no revenue and no clients. AC ¶¶ 53-54. Plaintiffs then allege that in the February 2012 Letter Agreement to shareholders, Santhanam attached an analysis by American Appraisal stating that as of December 31, 2011, the Company was valued at $243,973. AC ¶ 56. A separate analysis based solely on the value of HandsFree's intellectual property projected a valuation of $1,730,000 by the end of 2012. Id.; see also Docket No. 21-1. According to the Defendants, because the information in the February 2012 Letter Agreement was different from the information that the Plaintiffs received during the January 18, 2012 shareholder call, the February 2012 Letter Agreement gave them notice of the alleged fraud. Docket No. 20 at 10. Even if the February 2012 Letter did not give the Plaintiffs actual notice, then it put them on notice to investigate further. Id.; Docket No. 33 at 9.

Here, the Court is unable to conclude that the pleadings and February 2012 Letter Agreement leave no doubt that the Plaintiffs' claims are time-barred. Although there are some discrepancies between the information provided in the January 2012 call and the information contained in the February 2012 Letter Agreement, those discrepancies do not establish that a fraud was committed. For example, although the February 2012 Letter Agreement references

some revenues and a live contract, it does not specifically mention the HCL contract, which the Plaintiffs allege was executed in November 2011.  In addition, it is not clear that the valuation of the company contained in the February 2012 Letter Agreement is inconsistent with the price paid for the Plaintiffs' shares.

Similarly, it is not clear that a reasonably diligent plaintiff would have begun investigating when he or she received the February 2012 Letter Agreement.  And even if a reasonably diligent plaintiff would have started investigating in February 2012, the February 2012 Letter Agreement does not establish that such an investor would have discovered the facts constituting the alleged fraud themselves by June 2012.  See Young, 305 F.3d at 9 (noting that a "reasonably diligent investigation . . . may consume as little as a few days or as much as a few years to get to the bottom of the matter").  Accordingly, at this stage, the Court cannot conclude that there is no doubt that Counts I and II of the Complaint are time-barred and declines to recommend dismissal on that basis.

     F.    <u>Plaintiffs Have Failed To State A Claim of Securities Fraud With Particularity</u>

The Plaintiffs allege that the Defendants misrepresented the real value of HandsFree by among, other things, stating that the company had been losing money for years, had no viable customers or contracts, and withholding information regarding revenues from the Dell and HCL contracts.  AC ¶¶ 24, 28, 44-46, 53-54.  "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusory to satisfy the particularity requirement, no matter how many times such accusations are repeated." Hayduk v. Lanna, 775 F.2d 441, 444 (1st Cir. 1985).  This is exactly what the Plaintiffs have done in this case.

1.      <u>Defendants Chetan Chandra, Satish Chandra, And Acris</u>

First, the Amended Complaint does not attribute any misrepresentations of any kind to

Chetan Chandra.  The Amended Complaint also fails to describe any misrepresentations by

Satish Chandra.  Although he is alleged to have been part of the January 18, 2012 call to

shareholders, the Plaintiffs do not attribute any specific statements to Satish Chandra.  AC ¶ 53.

Finally, the Amended Complaint alleges no misconduct by Acris.  "Where multiple defendants

are involved, each defendant's role in the fraud must be particularized."  <u>Shields v. Amoskeag</u>

<u>Bank Shares, Inc.</u>, 766 F. Supp. 32, 40 (D.N.H. 1991).  On this basis alone, therefore, Count I

should be dismissed as to defendants Chetan Chandra, Satish Chandra, and Acris.

Plaintiffs argue, however, that the Amended Complaint is sufficient under a "corporate

group liability doctrine."  Docket No. 24 at 14.  Plaintiffs appear to be referring to the "group

pleading presumption," under which a "plaintiff may impute false or misleading statements

conveyed in annual reports, quarterly and year-end financial results, or other group-published

information to corporate officers."  <u>Rosen v. Textron, Inc.</u>, 321 F. Supp. 2d 308, 327 (D.R.I.

2004) (citations omitted).  The First Circuit has recognized "a very limited version of the group

pleading doctrine for securities fraud," and there is "great debate about the doctrine's continued

existence after enactment of the PSLRA."  <u>In re Cabletron Sys, Inc.</u>, 311 F.3d 11, 40 (1st Cir.

2002).

Plaintiffs have failed to adequately state a claim under the group pleading doctrine

against Chetan Chandra and Satish Chandra.  As to Chetan Chandra, the Plaintiffs allege only

that he was the treasurer of HandsFree.  AC ¶ 88.  "[G]eneral allusions to unspecified internal

corporate information are insufficient to withstand a motion to dismiss."  <u>Lenartz v. Am.</u>

Superconductor Corp., 879 F. Supp. 2d 167, 187 (D. Mass. 2012) (citation omitted).  In addition, "general inferences that the defendants, by virtue of their position within the company, 'must have known' about the company's problems . . . [are] inadequate to withstand the special pleading requirements in securities fraud cases."  Id.  The Amended Complaint contains no allegations that Chetan Chandra had access to information contrary to HandsFree's public statements or that he made or ratified any of the allegedly fraudulent statements.  The Plaintiffs do not even allege that he was present or participated in the January 2012 call to shareholders.

As to Satish Chandra, the Amended Complaint alleges only that he was a Board Member of HandsFree and that he was present during the January 2012 call.  AC ¶¶ 24, 54.  The Plaintiffs allege in a conclusory fashion that the "entire meeting was mostly lies and stonewalling by Santhanam, Chandra, and Donnini," AC ¶ 54, but attribute no statements to Satish Chandra.  As with Chetan Chandra, the Amended Complaint contains no allegations that Satish Chandra ratified any of the allegedly fraudulent statements or had any knowledge contrary to the statements allegedly made by Santhanam and Donnini.[12]

Acris is only mentioned three times in the Amended Complaint.  Plaintiffs allege only that (1) in March 2008, Acris obtained a 60% interest in HandsFree; (2) in 2009, Satish Chandra acquired an 85% interest in Acris; and (3) sometime before May 2011, Satish Chandra offered to exit his investment in Acris if Santhanam could promise him a 200% return on his investment.  AC ¶¶ 35, 37, 40.  Such allegations are not sufficient to state a claim under the "plausibility"

---

[12]  Indeed, the Plaintiffs allege that in or around May 2011, Satish Chandra was "discouraged" by the Santhanam and Donnini's "dour reports" regarding HandsFree's business, suggesting that Satish Chandra was not aware of the alleged fraud, at least as of that time.  See AC ¶¶ 39, 40.

standard, let alone under the strict requirements of Rule 9(b) and the PSLRA.[13]

Accordingly, the Court recommends that the District Court dismiss Count I as to Chetan Chadra, Satish Chandra, and Acris, as well as Count X of the Complaint.

2.      The Plaintiffs Have Failed To State Facts
             Giving Rise To A Strong Inference Of Scienter

The Amended Complaint specifies the content, time, place, and speaker for some of the alleged false statements as they relate to Santhanam and Donnini. See, e.g., AC ¶¶ 53-54, 56. The Amended Complaint also alleges that the Defendants failed to disclose certain facts, including the true value of HandsFree. See, e.g., AC ¶¶ 39, 44, 49. However, the Amended Complaint fails to plead facts giving rise to a strong inference of scienter.

First, the Plaintiffs allege that the Defendants withheld information regarding the HCL contract. AC ¶¶ 28, 29, 56. However, they fail to provide any details regarding the alleged contract with HCL. They have not alleged, for example, that HandsFree ever realized any revenues from that contract or the magnitude of such revenue.

In addition, while Plaintiffs acknowledge that they were aware of the Dell contract, they allege that the Defendants understated the income received from Dell. AC ¶ 56; see also Docket No. 24 at 7. Plaintiffs allege that to keep the Dell revenues a secret, "for the last half of 2011 and the first quarter of 2012, [Santhanam and Donnini] requested that Dell not pay HandsFree invoices." AC ¶ 45 (emphasis in original). In support of that conclusory allegation, the Plaintiffs then allege that "on April 1, 2011, an email from HandsFree to Sydney Lewis and

---

[13] In addition, as set forth in the next section, the Amended Complaint fails to state facts giving rise to a strong inference of scienter as to all Defendants and, for that reason as well, Count I must be dismissed.

others at Dell requested that '[d]ue to year-end accounting and business transformation happening to HFN USA. [sic] We would request you to postpone all HFN invoice payment scheduled on April 5 to 5th, May.'"  AC ¶ 46.  Plaintiffs also allege that this request was in violation of accounting principles.  AC ¶ 47.  However, the mere assertion that Defendants violated accounting principles, without any specific factual support, does not meet the requirements of the PSLRA.  See In re Focus Enhancements, Inc. Sec. Litig., 309 F. Supp. 2d 134, 159 (D. Mass. 2001) (citation omitted).  A one-time request for a 30-day delay in payment, one year before the transaction at issue, does not support the Plaintiffs' allegation that Defendants were attempting to keep Dell revenues a secret.  Other than this single allegation, Plaintiffs have not alleged any facts that would support their assertions that the Defendants kept Dell revenues a secret by requesting that Dell delay payment of invoices.

Plaintiffs also allege that the Defendants presented the "true financial picture" of HandsFree to investors but not to the shareholders.  AC ¶¶ 48-50.  According to Plaintiffs, on June 11, 2011, Santhanam wrote in an email to an investor that "HCL had given a green signal to the technology" and that a contract was about five weeks away.  AC ¶ 49.  On October 3, 2011, Santhanam, Donnini and Ponnusamy made a presentation to NEA where they stated that Dell was a loyal customer generating significant revenue and that revenue projections with HCL were potentially $160 million per year.  AC ¶ 50.  However, these statements do not show that the Defendants' representations to the Plaintiffs were false.  Rather, they appear to be nothing more than puffing statements and statements of opinion made to potential investors close to a year prior to the alleged transaction.  Plaintiffs have not pled any facts that would show that HCL ever generated any income for HandsFree or that Dell revenues were understated.

Plaintiffs also point to an alleged "secret" agreement between Satish Chandra and Santhanam, whereby Chandra agreed to exit his investment in Acris for $2,000,000. AC ¶ 40. However, this allegation does not support an inference of scienter as Satish Chandra was free, as a general matter, to sell his stock for a premium not shared with other stockholders. See Abraham v. Emerson Radio Corp., 901 A.2d 751, 758 (Del. Ch. 2006).

Finally, Plaintiffs allege that HFN, Inc. filed a Form D statement with the SEC in June 2012, which falsely stated that HFN had no revenues, despite the revenue from the Dell contract. AC ¶ 59. The Plaintiffs then state that because Santhanam and Donnini were all on the board of HFN, they were responsible for the false statement. Id. However, this allegation presumes that HFN, a new company, had revenues to disclose. The SEC gives form filers the option to decline to disclose revenues or "[i]f the issuer's business is intended to produce revenue but did not, enter 'No Revenues.'" Docket No. 34-2 at 7. Again, the Plaintiffs have not plead any facts to show that HFN itself had generated any revenue as of the date of the Form D statement.

Overall, the Plaintiffs have raised only vague factual allegations regarding a fraudulent scheme. The Amended Complaint does not contain the level of detail necessary to believe the fraudulent motives ascribed to the Defendants. Taking all of the allegations of the Amended Complaint together, and in the light most favorable to Plaintiffs, the Court finds that they do not permit a strong inference of scienter. Accordingly, Count I of the Amended Complaint is also subject to dismissal on that basis.

3.    Confidential Sources

The Plaintiffs' reliance on an alleged confidential informant to support their allegations of fraud does not save the Amended Complaint. With respect to that source, Plaintiffs state only

that Miller received information from "an informed source that 'blew the whistle." AC ¶ 60.

The Court finds that the Amended Complaint's allegations are also deficient to the extent that

they are based on this confidential source.

The First Circuit has described the standard for evaluating whether confidential source

material is sufficient under the PSLRA as follows:

> [W]here plaintiffs rely on confidential personal sources but also on other facts,
> they need not name their sources as long as the latter facts provide an adequate
> basis for believing that the defendants' statements were false.  Moreover, even if
> personal sources must be identified, there is no requirement that they be named,
> provided they are described in the complaint with sufficient particularity to
> support the probability that a person in the position occupied by the source would
> possess the information alleged.  In both of these situations, the plaintiffs will
> have pleaded enough facts to support their belief, even though some arguably
> relevant facts have been left out.

New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC, Inc., 537 F.3d 35, 51 (1st

Cir. 2008) (quoting Cabletron, 311 F.3d at 29).  Therefore, the Court must "look at all of the

facts alleged to see if they 'provide an adequate basis for believing that the defendants'

statements were false.'" Id. (citation omitted).  "This involves an evaluation, inter alia, of the

level of detail provided by the confidential sources, the corroborative nature of the other facts

alleged (including from other sources), the coherence and plausibility of the allegations, the

number of sources, the reliability of the sources, and similar indicia." Id. (citation omitted).

Here, the Plaintiffs have not provided any details whatsoever regarding their unnamed

source.  Rather, they simply argue that their submission of a number of documents in connection

with their opposition to dismiss (which the Court determined it may not consider) shows that

their source must have been a "key enough player" at HandsFree.  Docket No. 24 at 8.  However,

even if the Court could consider the documents submitted with Plaintiffs' opposition, the

Plaintiffs have not linked those documents to the unnamed source.  In addition, nothing has been

pled from which the Court may conclude that the unnamed source is reliable and possesses the

information alleged.  For example, Plaintiffs have not alleged the source's position within

HandsFree, if any; how he or she would have had access to the information; or how he or she

would be familiar with and understand the content of the documents.  See, e.g., In re A123 Sys.,

Inc. Sec. Litig., 930 F. Supp. 2d 278, 286 (D. Mass. 2013) (rejecting "bland summary statement

that an unnamed person in no specified position of authority 'made suggestions'" regarding

alleged fraudulent conduct).

Accordingly, the Plaintiffs' allegations based on an anonymous whistleblower are

insufficient to meet the Plaintiffs' burden.

4.    Reliance And Causation[14]

The Defendants argue that the Amended Complaint also fails to state a securities fraud

claim because the Plaintiffs have not alleged reliance or causation.  Docket No. 20 at 15-17.

With respect to reliance, the Defendants argue that the Plaintiffs have not alleged any actions

they took in reliance on the allegedly false information provided by Defendants.  Id. at 16.

However, the Plaintiffs do allege that they sold their shares for the grossly undervalued price

offered to them in reliance on the false information provided by Defendants.  AC ¶¶ 25, 67.  The

Plaintiffs also allege that had they known the true value of HandsFree, they would not have sold

their shares for the price offered to them.[15]  AC ¶ 68.

---

[14] The heightened particularity requirement of the PSLRA does not extend to the pleading of loss and causation.  Ong v. Sears, Roebuck & Co., 459 F. Supp. 2d 729, 741 (N.D. Ill. 2006).

[15] The Court notes that the Plaintiffs allege that at least one shareholder was never told about the January 2012 telephone conference and, therefore, would not have been the recipient

Defendants also argue that any reliance on that information would be unreasonable as a matter of law because of the Plaintiffs' receipt of the HandsFree Appraisal in February 2012. Id. at 15-16.  However, the Court reads the Amended Complaint as stating that the valuation contained in the February 2012 Letter Agreement was consistent with the price offered to Plaintiffs for their shares and was in fact part of the alleged misrepresentations.  See AC ¶ 56. Plaintiffs allege that the value of HandsFree was much higher than that contained in the Appraisal.  See, e.g., AC ¶ 57.

In addition, the Defendants argue that the Plaintiffs have failed to allege causation because "[t]he transaction would have been consummated irrespective of their conduct as their choice was to become shareholders in the new company or cash out."  Docket No. 20 at 16.  The Court disagrees.  As acknowledged by the Defendants, the Plaintiffs did have a choice to become shareholders in the new company.  Plaintiffs have alleged that they would not have sold their shares had they known the true value of HandsFree.  They have also alleged that shares in the new company would have been worth significantly more than what they received.  See AC ¶ 26. Therefore, the Plaintiffs' securities fraud claims do state reliance and causation.  Nevertheless, given the other deficiencies described above, those claims fail.

5.   Scheme Liability

Plaintiffs attempt to avoid the strict pleading requirements of the PLSRA and Rule 9(b), by claiming that their claims are also based on "scheme" liability under Rule 10b-5(a) and (c).

of Defendants' allegedly false statements.  AC ¶ 58.  In light of Plaintiffs' allegations that they cashed out their shares in reliance on the Defendants' statements and reading the Amended Complaint in the light most favorable to the Plaintiffs, the Court assumes that this shareholder is not one of the Plaintiffs in this case.

Docket No. 24 at 10.  This Court finds that the Amended Complaint fails to state a claim under Rule 10b-5(a) and (c).

Unlike claims under Rule 10b-5(b), claims under subsections (a) and (c) do not require false or misleading statements.  Swack v. Credit Suisse First Boston, 383 F. Supp. 2d 223, 238 (D. Mass. 2004) (citation omitted).  Rather, Plaintiffs must allege that "(1) they were injured; (2) in connection with the purchase or sale of securities; (3) by relying on a market for securities; (4) controlled or artificially affected by defendant's deceptive or manipulative conduct; and (5) defendants engaged in the manipulative conduct with scienter."  Id. (citation omitted).

Where, as here, a complaint alleges violations of Rule 10b-5(b) as well as Rule 10b-5(a) and/or (c), the plaintiff must allege that the defendant undertook a deceptive scheme or course of conduct that went beyond misrepresentations.  In re Alstom SA Sec. Litig., 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).  While it is possible for liability under both subsections (b) and subsections (a) and (c) to arise out of the same set of facts, "a plaintiff may not seek to hold a defendant liable for misleading statements under subsections (a) and (c) by alleging that the defendant is liable for the misleading statements because he or she was a participant in a scheme through which the statements were made."  Id. (citation omitted).  Further, a plaintiff "may not cast claims of misrepresentations as claims under Rule 10b-5(a) and (c) and thus evade the pleading requirements imposed in misrepresentation cases."  Id. (citation omitted); see also In re Smith Barney Transfer Agent Litig., 884 F. Supp. 2d 152, 161 (S.D.N.Y. 2012) (citations omitted) ("Courts have not allowed subsections (a) and (c) of Rule 10b-5 to be used as a 'back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b-5.'").

Plaintiffs' claims are premised on the Defendants' alleged misrepresentations.  The essence of the Amended Complaint is that Defendants made false statements in order to induce the Plaintiffs to redeem their shares for well below their value.  See, e.g., AC ¶¶ 24-30, 63, 66, 67, and 68.  The Amended Complaint fails to allege that there was a scheme to defraud that went beyond the alleged misrepresentations.  Accordingly, the Court finds that the Plaintiffs have failed to state a claim under Rule 10b-5(a) and (c).

G.      Plaintiffs Have Failed To State A Claim Under
        Section 20(a) Of The Exchange Act

In Count II of the Complaint, Plaintiffs bring a claim for violations of Section 20(a) of the Exchange Act against defendants Santhanam, Donnini and Satish Chandra.  Section 20(a) imposes derivative liability on control persons for violations of the Exchange Act committed by others.  In re Textron, Inc., 811 F. Supp. 2d 564, 574 (D.R.I. 2011) (citing Hill v. Gonzani, 638 F.3d 40, 53 (1st Cir. 2011)).  To establish a Section 20(a) claim, a plaintiff must plead: (1) an underlying violation by a controlled person or entity; and (2) that a defendant controlled the violator.  In re A123 Sys., Inc. Sec. Litig., 930 F. Supp. at 286 (citing Aldridge v. A.T. Cross Corp., 284 F.3d 72, 85 (1st Cir. 2002).  Because the Plaintiffs have failed to adequately plead an underlying violation of Section 10(b), their claim under Section 20(a) must also fail.  See New Jersey Carpenters Pension & Annuity Funds, 537 F.3d at 58.

H.      State Law Claims

The Plaintiffs have also brought claims for common law fraud (Counts VIII, IX, and X), breach of fiduciary duty (Counts III, IV, V, VI, and VII), civil conspiracy (Count XI), and constructive trust (Count XII).  In light of this Court's recommendation that the federal securities fraud claims be dismissed, this Court also recommends that the district court decline to exercise

its supplemental jurisdiction over the state law claims.  See Camelio v. American Fed'n, 137

F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by procuring for them a surer-footed

reading of applicable law.").  Where, as here, the federal claims are being dismissed at an early

stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of

declining jurisdiction over state law claims[.]"  Id.  In the instant case, no party has put forth any

reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction

over the state law claims.  Accordingly, this Court recommends that the entire complaint be

dismissed.

Should the District Court choose to retain jurisdiction, the Court recommends that the

District Court grant in part and deny in part the Defendants' motion to dismiss as set forth below.

1.    Common Law Fraud Claims

Counts VIII, IX, and X of the Amended Complaint assert common law fraud claims

against defendants Santhanam, Donnini, and Satish Chandra, respectively.  The parties do not

separately discuss the common law fraud claims but appear to presume that if the Section 10(b)

claims fail, so must the common law fraud claims.  See Docket No. 20 at 11-17; Docket No. 24

at 9-18.  The elements of a Section 10(b) claim are essentially the same as those for common law

fraud.  See Day v. Staples, Inc., 555 F.3d 42, 55-56 (1st Cir. 2009).[16]  Since Plaintiffs' Section

10(b) claims do not survive, their common law claims, based on the same allegations, must be

dismissed as well.

_____

[16] The parties agree that the elements of a fraud claim are the same under Massachusetts
and Delaware law.

-33-

2.     Breach Of Fiduciary Duty Claims[17]

Counts III, IV, V, VI, and VII of the Amended Complaint assert breach of fiduciary duties against each of the Defendants.  In order to state a claim for breach of fiduciary duty under Delaware law, the Plaintiffs must allege (1) that a fiduciary duty exists, and (2) that the fiduciary breached that duty.  In re Tropicana Entertainment, LLC, 520 B.R. 455, 470 (Bankr. D. Del. 2014) (citation omitted).  Defendants argue that the Plaintiffs have failed to plead the first element as to Donnini and Santhanam and the second element as to defendants Acris, Chetan Chandra and Satish Chandra.  Docket No. 20 at 18.

a.     Defendants Donnini And Santhanam

The Amended Complaint alleges that Donnini and Santhanam owed a fiduciary duty to the Plaintiffs "by virtue of their status as shareholders in HandsFree."  AC ¶¶ 76, 80.  The Defendants argue that this allegation is insufficient to plead a fiduciary duty because a shareholder owes a fiduciary duty to other shareholders only if he owns a majority interest, or exercises control over, the business affairs of the corporation.  Docket No. 20 at 19.  The Amended Complaint does not allege that either Santhanam or Donnini possessed a majority or controlling interest in HandsFree.  Id.

---

[17] The parties have cited to Delaware law in their briefs.  "A federal court . . . adjudicating state law claims that are pendent to a federal claim must apply the choice of law rules of the forum state."  Davidson v. Cao, 211 F. Supp. 2d 264, 273 (D. Mass. 2002) (citations omitted).  Under Massachusetts law, the court must apply the laws of the state of incorporation to the internal affairs of the corporation.  Id. "[O]nly one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders."  Harrison v. NetCentric Corp., 433 Mass. 465, 470-2 (2001) (citation omitted.).  Accordingly, this Court will apply the substantive law of Delaware, HandsFree's place of incorporation, to the breach of fiduciary duty claims, which focus on the Defendants' actions as Board Members and officers of HandsFree.

However, as the Plaintiffs point out in their opposition, the allegations regarding

fiduciary duty can be read as stating that Santhanam and Donnini owed a fiduciary duty to the

Plaintiffs because the Plaintiffs were shareholders rather than because Santhanam and Donnini

were shareholders.  Docket No. 24 at 18-19.  Elsewhere in the Amended Complaint, the

Plaintiffs allege that Santhanam and Donnini were members of the Board of Directors of

HandsFree.  AC ¶ 24; see also AC ¶ 75.  It is well-established that the directors and officers of a

Delaware corporation owe fiduciary duties to the corporation and its shareholders.  Fedders

North Am., Inc. v. Goldman Sachs Credit Partners, L.P., 405 B.R. 527, 539 (Bankr. D. Del.

2009) (citing Guth v. Loth, 5 A.2d 503, 510 (Del. 1939)).  Therefore, the Amended Complaint

pleads a fiduciary duty as to Santhanam and Donnini.  As the Defendants have not argued that

the Amended Complaint fails to state a breach of fiduciary duty with respect to Santhanam and

Donnini, those claims (Counts III and IV) survive as to Santhanam and Donnini.

      b.      Defendants Acris, Satish Chandra And Chetan Chandra

Under Delaware law, directors and officers of a Delaware corporation owe the

corporation and its shareholders a "triad" of duties.  Feeders North Am., Inc., 405 B.R. at 539.

This triad is composed of the duty of care, the duty of loyalty, and the duty to act in good faith.

Id.  The exact behavior that will breach the duty of care "varies based on the situation, but

generally requires directors and officers to fail to inform themselves fully and in a deliberate

manner."  Id. (citation omitted).

The duty of loyalty "mandates that the best interest of the corporation and its

shareholders takes precedence over any interest possessed by a director, officer or controlling

shareholder and not shared by the stockholders generally."  Id. at 540 (citation omitted).  "To

state a legally sufficient claim for breach of the duty of loyalty, plaintiffs must allege facts showing that a self-interested transaction occurred, and that the transaction was unfair to the plaintiffs." Id. (citation omitted).

Finally, the duty of good faith "is a subsidiary element of the duty of loyalty." Id. A breach of the duty of good faith "requires conduct that is qualitatively different from, and more culpable than, the conduct giving rise to a violation of the fiduciary duty of care (i.e., gross negligence)." Id. The Delaware Supreme Court has identified three examples of conduct that may constitute a failure to act in good faith where a director: (1) "intentionally acts with a purpose other than that of advancing the best interests of the corporation;" (2) "acts with the intent to violate applicable positive law;" and (3) "intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." Id. This list is not exclusive. Id.

The Court finds that the Amended Complaint fails to state a claim of breach of any of these duties against Acris, Satish Chandra and Chetan Chandra.[18] First, the Amended Complaint alleges no specific misconduct by Acris. As stated above, the only allegations mentioning Acris describe (1) Acris investment in HandsFree in 2008, (2) Chandra's investment in Acris in 2009, and (3) Chandra's offer to "exit" his investment in Acris in 2011. AC ¶¶ 35, 37, 40. Plaintiffs have stated no facts supporting their allegation that Acris "breached its fiduciary duty by, *inter alia*, taking steps to hide the true value of HandsFree from his [sic] fellow shareholders." AC ¶

---

[18] Plaintiffs do not specify which of these duties the Defendants allegedly breached. Their allegations appear to involve the duty of loyalty and the duty of good faith.

93.[19]

Similarly, the Plaintiffs have not alleged any facts supporting their statement that Satish

Chandra also hid the true value of HandsFree from the Plaintiffs.[20]  AC ¶ 85.  The Plaintiffs have

not alleged any facts to support that Satish Chandra was involved in the allegedly deceptive

scheme, made any misleading statements, or failed to disclose any material facts known to him.

Although he was present during the January 18, 2012 shareholder telephone call (AC ¶¶ 24, 54),

the Plaintiffs do not attribute any statements to him or allege that he had any basis to believe that

anything said on the call was false or misleading.

Finally, the Plaintiffs allege that Chetan Chandra breached his fiduciary duties to them by

"taking steps to transfer funds to [Satish] Chandra under the terms of an agreement between

[Satish] Chandra and Santhanam that was hidden from the Plaintiffs, and further taking steps to

hide the existence of that agreement from the Plaintiffs."  AC ¶ 89.  In support of that claim,

Plaintiffs allege that after Santhanam, Donnini and NEA closed their deal in April 2012, they

had Chetan Chandra "pay out a handsome return doubling his investment after one year . . ."  AC

¶ 58.  These allegations are insufficient.  The Plaintiffs have not alleged that Chetan Chandra

benefitted from the payment to Satish Chandra or that he was involved in the decision to make

payment.  See, e.g., In re IT Group, Inc., No. 02-10118, 2005 WL 3050611, at * 9 (D. Del. Nov.

15, 2005) (dismissing breach of fiduciary duty against officer when officer did not benefit from

transaction and was not alleged to have taken part in the decisions that form the basis of the

---

[19] Plaintiffs point to a document which the Court has determined that it may not consider in the context of a motion to dismiss.  Docket No. 24 at 19.

[20] Plaintiffs also failed to oppose dismissal of this claim against Satish Chandra in their memorandum of law.

complaint).

Accordingly, the Court recommends that the District Court dismiss Counts V, VI and VII of the Amended Complaint.

3.      Civil Conspiracy[21]

Count XI of the Amended Complaint asserts a civil conspiracy claim against all Defendants.  Under Delaware law, a civil conspiracy is defined as "the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage."  Smiley v. Chrysler, 538 F. Supp. 2d 711, 718 (D. Del. 2008) (citations omitted).  To constitute a civil conspiracy there must be (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. Tuckman v. Aerosonic Corp., No. 4094, 1981 WL 7622, at *2 (Del. Ch. June 29, 1981).  Civil conspiracy, standing alone, is not an independent cause of action in Delaware.  Smiley, 538 F. Supp. at 718.  "There must be some underlying actionable tort by each individual defendant in order to obtain recovery on a civil conspiracy theory."  Id.  "It is not the conspiracy itself, but rather the underlying wrong that must be actionable, even without the alleged conspiracy."  Id.

The Defendants argue that the Plaintiffs' failure to allege an underlying claim for fraud or breach of fiduciary duty requires dismissal of their civil conspiracy claim.  Docket No. 20 at 22.

---

[21] As the civil conspiracy claim also seems to arise from a shareholder dispute, it appears that Delaware law applies to that claim as well under the internal affairs doctrine.  See, e.g., Natale v. Espy Corp., 2 F. Supp. 3d 93, 103 (D. Mass. 2014).  None of the parties have raised the substantive law of any jurisdiction other than Delaware.  Given that the parties did not raise a conflict-of-laws issue, it is deemed that none exists.  Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 36 (D. Mass. 1999); see also Doricent v. Am. Airlines, Inc., No. 91-12084Y, 1993 WL 437670, at *8 (D. Mass. Oct. 19, 1993).

Defendants are correct that if Plaintiffs fail to adequately allege the elements of the underlying claim, the conspiracy claim must be dismissed as well.  Kuroda v. SPJS Holdings, LLC, 971 A.2d 872, 892 (Del. Ch. 2009).  However, the Court found above that the Plaintiffs' claims for breach of fiduciary duty survive as to defendants Santhanam and Donnini.  Therefore, the civil conspiracy claim fails on this ground only as to the other defendants.

The Defendants also argue that Plaintiffs have failed to allege sufficient facts to support the element of a conspiratorial agreement.  Docket No. 20 at 22.  This Court agrees.  "A plaintiff pursuing a claim for civil conspiracy may not rely solely on the fact that more than one person is involved in committing an alleged wrong."  Wayman Fire Protection, Inc. v. Premium Fire & Security, LLC, No. 7866-VCP, 2014 WL 897223, at *24 (Del. Ch. Mar. 5, 2014).  To prevail on their civil conspiracy claim, Plaintiffs must show that there was a meeting of the minds relating to the alleged fraud or breach of fiduciary duty by the Defendants.  Id.  Thus, the Plaintiffs must show that the Defendants reached an agreement to deceive the Plaintiffs into cashing out their shares for well below their real value.  In this regard, the only allegation in the Amended Complaint is the conclusory allegation that "the Defendants conspired to undertake a scheme by which they deceived the Plaintiffs into selling their shares in HandsFree for substantially less than their worth."  AC ¶ 108.  The Defendants have not, however, alleged any facts to support this allegation, such as any meetings, conversations, or phone calls or any other conduct that would raise the inference of an agreement between the Defendants.  Accordingly, the Court finds that the civil conspiracy claim must fail.[22]

---

[22] Defendants make two other arguments in support of their motion to dismiss the civil conspiracy claim.  First, they argue that the civil conspiracy claim against HFN and Acris must fail because a corporation cannot conspire with itself, or its officers, directors, or employees.

4.      Constructive Trust

Finally, Count XII of the Amended Complaint asserts a claim for constructive trust.

Defendants are correct that a constructive trust is not a claim but rather "one of the many

conceivable alternative remedies which might be available after trial should plaintiffs prevail on

one or more of their theories of recovery." Crescent/Mach I Partners, L.P. v. Turner, 846 A.2d

963, 991 (Del. Ch. 2000).   Unless the Plaintiffs can prove a claim under a recognized cause of

action, they cannot recover under a theory of constructive trust. See Teachers Retirement Sys. of

La., 900 A.2d 654, 671 n. 22 (Del. Ch. 2006) (citation omitted).   Therefore, this claim is subject

to dismissal.   However, because the Court found that the Plaintiffs have stated a breach of

fiduciary duty claim against Santhanam and Donnini, the remedy of constructive trust remains

available against them should the Plaintiffs prove that claim.

III.   RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this

case (1) grant Defendants' motion to strike the Plaintiffs' exhibits (Docket No. 27); (2) deny the

Plaintiffs' motion to strike Exhibits A and C from Defendants' declaration (Docket No. 35); (3)

grant the Defendants' motion to correct exhibit (Docket No. 36); (4) grant in part and deny in

part as moot the Plaintiffs' motion to withdraw as moot their motion to strike Exhibit A from

---

Docket No. 20 at 22.  While this is correct, there is an exception to this rule where an officer
steps out of his role as an officer and acts pursuant to personal motives.  Hartsel v. Vanguard
Group, Inc., No. 5394-VCP, 2011 WL 2421003, at *10 n. 65 (Del. Ch. June 15, 2011).  Second,
they argue that Plaintiffs have failed to allege any damages arising from any actions taken by
Defendants in furtherance of a conspiratorial agreement.  Docket No. 20 at 23.  As stated above,
the Plaintiffs have alleged that they suffered a loss because they cashed out their shares for less
than they were worth.  Nevertheless, it is unnecessary to reach these arguments in light of the
Court's finding that the Plaintiffs have failed to allege the required conspiratorial agreement.

Defendants' declaration (Docket No. 40); and (5) grant the Plaintiffs' motion to withdraw their motion for sanctions (Docket No. 46).

The Court also recommends that the District Court dismiss the Plaintiffs' Exchange Act claims (Counts I and II of the Amended Complaint), decline to exercise supplemental jurisdiction with respect to the remaining state law claims, and grant the motion to dismiss in its entirety.

Should the District Court decide to exercise supplemental jurisdiction over the state law claims, the Court recommends that it grant the motion with respect to the Plaintiffs' breach of fiduciary duty claims against Satish Chandra, Chetan Chandra, and Acris Technologies (Counts V, VI, and VII); the fraud claims (Count VIII, IX, X); the civil conspiracy claim (Count XI); and the constructive trust claim (Count XII); and deny the motion as to the breach of fiduciary duty claims against Santhanam and Donnini (Counts III and IV).

## IV.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999);

<u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983 F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge